2021-2320, -2376

_____

# United States Court of Appeals
# for the Federal Circuit

_____

**JOE A. SALAZAR,**
*Plaintiff-Appellant,*

v.

**AT&T MOBILITY LLC, SPRINT UNITED MANAGEMENT COMPANY, T-MOBILE USA, INC., CELLCO PARTNERSHIP dba VERIZON WIRELESS**
*Defendants-Cross-Appellants*

**HTC CORPORATION, HTC AMERICA, INC.,**
*Defendants-Appellees*

_____

Appeals from the United States District Court for the Eastern District of Texas in No. 2:20-cv-00004-JRG J. Rodney Gilstrap, Chief Judge

_____

**DEFENDANTS' RESPONSE BRIEF**

Dated:  March 9, 2022

Respectfully submitted,

*/s/ Fred I. Williams*

Fred I. Williams
*Principal Attorney*
fwilliams@wsltrial.com
WILLIAMS SIMONS & LANDIS PLLC
The Littlefield Building
601 Congress Ave, Suite 600
Austin, TX  78701
512.543.1354 telephone

Todd E. Landis
tlandis@wsltrial.com
WILLIAMS SIMONS & LANDIS PLLC
2633 McKinney Ave., Suite 130 #366
Dallas, TX  75204
512.543.1357 telephone

John Wittenzellner
johnw@wsltrial.com
WILLIAMS SIMONS & LANDIS PLLC
1735 Market Street, Suite A#453
Philadelphia, PA 19103
512.543.1373 telephone

COUNSEL FOR DEFENDANTS AT&T
MOBILITY LLC, T-MOBILE, USA,
INC., CELLCO PARTNERSHIP DBA
VERIZON WIRELESS, SPRINT
UNITED MANAGEMENT COMPANY,
HTC CORPORATION AND HTC
AMERICA, INC.

## CERTIFICATE OF INTEREST

Counsel for AT&T Mobility, T-Mobile USA Inc., Cellco Partnership dba Verizon Wireless, Sprint United Management Company, HTC Corporation, HTC America, Inc., and (collectively, "Defendants") certify the following:

1. The full name of every party is AT&T Mobility LLC, Sprint United Management Company, T-Mobile USA, Inc., Cellco Partnership dba Verizon Wireless, HTC Corporation, and HTC America, Inc.

2. The name of the real party in interest: N/A

3. Parent Corporations and publicly held companies that own 10% or more of stock in the party:

### AT&T Mobility LLC

AT&T Mobility LLC is owned by the following companies:  SBC Long Distance, LLC, AT&T Investment & Tower Holdings, LLC, BellSouth Mobile Data, Inc., and New Cingular Wireless Services, Inc.  All of those companies are subsidiaries of AT&T Inc.

None of AT&T Mobility LLC, SBC Long Distance, LLC, AT&T Investment & Tower Holdings, LLC, BellSouth Mobile Data, Inc., or New Cingular Wireless Services, Inc. is a publicly traded company.  AT&T Inc. is a publicly traded company, and, to the best of its knowledge, there is not one person or group that owns 10% or more of the stock of AT&T Inc.

## Cellco Partnership dba Verizon Wireless

Cellco Partnership dba Verizon Wireless is owned by the following companies: GTE Wireless LLC, Bell Atlantic Mobile Systems LLC, and Verizon Americas LLC. All of those companies are subsidiaries of Verizon Communications Inc. Verizon Communications Inc. is a publicly traded company.

## Sprint United Management Company

Sprint United Management Company is a wholly owned direct subsidiary of Sprint Communications LLC. Sprint Communications LLC is a wholly owned direct subsidiary of Sprint LLC. Sprint LLC is a wholly owned direct subsidiary of T-Mobile USA, Inc. T-Mobile USA, Inc. is a wholly owned direct subsidiary of T-Mobile US, Inc.

T-Mobile US, Inc. is a publicly traded company listed on the NASDAQ Stock Market LLC ("NASDAQ"). Deutsche Telekom Holding B.V., a limited liability company (besloten venmootschap met beperkte aansprakelijkheidraies) organized and existing under the laws of the Netherlands ("DT B.V."), owns more than 10% of the shares of T-Mobile US, Inc.

## T-Mobile USA, Inc.

T-Mobile USA, Inc. is a wholly owned direct subsidiary of T-Mobile US, Inc. T-Mobile US, Inc. is a publicly traded company listed on the NASDAQ Stock Market LLC ("NASDAQ"). Deutsche Telekom Holding B.V., a limited liability

company (besloten venmootschap met beperkte aansprakelijkheidraies) organized and existing under the laws of the Netherlands ("DT B.V."), owns more than 10% of the shares of T-Mobile US, Inc.

**HTC America, Inc.**

HTC Corporation owns 10% or more of the stock in HTC America, Inc.

4.  The name of all law firms and the partners or associates that appeared for these entities in the originating case, and who have not already entered an appearance in this Court are:  Adam Livingston of Williams Simons & Landis PLLC; Harry Lee Gillam, Jr., Andrew Thompson (Tom) Gorham of Gillam & Smith, LLP; and Parker D. Hancock of Vinson & Elkins LLP.

5.  The case titles and numbers of any action that will be directly affected by this Court's decision include  *HTC Corp. et al. v. Salazar*, Eastern District of Texas, 2:21-cv-00274.

6.  Any information required under Fed. R. App. P. 26.1(b) and 26.1(c):  N/A.


Date: March 9, 2022                     */s/ Fred I. Williams*
                                         Signature of counsel

                                         Fred I. Williams
                                         Printed name of counsel

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ................................................................. iii

TABLE OF CONTENTS ........................................................................ vi

TABLE OF AUTHORITIES ................................................................. viii

STATEMENT OF RELATED CASES ...................................................... xii

I.      JURISDICTIONAL STATEMENT ................................................ 1

II.     COUNTER-STATEMENT OF THE ISSUES ................................. 1

III.    COUNTER-STATEMENT OF THE CASE AND FACTS ........................ 2

        A.      Background ........................................................................ 2

                1.      Claim Construction ................................................ 2

                2.      Claim Preclusion and the *Kessler* Doctrine ............................. 4

        B.      The Jury Trial ................................................................. 6

IV.     SUMMARY OF THE ARGUMENT ................................................ 8

V.      STANDARD OF REVIEW ...................................................... 12

        A.      Errors In Claim Construction ............................................. 12

        B.      Claim Preclusion/*Kessler* Doctrine ...................................... 14

        C.      Invalidity ........................................................................ 15

VI.     ARGUMENT ...................................................................... 16

        A.      As A Threshold Issue, Salazar Has Not Met His Burden To Show
                That All Of Defendants' Non-Infringement Grounds Were Based
                On An Incorrect Jury Instruction Or Not Supported By Substantial
                Evidence. ........................................................................ 16

B. The District Court Correctly Construed The "Microprocessor" Limitation. ....................21

C. The District Court Erred In Concluding That Salazar's Claim Was Not Barred By Claim Preclusion Or The *Kessler* Doctrine. ...............28

1. Salazar's claim is barred by claim preclusion, given the final judgment in *Salazar I.* ....................28

a. This case involves the same claim or cause of action as *Salazar I*. ....................30

b. Defendants are in sufficient privity with HTC Corp. to justify claim preclusion. ....................32

2. Salazar's claim is barred by the *Kessler* doctrine. ....................43

D. The District Court Erred In Holding That Claims 1-7, 27-30, And 34 Are Not Anticipated. ....................49

E. CONCLUSION AND RELIEF SOUGHT ....................56

CERTIFICATE OF COMPLIANCE ....................58

# TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Syntron Bioresearch, Inc.*,
  334 F.3d 1343 (Fed. Cir. 2003) ................................................. 19, 20

*Adaptix, Inc. v. Amazon.com,*
  No. 5:14-cv-1379, 2015 WL 4999944 (N.D. Cal. Aug. 21, 2015).......... 12, 39, 42

*Adaptix, Inc. v. AT&T Mobility LLC,*
  No. 6:12-cv-17, 2015 WL 12696204 (E.D. Tex. 2015) ............................... 32, 44

*Adobe Sys. v. Wowza Media Sys., LLC*,
  72 F. Supp. 989 (N.D. Cal. 2014) .............................................................44

*Aspex Eyewear, Inc. v. Zenni Optical LLC*,
  713 F.3d 1377 (Fed. Cir. 2013) ...............................................................41

*Avid Tech., Inc. v. Harmonic, Inc.,*
  812 F.3d 1040 (Fed. Cir. 2016) ...........................................................9, 15

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.,*
  512 F.3d 1338 (Fed. Cir. 2008) ......................................................... 10, 24

*Brain Life, LLC v. Elekta Inc.*,
  746 F.3d 1045 (Fed. Cir. 2014) ....................................... 16, 48, 50, 51

*Brown v. 3M,*
  265 F.3d 1349 (Fed. Cir. 2001) ................................................................18

*Continental Circuits LLC v. Intel Corp.*,
  915 F.3d 788 (Fed. Cir. 2019) .................................................................14

*Convolve, Inc. v. Compaq Computer Corp.,*
  812 F.3d 1313 (Fed. Cir. 2016) ....................................... 11, 26, 28, 29

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
  880 F.3d 1356 (Fed. Cir. Jan. 25, 2018) .............................................53

*Cybor Corp. v. FAS Techs., Inc.*,
  138 F.3d 1448 (1998), 46 USPQ2d (BNA) at 169 ..............................20

*Duffie v. United States*,
  600 F.3d 362 (5th Cir. 2010) ...................................................................17

*Ecolab, Inc. v. Paraclipse, Inc.,*
  285 F.3d 1362 (Fed. Cir. 2002) ......................................... 10, 15, 20

*Foster v. Hallco Mfg. Co.*,
  947 F.2d 469 (Fed. Cir. 2014) .................................................................50

*Graham v. John Deere Co. of Kan. City*,
  383 U.S. 1 (1966).............................................................................. 17, 18

*In re PersonalWeb Techs. LLC*,
    961 F.3d 1365 (Fed. Cir. 2020) .............................................. 44, 47, 51
*In re PersonalWeb Techs., LLC*,
    18-md-2834, 2019 WL 1455332 (N.D. Cal. Apr. 2, 2019) .......................... 39, 41
*In re Varma*,
    816 F.3d 1352 (Fed. Cir. 2016) ................................................ passim
*Intellectual Ventures I LLC v. T-Mobile USA, Inc.*,
    902 F.3d 1372 (Fed. Cir. 2018) ....................................................14
*Iovate Health Sciences, Inc. v. Bio-Engineered Supplements & Nutrition, Inc.*,
    586 F.3d 1376 (Fed. Cir. 2009) ....................................................59
*Joe Andrew Salazar v. HTC Corporation et al.*,
    No. 2:16-cv-01096-JRG, Dkt No. 108 (E.D. Tex. Nov. 3, 2017) ................ passim
*Kessler v. Eldred*,
    206 U.S. 285 (1907)............................................................ passim
*Liebel-Flarsheim Co. v. Medrad, Inc.*,
    481 F.3d 1371 (Fed. Cir. 2007) ....................................................18
*Lubrizol Corp. v. Exxon Corp.*,
    929 F.2d 960 (3d. Cir. 1991) ......................................................40
*Marrese v. Am. Acad. of Orthopaedic Surgeons*,
    470 U.S. 373 (1985)................................................................38
*Mars, Inc. v. Nippon Conlux Kabushiki-Kaisha*,
    58 F.3d 616 (Fed. Cir. 1996) ......................................................40
*MGA, Inc. v. General Motors Corp.*,
    827 F.2d 729 (Fed. Cir. 1987) .............................................. 12, 48, 51
*Microsoft Corp. v. i4i Ltd. P'ship*,
    564 U.S. 91 (2011)................................................................17
*Network-1 Techs., Inc. v. Hewlett-Packard Co.*,
    981 F.3d 1015 (Fed. Cir. 2020) ............................................ 9, 14, 20
*New Hampshire v. Maine*,
    532 U.S. 742 (2001).......................................................... 31, 34, 37
*NewCSI, Inc. v. Staffing 360 Sol'ns, Inc.*,
    865 F.3d 251 (5th  Cir. 2017) .....................................................59
*Oreck Direct, LLC v. Dyson, Inc.*,
    560 F.3d 398 (5th Cir. 2009) .............................................. 32, 33
*Pilcher v. Cont'l Elecs. Corp.*,
    No. 96-11130, 1997 U.S. App. LEXIS 42456 (5th Cir. July 8, 1997) .......... 15, 16

*Russell v. SunAmerica Sec., Inc.,*
  962 F.2d 1169 (5th Cir. 1992) ............................................................35

*Senju Pharm. Co. Ltd. v. Apotex,*
  746, 1344 (Fed. Cir. 2014)...................................................................34

*SimpleAir, Inc. v. Google LLC,*
  884 F.3d 1160 (Fed. Cir. 2018) .............................................. 46, 47, 48

*Speedtrack, Inc. v. Office Depot, Inc.,*
  791 F.3d 1317 (Fed. Cir. 2015) .................................................... 15, 49

*SSL Servs., LLC v. Citrix Sys.,*
  769 F.3d 1073 (Fed. Cir. 2014) .........................................................9, 14

*Summit 6, LLC v. Samsung Elecs. Co., Ltd.,*
  802 F.3d 1283 (Fed. Cir. 2015) ...........................................................52

*Taylor v. Sturgell,*
  553 U.S. 880 (2008)................................................................... passim

*Teleflex, Inc. v. Ficosa N. Am. Corp.,*
  299 F.3d 1313 (Fed. Cir. 2002) .................................................... 14, 17

*Teva Pharm. USA, Inc. v. Sandoz, Inc.,*
  135 S. Ct. 831 (2015)...........................................................................14

*Texas v. Dep't of Labor,*
  929 F.2d 205 (5th Cir. 2019) ...............................................................36

*U.S. v. Davenport,*
  484 F.3d 321 (5th Cir. 2007) ...............................................................34

*Walker v. Sears, Roebuck & Co.,*
  853 F.2d 355 (5th Cir. 1988) ...............................................................16

*Weinar v. Rollform Inc.,*
  744 F.2d 797 (Fed. Cir. 1984) ...................................................... 10, 15

*Xiaohua Huang v. Huawei Techs. Co.,*
  787 F. App'x 723 (Fed. Cir. 2019)........................................ 16, 17, 31

*XP Innovations, Inc. v. Black Rapid, Inc.,*
  No. H-13-1856, 2013 WL 20 6230368 (S.D. Tex. Dec. 2, 2013) ................ 39, 41

## Statutes

28 U.S.C. § 1295(a)(1).............................................................................1
28 U.S.C. § 2107(a) .................................................................................1
28 U.S.C. § 1331 .....................................................................................1
28 U.S.C. § 1338(a) .................................................................................1

35 U.S.C. § 102(a) ................................................................50

35 U.S.C. § 102(e) ................................................................50

35 U.S.C. § 271 .....................................................................34

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, Defendants AT&T Mobility LLC; Sprint/United Management Company; T-Mobile USA, Inc.; Cellco Partnership d/b/a Verizon Wireless; HTC Corporation; and HTC America, Inc. (collectively, "Defendants") state that no other appeal in or from the same civil action in the lower court was previously before this or any other appellate court, and that no case known to counsel to be pending in this or any other court will directly affect or be directly affected by this Court's decision in the pending appeal.

On May 26, 2021, the district court for the Eastern District of Texas severed and stayed Intervenors HTC Corporation's and HTC America Inc.'s claims for declaratory judgment from the instant case. Appx1953-1958. As a result, *HTC Corp. et al v. Salazar,* No. 2:21-cv-00274-JRG is pending in the Eastern District of Texas.

In a prior litigation asserting infringement of the same patent in the district court for the Eastern District of Texas, *Joe Andrew Salazar v. HTC. Corp.,* No. 2:16-cv-01096-JRG, the jury found no infringement and the district court entered final judgment on May 18, 2018. Salazar did not appeal that final judgment.

## I.      JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. §§ 1331 & 1338(a) and entered a final judgment on August 17, 2021.  This cross-appeal, noticed on September 29, 2021, is timely.  *See* 28 U.S.C. § 2107(a); Fed. R. App. P. 4.  This Court has jurisdiction under 28 U.S.C. § 1295(a)(1).

## II.     COUNTER-STATEMENT OF THE ISSUES

1.      Whether the district court's claim construction of the term "a microprocessor for generating …, said microprocessor creating …, a plurality of parameter sets retrieved by said microprocessor …, said microprocessor generating …" could have created the requisite prejudice to justify a remand and partial new trial on infringement, even if in error.

2.      Whether the district court correctly construed the claim term "a microprocessor for generating …, said microprocessor creating …, a plurality of parameter sets retrieved by said microprocessor …, said microprocessor generating …" such that one microprocessor is required to perform all of the recited functions attributed to "said microprocessor."

3.      Whether the district court erred in ruling that Plaintiff's claims in this case were not barred by claim preclusion or the *Kessler* doctrine.

4.      Whether the district court erred in entering judgment that none of the asserted claims of U.S. Patent No. 5,802,467 are invalid for anticipation.

1

## III.    COUNTER-STATEMENT OF THE CASE AND FACTS

### A.    Background

This appeal involves a single patent owned by Mr. Joe Andrew Salazar ("Plaintiff" or "Salazar"), U.S. Patent No. 5,802,467 ("the '467 Patent"). The application leading to the '467 Patent was filed on September 28, 1995, and the patent issued on September 1, 1998. Entitled "Wireless and Wired Communications, Command, Control and Sensing System for Sound and/or Data Transmission and Reception," the '467 Patent purports to claim technology for "wireless and wired communications, command, control and sensing . . . for the two way communication of sound, voice, and data with any appliance and/or apparatus capable of transmitting and/or receiving compatible sound, voice and data signals." Appx46 at 1:8-13.

### 1.    Claim Construction

The '467 Patent was construed for the first time in a Claim Construction Opinion and Order in a prior district court case filed by Salazar against HTC Corporation, *Joe Andrew Salazar v. HTC Corporation et al.,* No. 2:16-cv-01096-JRG, Appx2003-2060 (E.D. Tex. Nov. 3, 2017) (hereafter "*Salazar I*"); *see also Salazar I*, Appx2183-2198 (Report and Recommendation (May 1, 2018).[1]

In *Salazar I*, Salazar alleged that HTC Corp. (and others, including AT&T Inc. and AT&T Mobility LLC) infringed the '467 patent by selling mobile phones

---

[1] For citations to the record in other related cases, Defendants will reference "*Salazar I*" or another case caption to clarify the citation. For ease of reference, Defendants will cite the district court record in the instant case simply by referencing the cited docket or exhibit number.

that embodied the asserted claims. *See Salazar I*, Appx1959-1962, Appx1963-1968, Appx1975-1979. There, the district court did not reach the issue of whether "a microprocessor for generating …, said microprocessor creating …, a plurality of parameter sets retrieved by said microprocessor …, said microprocessor generating …" must require at least one microprocessor that is capable of performing the recited 'generating,' 'creating,' 'retrieving,' and 'generating' functions. That prior case ended with a unanimous jury verdict of noninfringement and a final judgment against Salazar on May 11, 2018. *Salazar I*, Appx2199-2204, Appx2706-2707.

Over a year later on June 18, 2019, Salazar filed the instant case against Defendants AT&T Mobility, Sprint, T-Mobile, and Verizon Wireless (who are each indirect customers of HTC Corp. and direct customers of HTC Corp.'s U.S. subsidiary, HTC America, Inc.), claiming infringement of the '467 Patent for sale of the same products (the HTC One M7, HTC One M8, and HTC One M9 phones, collectively the "Accused Smartphones") that were accused in *Salazar I*. *See Joe Andrew Salazar v. AT&T Mobility LLC et al.,* No. 2:20-cv-00004-JRG, Appx1806-1814 (E.D. Tex. June 18, 2019) (the instant case, *"Salazar II"*). In the instant case, the parties litigated the construction of the claim term "a microprocessor for generating …, said microprocessor creating …, a plurality of parameter sets retrieved by said microprocessor …, said microprocessor generating …." The relevant claim language reads:

3

> A communications, command, control and sensing system for communicating with a plurality of external devices comprising:
>
> a microprocessor for generating a plurality of control signals used to operate said system, *said microprocessor creating* a plurality of reprogrammable communication protocols . . .;
>
> a memory device coupled to said microprocessor configured to store a plurality of parameter sets *retrieved by said microprocessor* . . .;
>
> a user interface coupled to said microprocessor . . ., *said microprocessor generating* a communication protocol in response to said user selections; and
>
> an infrared frequency transceiver coupled to said microprocessor . . .

Appx58 at 25:57-26:17 (emphasis added).

In a well-reasoned opinion, the district court construed the term to mean "one or more microprocessors, at least one of which is configured to perform the generating, creating, retrieving, and generating functions." Appx376.

## 2.    Claim Preclusion and the *Kessler* Doctrine

In an order dated May 21, 2021, the district court denied Defendants' Motion for Summary Judgment under claim preclusion and the *Kessler* doctrine. Appx1942. Quoting *Taylor v. Sturgell*, 553 U.S. 880, 900 (2008), the district court stated that it was "not persuaded that Defendants have shown that HTC Corp. adequately represented [Defendants'] interests in the previous litigation," because part of HTC Corp's defense in *Salazar I* was that none of its allegedly infringing conduct took place in the United States. *Id.* The district court also rejected Defendants' summary judgment argument under the *Kessler* doctrine on the ground that the doctrine does

4

not apply to pre-judgment acts of alleged infringement. *Id.* at 3. Because the '467 Patent expired before *Salazar I* was filed, all of Salazar's allegations of infringement in both cases were based solely on pre-judgment conduct. *See* Appx1815-1823; *Salazar I* Appx1969-1974.

In *Salazar I*, the accused products were the same Accused Smartphones that are accused in the instant case—the HTC One M7, M8, and M9 phones. *Salazar I*, Appx1960 at ¶ 9; Appx1970 at ¶ 7. After HTC Corp. moved to transfer *Salazar I* to the Northern District of California, Salazar amended his complaint to add AT&T Inc. as a defendant. *Salazar I*, Appx1970 at ¶ 5. Salazar also filed a motion for leave to correct that amended complaint to substitute AT&T Mobility LLC for AT&T Inc., which Salazar conceded "was not the correct AT&T corporate entity," *Salazar I,* Appx1975 at ¶ 1, and the district court then severed and stayed Salazar's claim against AT&T from the case. *Salazar I*, Appx1980-1986. Salazar voluntarily dismissed his claims against AT&T after the district court denied the transfer motion. *See Salazar v. AT&T Inc.,* 2:17-cv-00593-JRG-RSP, Appx3078-3080; *Salazar I,* Appx1987-2002.

*Salazar I* thus proceeded to trial against HTC Corp. only, and the jury unanimously found that Salazar failed to prove infringement. *Salazar I*, Appx2199-2204. Specifically, the jury found as follows:

**QUESTION #1:**

Did Mr. Salazar prove by a preponderance of the evidence that HTC Corporation infringed **ANY** of the Asserted Claims through the use, sale, or offer for sale in the United States, or importation into the United States, of any of the following Accused Products?

Answer "Yes" or "No" for each Accused Product listed below:

HTC One M7 _NO_
HTC One M8 _NO_
HTC One M9 _NO_

Appx2200.  The district court then entered final judgment against Salazar.  *Salazar I*, Appx2706-2707.

The same Accused Smartphones were accused in both cases.  *Compare* Appx1818 at ¶ 18 *with Salazar I*, Appx1970 at ¶ 7.  In both cases, the '467 Patent was the only asserted patent.  And Salazar's amended complaints in *Salazar I* made specific allegations about the allegedly infringing conduct of HTC Corp.'s direct and indirect customers, of which Defendants are quite prominent.  *Salazar I*, Appx1965 at ¶ 15; Appx1972 at ¶17.

## B. The Jury Trial

In the instant case, a six-day jury trial was held on August 2-9, 2021.  At trial, Defendants proved several distinct and viable non-infringement grounds.  Two of those grounds involved the "memory device" limitation—specifically, the requirement that "a memory device coupled to said microprocessor configured to store a plurality of parameter sets retrieved by said microprocessor so as to recreate

6

a desired command code set, such that the memory space required to store said

parameters is smaller than the memory space required to store said command code

sets."    Appx58 at 26:1-6.    During closing argument, Defendants' counsel

summarized these noninfringement grounds:

> I'd like to start with a memory device. We've heard a lot about this throughout this trial. The memory device element of claim 1 of the '467 Patent has two parts to it. The first part here in yellow is the part where it has to be configured. At the time the devices are sold they have to be configured to store a plurality of parameter sets, and I'm emphasizing at the time they're sold. The fact that they may be capable of setting aside some memory later on does not matter. What matters is when they were sold were they configured.
>
> The second part is a formula. The formula says figure out the physical space consumed by the parameter set and determine if it's smaller than the physical space consumed by the command code set.

Appx1690 at 57:9-23.

Salazar's own expert, Dr. Oded Gottesman, admitted that the space required

to store the parameter sets (384 bits) is greater than the space required to store the

command code sets (224 bits) in the Accused Smartphones.  Appx1560-1562 at

186:4-188:8.  To maintain his assertion that this limitation was nonetheless met by

the Accused Smartphones, Dr. Gottesman attempted to argue that certain zeros

stored as part of the accused parameter sets were not used and therefore could be

ignored.  Appx856-861 at 148:17-153:10.  He then asserted that only "the relevant

information actually needed for the parameters" should be counted.  Appx1565 at

191:13-21. But the claim language requires that the "memory space required to store

[parameter sets]" is "smaller than the memory space required to store command code sets." Appx58 at 26:1-6. The memory space used to store each set is what matters in the claims—not which bits are useful and which are not. And Dr. Gottesman conceded that the zeros he had sought to disregard actually do use memory space: "Q. None of the bits are empty. Correct? A. There's no empty bit anywhere. It has to have some value . . . Physically there is no empty because memory doesn't have any empty cells." Appx1559 at 185:4-17.

The uncontroverted evidence thus showed that the actual memory space used to store the accused parameter sets (384 bits) is larger than the actual memory space used to store the accused command code sets (224 bits). But the claim requires it to be smaller.

Defendants also introduced substantial evidence that the Accused Smartphones did not contain a "a memory device . . . configured to store a plurality of parameter sets." Appx1690 at 57:9-18, Appx1693-1697 at 60:8-64:12. A reasonable jury would have been required to find non-infringement on both of these separate grounds, regardless of the district court's construction of the microprocessor term.

## IV.  SUMMARY OF THE ARGUMENT

Even if the district court's claim construction of the term "a microprocessor for generating …, said microprocessor creating …, a plurality of parameter sets

retrieved by said microprocessor …, said microprocessor generating …" were in error, Salazar cannot demonstrate any prejudice to justify remand for a partial new trial on infringement. Salazar bears the burden of demonstrating such prejudice. *Network-1 Techs., Inc. v. Hewlett-Packard Co.*, 981 F.3d 1015, 1022 (Fed. Cir. 2020) (quoting *SSL Servs., LLC v. Citrix Sys.*, 769 F.3d 1073, 1085 (Fed. Cir. 2014)). To do so, he must show that the jury could not have returned a verdict of non-infringement absent the purported claim construction error. *Avid Tech., Inc. v. Harmonic, Inc.,* 812 F.3d 1040, 1047 (Fed. Cir. 2016); *Ecolab, Inc. v. Paraclipse, Inc.,* 285 F.3d 1362, 1374 (Fed. Cir. 2002) (quoting *Weinar v. Rollform Inc.,* 744 F.2d 797, 808 (Fed. Cir. 1984)).

Defendants introduced substantial evidence of non-infringement for every one of their non-infringement grounds. Even if the claim construction for the "microprocessor" term were in error, that construction had no bearing on Defendants' other non-infringement grounds. Salazar's own expert actually provided much of the substantial evidence to support those other grounds by conceding the key facts supporting Defendants' non-infringement theories that were not based on the "microprocessor" construction. Therefore, Salazar has not met his threshold burden of showing that every non-infringement argument was based on an incorrect jury instruction or not supported by substantial evidence. This alone constitutes sufficient basis for upholding the verdict and affirming the judgment.

9

In any event, the district court properly construed the "microprocessor" limitation, according to the plain language of the claim and this Court's precedent. Salazar relies on *Baldwin Graphic Sys., Inc. v. Siebert, Inc.,* 512 F.3d 1338 (Fed. Cir. 2008), to argue for a "general rule" that "said microprocessor" reinvokes a non-singular meaning.   But *Baldwin* involved "a pre-soaked fabric roll" that was incorrectly construed to mean "a single pre-soaked fabric roll."  *Id.* at 1340.  The district court's claim construction in this case is not similarly limiting, as it correctly construed "a microprocessor" to be "one or more microprocessors."  Appx376. Following the Court's reasoning in *Convolve, Inc. v. Compaq Computer Corp.,* 812 F.3d 1313 (Fed. Cir. 2016) and *In re Varma,* 816 F.3d 1352 (Fed. Cir. 2016), the district court correctly found that "a" cannot serve to negate what is required by the language that follows "a."  *See Convolve, Inc.,* 812 F.3d 1321; *see In re Varma,* 816 F.3d 1362-1363.  In the instant case, "a microprocessor" is required to be coupled to three separate components of the claimed communications, command, control and sensing system:  (1) "a memory device coupled to said microprocessor," (2) "a user interface device coupled to said microprocessor;" and (3) "an infrared frequency transceiver coupled to said microprocessor."  That "said microprocessor" must be for "creating," "retriev[ing]," and "generating."  Appx58 at 25:57-26:34.

On the preclusion issues presented in the instant cross-appeal, however, the district court did err in holding that Salazar's claim was not barred by claim

preclusion or the *Kessler* doctrine. It is undisputed that HTC Corp. was the manufacturer of the exact same 3.8 million Accused Smartphones that were alleged to infringe in the instant case <u>and</u> that, during *Salazar I*, each Defendant was known by Salazar to have been a reseller of those products with a shared role in their sale. As in *Adaptix, Inc. v. Amazon.com,* No. 5:14-cv-1379, 2015 WL 4999944, at *6 (N.D. Cal. Aug. 21, 2015), Defendants—as resellers of HTC Corp.'s products—are in privity with HTC Corp. and HTC America for purposes of claim preclusion.

The sale of the Accused Smartphones was a collaborative effort involving HTC Corp., HTC America, and the other Defendants. Salazar even made the tactical decision to attempt to sue—and then voluntarily dismiss—one of the Defendants (AT&T Mobility LLC) in *Salazar I*. At the trial in that case, the jury found that the alleged manufacture, importation, and sale of the Accused Smartphones did not infringe the asserted patent.

In the instant case, the district court erred in ruling that there was no privity between the defendants in the two cases, on the ground that HTC Corp. did not adequately represent the interests of its customer Defendants during *Salazar I*. That ruling also violated the binding precedent of *MGA, Inc. v. General Motors Corp.,* 827 F.2d 729, 735 (Fed. Cir. 1987), which fully immunizes a customer from later lawsuits under the *Kessler* doctrine, including pre-judgment activity, without imposing any temporal limitation on that immunity.

11

The district court reasoned incorrectly that the *Kessler* doctrine should not apply to pre-judgment acts of alleged infringement. The Supreme Court in *Kessler* recognized that if a manufacturer prevails in a patent infringement lawsuit, then permitting the patentee to later sue the manufacturer's customers on the same claim would deprive the manufacturer of the benefits of its victory in the first case. That is the situation that Defendants (and their suppliers) faced in the court below—HTC Corp. was deprived of the benefits of its victory in *Salazar I*, and the Defendants (as HTC Corp.'s customers) were forced to defend themselves against the same plaintiff asserting the same patent against, not just the same model of phone—but the exact same phones that were the subject of the jury verdict and final judgment in *Salazar I*.

Lastly, Defendants presented clear and convincing evidence that the asserted claims were anticipated by U.S. Patent No. 5,410,326 ("Goldstein"). Salazar failed to present sufficient evidence to the contrary. It was reversible error for the district court to hold that asserted claims 1-7, 27-30, and 34, are not anticipated and therefore valid.

## V.   STANDARD OF REVIEW

### A.   Errors In Claim Construction

Claim construction is ultimately a question of law that this Court reviews *de novo*. *Continental Circuits LLC v. Intel Corp.*, 915 F.3d 788, 795 (Fed. Cir. 2019)

(citing *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015));

*Intellectual Ventures I LLC v. T-Mobile USA, Inc.*, 902 F.3d 1372, 1377 (Fed. Cir.

2018).    The Court reviews any subsidiary factual findings regarding extrinsic

evidence for clear error.    *Id.*    "As the party seeking to disturb the non-infringement

judgment, [appellant] 'must establish that [the challenged jury] instructions were

legally erroneous, and that the errors had prejudicial effect.'"    *Network-1 Techs., Inc.*

*v. Hewlett-Packard Co*., 981 F.3d 1015, 1022 (Fed. Cir. 2020) (quoting *SSL Servs.,*

*LLC v. Citrix Sys.,* 769 F.3d 1073, 1085 (Fed. Cir. 2014)).

"A determination of infringement, both literal and under the doctrine of

equivalents, is a question of fact, reviewed for substantial evidence when tried to a

jury."    *See Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1323 (Fed. Cir.

2002).    When "a reasonable jury would have been required by the evidence to find

non-infringement even without the error," "the error in the instruction governing [the

dispute] at trial would be harmless."    *Avid Tech., Inc. v. Harmonic, Inc.,* 812 F.3d

1040, 1047 (Fed. Cir. 2016).    "[A] reversal . . . is not available to an appellant who

merely establishes error in instructions  . . . .  Where the procedural error was

'harmless,' *i.e.*, where the evidence in support of the verdict was so overwhelming

that the same verdict would necessarily be reached absent the error, or the error was

cured by an instruction, a new trial would be mere waste and affirmance of the

judgment is required." *Ecolab, Inc. v. Paraclipse, Inc.,* 285 F.3d 1362, 1374 (Fed. Cir. 2002) (quoting *Weinar v. Rollform Inc.,* 744 F.2d 797, 808 (Fed. Cir. 1984)).

### B.    Claim Preclusion/*Kessler* Doctrine

The Court reviews a grant or denial of summary judgment "under the law of the regional circuit," the Fifth Circuit here. *See Speedtrack, Inc. v. Office Depot, Inc.*, 791 F.3d 1317, 1322 (Fed. Cir. 2015). The Fifth Circuit reviews the denial of summary judgment *de novo*, "under the same standards which guided the district court." *Pilcher v. Cont'l Elecs. Corp.*, No. 96-11130, 1997 U.S. App. LEXIS 42456, at *5 (5th Cir. July 8, 1997), *quoting Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988); *Xiaohua Huang v. Huawei Techs. Co.*, 787 F. App'x 723, 726 (Fed. Cir. 2019) ("Whether a cause of action is barred by claim preclusion is a question of law, which we review *de novo*, applying the law of the regional circuit."). "Summary judgment is appropriate when no issue of material fact has been shown and the moving party is entitled to judgment as a matter of law." *Id.* at 725. The Court must "view the evidence in the light most favorable to the nonmovant and determine whether there are any genuine issues of material fact." *Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1052 (Fed. Cir. 2014).

"Generally, in determining whether claim preclusion bars a later lawsuit, we apply the law of the regional circuit in which the trial court resides." *Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1052 (Fed. Cir. 2014). "The test for claim

14

preclusion in the Fifth Circuit has four elements: (1) the parties in the subsequent action are identical to, or in privity with, the parties in the prior action; (2) the judgment in the prior case was rendered by a court of competent jurisdiction; (3) there has been a final judgment on the merits; and (4) the same claim or cause of action is involved in both suits." *Xiaohua Huang v. Huawei Techs. Co.*, 787 F. App'x 723, 726 (Fed. Cir. 2019), *citing Duffie v. United States*, 600 F.3d 362, 372 (5th Cir. 2010). "Whether two claims of infringement constitute the same claim or cause of action is an issue particular to patent law and we apply our own law without reference to the regional circuit law on that issue." *Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1052 (Fed. Cir. 2014).

### C.    Invalidity

This Court "review[s] a district court's denial of a motion for JMOL *de novo*, reapplying the JMOL standard used by the district court." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1322 (Fed. Cir. 2002). The Supreme Court has held that the ultimate issue of patent validity is a question of law based on underlying questions of fact. *See Microsoft Corp. v. i4i Ltd. P'ship,* 564 U.S. 91, 96–97 (2011) ("While the ultimate question of patent validity is one of law, ... the same factual questions underlying the PTO's original examination of a patent application will also bear on an invalidity defense in an infringement action." (citations omitted) (citing *Graham v. John Deere Co. of Kan. City*, 383 U.S. 1, 17 (1966)). This Court,

however, has also considered anticipation to present a question of fact: "Anticipation under 35 U.S.C. § 102 means lack of novelty, and is a question of fact. To anticipate, every element and limitation of the claimed invention must be found in a single prior art reference, arranged as in the claim." *Brown v. 3M*, 265 F.3d 1349, 1351 (Fed. Cir. 2001). "[T]he evidentiary burden to show facts supporting a conclusion of invalidity is one of clear and convincing evidence." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371, 1377 (Fed. Cir. 2007).

## VI.    ARGUMENT

The district court's final judgment should be affirmed given that (a) Salazar has failed to meet his burden of showing that all of Defendants' non-infringement grounds were based on the allegedly incorrect claim construction of the "microprocessor" term; (b) the district court's construction of the "microprocessor" term was correct; and (c) Salazar's claim was barred by claim preclusion or the *Kessler* doctrine. Defendants also assert that the district court erred in finding that asserted claims 1-7, 27-30, and 34 are not invalid as anticipated.

### A.    As A Threshold Issue, Salazar Has Not Met His Burden To Show That All Of Defendants' Non-Infringement Grounds Were Based On An Incorrect Jury Instruction Or Not Supported By Substantial Evidence.

Defendants presented at least three separate and independent non-infringement grounds to the jury:

(1) The memory in the accused devices was not configured to store the accused parameter sets at the time the accused devices were sold;

(2) The memory space within the accused devices required to store the accused parameter sets was larger than the memory space required to store the accused command code sets; and

(3) The accused devices did not have a "microprocessor" that was coupled to all of the components and performed the various functions of the claims.

*See* Appx1690-1700 at 57:9-67:24.

Salazar's entire argument on appeal is that the district court improperly charged the jury with an incorrect claim construction for the "microprocessor" term and that incorrect instruction prejudiced Salazar. But of the three non-infringement arguments identified above, only the last one implicates the district court's construction of the "microprocessor" term. In such a situation, this Court has held that it "must sustain the judgment of non-infringement as to an asserted claim **if any one** of the noninfringement findings as to that claim is based on proper jury instructions and is supported by substantial evidence." *Abbott Labs. v. Syntron Bioresearch, Inc.*, 334 F.3d 1343, 1349 (Fed. Cir. 2003) (emphasis added).

Accordingly, to prevail on his claim construction argument on appeal, Salazar must show that **each** of the non-infringement arguments presented at trial were either (1) based on an incorrect jury instruction, or (2) not supported by substantial

17

evidence. *See id.* ("Thus, in order to prevail as to a particular claim, Abbott must establish as to each ground of noninfringement that either (1) the jury instruction as to that element was erroneous and prejudicial, *Ecolab Inc. v. Paraclipse, Inc.*, 285 F.3d 1362, 1373, 62 USPQ2d 1349, 1356 (Fed. Cir. 2002), or (2) the jury verdict was not supported by substantial evidence, *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448 (1998) at 1454, 46 USPQ2d (BNA) 169at 1172."). Salazar acknowledged this same law by quoting the Court's decision in *Network-1 Techs., Inc. v. Hewlett-Packard Co.*, 981 F.3d 1015, 1022 (Fed. Cir. 2020): "An erroneous claim construction on one element is harmless 'only if a reasonable jury would have been required by the evidence to find non-infringement even without the error.'"

But Salazar's reliance on *Network-1* to demonstrate prejudice and require the Court to remand the case for a new trial on infringement is misplaced. *See* App. Br. at 35-40. Salazar claims that "[t]he facts of this case are analogous to *Network-1*." *Id.* at 37. But Salazar ignores a critical distinction between the instant case and *Network-1*. In *Network-1*, this Court remanded because there was **<u>only one</u>** viable non-infringement theory presented to the jury, and it was based on an incorrect construction. While the jury in that case was presented a second non-infringement argument, it was not supported by the claims and was contrary to the facts presented at trial. *See Network-1 Techs.,* 981 F.3d 1015, 1025-26. Thus, in *Network-1*, the district court's erroneous construction was indisputably prejudicial.

18

Here, Defendants presented the three non-infringement arguments identified above—and all were supported by substantial evidence. For non-infringement arguments (1) and (2) above, Salazar does not contest the district court's instructions for those limitations. Nor does Salazar argue that non-infringement arguments (1) and (2) were not supported by substantial evidence sufficient for the jury to find non-infringement based on them.

For Defendants' non-infringement argument (1) above, Defendants presented substantial evidence that the accused devices did not contain a "memory device . . . configured to store a plurality of parameter sets." Appx1690 at 57:9-18, Appx1693-1697 at 60:8-64:12. The district court construed "configured to" to mean "a particularized arrangement of the memory device for a specific purpose." Salazar did not challenge that construction as being in error. According to the claims, the "special purpose" is storing parameter sets. Dr. Wolfe, Defendants' noninfringement and invalidity expert, testified at length about why the accused devices did not contain "a memory device" that had "a particularized arrangement" for storing the accused parameter sets. *See* Appx1183-1202 at 18:15-37:5. For this reason alone, Salazar's appeal should be rejected and the judgment affirmed.

For Defendants' non-infringement argument (2) above, Salazar does not argue that the district court erred in construing the limitation "such that the memory space required to store the parameters is smaller than the memory space required to store

the command code sets." Thus again, Salazar must show that this non-infringement argument was not supported by substantial evidence sufficient to sustain the jury's finding of no infringement. Salazar has made no such showing because he cannot.

Salazar's own expert, Dr. Oded Gottesman, conceded that the space required to store the parameter sets (384 bits) is greater than the space required to store the command code sets (224 bits) in the Accused Smartphones. *See* Appx1560-1562 at 186:4-188:8. To maintain his assertion that this limitation could nevertheless be met by the Accused Smartphones, Dr. Gottesman independently assumed that he did not have to count certain zeros stored by the parameter sets, so that his analysis counted what he deemed to be "the relevant information actually needed for the parameters." Appx1565 at 191:13-21. Where the parameter sets were required to store zeros by both the hardware and software of the Accused Smartphones, Dr. Gottesman made the analogy that, "It's like an empty egg carton, and only eight bits out of it is used. The rest is just padding. There is nothing there. It's not used." Appx860 at 152:9-18. But Gottesman conceded the point on cross-examination: "Q. None of the bits are empty. Correct? A. There's no empty bit anywhere. It has to have some value . . . . Physically there is no empty because memory doesn't have any empty cells." Appx1559 at 185:4-17. The uncontroverted evidence thus showed that the supposedly "empty" space that Dr. Gottesman originally ignored (the space occupied by zeros in the parameter sets of the Accused Smartphones) are <u>not</u> empty,

but require physical memory space, and thus the memory space required to store the parameter sets in the Accused Smartphones is greater than that of the command code sets. Salazar did not adduce any evidence to the contrary.

Dr. Wolfe confirmed that, indeed, the accused parameter sets required less memory space to store than did the accused command code sets. *See* Appx1202-1222 at 37:13-57:16. Based on this substantial and uncontroverted evidence, a reasonable jury would have been required to find non-infringement in favor of Defendants.

### B.    The District Court Correctly Construed The "Microprocessor" Limitation.

The intrinsic evidence confirms that the district court correctly construed the "microprocessor" limitation to mean <u>that at least one microprocessor</u> must satisfy all the functional (and relational) limitations recited for "said microprocessor."

Salazar argues that the district court "failed to reinvoke the non-singular meaning subsequent to the use of the definite article 'said' when it tied all the claim limitations after 'said microprocessor' to a single microprocessor," supposedly in contravention of *Baldwin Graphic Sys., Inc. v. Siebert, Inc.,* 512 F.3d 1338 (Fed. Cir. 2008) *et seq.* App. Br. at 15. Salazar argues that *Baldwin* and the subsequent line of cases "requires that 'a microprocessor' carry the meaning of 'one or more microprocessor' [sic] and that the subsequent use of the definite article 'said

microprocessor' reinvoke [sic] that non-singular meaning, absent an 'extremely limited' exception to the rule." *Id.*

As he has done throughout more than five years of litigation, Salazar continues to misunderstand Defendants' position on the construction of the "microprocessor" term. Defendants have never argued for, and the district court plainly did not adopt, a construction for the microprocessor term that limits it to a single microprocessor, and the record amply reflects this. *Baldwin* is therefore inapposite. Defendants' position has consistently been that the claim language and the law require that at least one microprocessor (of the "one or more microprocessors") must be configured to carry out all of the recited functions and to be coupled to the claimed "memory device," "user interface," and "infrared frequency transceiver." The district court was also clear in its claim construction order that it was <u>not</u> interpreting this claim term to require a single processor: "The Court agrees with Defendants that under Federal Circuit precedent, **<u>at least one microprocessor</u>** must satisfy all the functional (and relational) limitations recited for 'said microprocessor.'" Appx374 (emphasis added).

The district court's construction correctly reflected the analysis: "a microprocessor for generating …, said microprocessor creating …, a plurality of parameter sets retrieved by said microprocessor …, said microprocessor generating

…" means "one or more microprocessors, at least one of which is configured to

perform the generating, creating, retrieving, and generating functions." Appx376.

This clear ruling contradicts Salazar's assertion that "the court failed to

reinvoke the non-singular meaning subsequent to the use of the definite article 'said'

when it tied all the claim limitations after 'said microprocessor' **to a single**

**microprocessor**." App. Br. at 15 (emphasis added). The district court did no such

thing. The district court explicitly interpreted the term to allow for "**one or more**

**microprocessors**, at least one of which is configured to perform the generating,

creating, retrieving, and generating functions." Appx376 (emphasis added).

The district court correctly construed the "microprocessor" term under this

Court's controlling precedent. Salazar seeks to disregard the claim language that

follows "a microprocessor." The relevant claim language from claim 1 is reproduced

below, with the requirements of the microprocessor emphasized:

> 1.  A communications, command, control and sensing system for communicating with a plurality of external devices comprising:
>
> a microprocessor for generating a plurality of control signals used to operate said system, ***said microprocessor creating*** a plurality of reprogrammable communication protocols . . .;
>
> a memory device coupled to said microprocessor configured to store a plurality of parameter sets ***retrieved by said microprocessor*** . . .;
>
> a user interface coupled to said microprocessor . . ., ***said microprocessor generating*** a communication protocol in response to said user selections; and
>
> an infrared frequency transceiver coupled to said microprocessor . . .

23

Appx58 at 25:57-26:17.   As in *In re Varma*, each instance refers to the same microprocessor.   Salazar's construction, which would allow for multiple microprocessors each performing just a single claimed function, would violate *In re Varma*.  *See In re Varma,* 816 F.3d 1352, 1363 (Fed. Cir. 2016).  As the district court wrote in its claim construction order, "Under Federal Circuit precedent, at least one microprocessor must satisfy all the functional (and relational) limitations recited for 'said microprocessor.'"  Appx374.

As the district court properly noted, both *Convolve, Inc. v. Compaq Computer Corp.,* 812 F.3d 1313 (Fed. Cir. 2016), and *In re Varma,* 816 F.3d 1352 (Fed. Cir. 2016), "involve interpretation of a claim element introduced with the indefinite article 'a' and further defined by claim-recited characteristics of the element.  Both opinions hold that claim language alone may require a singular element to have all recited characteristics."  Appx374.

*In re Varma* addressed the appeal of a claim construction from the Patent Trial and Appeal Board (the "Board"), in which the Board interpreted the claim phrase "a statistical analysis request corresponding to two or more selected investments."  *See In re Varma, 816 F.3d 1352* at 1358.  The Board had concluded that the claim would be satisfied even if two requests would be necessary to accomplish an analysis of "two or more investments."  *Id.*   This Court rejected the Board's construction because the Board had focused on the indefinite article "a" in the phrase "a statistical

analysis," rather than on the claim language that followed.  *Id.* at 1362-63.  This Court reasoned that "the question is not whether there can be more than one request in a claim-covered system:  there can.  Rather, the question is whether 'a' can serve to negate what is required by the language following 'a': a 'request' (a singular term) that 'correspond[s]' to 'two or more selected investments.' It cannot."  *Id.*

The Court analogized the principle as follows:  "For a dog owner to have 'a dog that rolls over and fetches sticks,' it does not suffice that he have two dogs, each able to perform just one of the tasks."  *Id.* at 1363.  Thus, the Court concluded:  "In the present case, no matter how many requests there may be, no matter the variety of the requests the system may receive, the system must be adapted to receive a request that itself corresponds to at least two investments."  *Id.*  The same approach applies here.

Defendants provided the following analogy to *In re Varma* in their supplemental claim construction briefing:

| "a dog" | = | "a microprocessor" |
|---|---|---|
| "rolls over and fetches" | = | (1)  "generating a plurality of control signals"; (2) "creating a plurality of reprogrammable communication protocols"; (3) "retrieving a plurality of parameter sets"; and (4) "generating a communication protocol in response to said user selections." |

The district court held that "while a claim element introduced by an indefinite article and further defined by claim-recited characteristics may not be limited to one

instance of the element, the way in which the characteristics are recited may dictate that at least one instance of the element must have all the claim-recited characteristics." Appx375. The district court specifically distinguished the claims at issue in the instant case from claims 9 and 15 addressed in *Convolve,* (and analogized to claims 1, 3, and 5 addressed in *Convolve* and to the patent claim addressed in *Varma*):

> "Notably, the repeated use of "said microprocessor" to enumerate the functional and relational characteristics of "a microprocessor" suggests that the same microprocessor that is "coupled to" various structural elements is the one that is configured to perform the various recited microprocessor functions. In other words, one microprocessor must have all the recited characteristics."

Appx375-376.

Salazar seeks to distinguish the instant case from claims 1, 3, and 5 addressed in *Convolve* by arguing that "a processor" is "not tied to any specific component of the communications, command, control and sensing system." Appl. Br. at 32. That is incorrect. As in *Convolve*, Salazar's claim language requires a "memory device coupled to said microprocessor," "a user interface coupled to said microprocessor," and "an infrared frequency transceiver coupled to said microprocessor." It is this microprocessor that is coupled to the system's components that must be capable of performing each of the creating, generating and retrieving in the claims. This conclusion is bolstered by figures of the '467 Patent that show one microprocessor

coupled to each of the memory device, user interface, and infrared frequency transceiver:



FIG. 3

Appx39 at Fig. 3

Salazar's attempt to distinguish *In re Varma* fails similarly. Appl. Br. at 33-35. In that case, the claim language at issue was "a statistical analysis request corresponding to two or more selected investments." Here, we have "a microprocessor for generating a plurality of control signals . . .said microprocessor creating a plurality of reprogrammable communication protocols . . . a plurality of parameter sets retrieved by said microprocessor . . . said microprocessor generating

a communication protocol." Just as the Court found that the claimed "statistical analysis request" in *Varma* required two or more investments associated with it, the claimed "microprocessor" within Salazar's communication, command, control and sensing system must have all of the required couplings and be capable of performing all of the recited functions. The logic of *Varma* applies equally here.

### C. The District Court Erred In Concluding That Salazar's Claim Was Not Barred By Claim Preclusion Or The *Kessler* Doctrine.

The district court erred in concluding that Salazar's claim was not barred by claim preclusion. HTC Corp. is in privity with Defendants and adequately represented the interests of Defendants in *Salazar I.* Even if privity were lacking, the district court erred in concluding that Salazar's claim was not barred by the *Kessler* doctrine.

#### 1. Salazar's claim is barred by claim preclusion, given the final judgment in *Salazar I.*

Under the doctrine of claim preclusion, a final judgment forecloses "successive litigation of the very same claim, **whether or not relitigation of the claim raises the same issues as the earlier suit**." *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001) (emphasis added). "Whether a cause of action is barred by claim preclusion is a question of law, which we review *de novo*, applying the law of the regional circuit." *Xiaohua Huang v. Huawei Techs. Co.,* 787 Fed. Appx. 723, 726 (Fed. Cir. 2019). In the Fifth Circuit, "a final judgment on the merits of an action **precludes the parties or their privies from relitigating issues that were or**

**could have been raised in that action**." *Oreck Direct, LLC v. Dyson Inc.,* 560 F.3d

398, 401 (5th Cir. 2009) (quoting *Allen v. McCurry,* 449 U.S. 90, 94 (1980))

(emphasis added).

The Fifth Circuit test for claim preclusion applies four factors: (1) the parties

are identical or in privity; (2) the judgment in the first case was rendered by a court

of competent jurisdiction; (3) the first case was concluded by a final judgment on

the merits; and (4) the same claim or cause of action is involved in both cases. *Oreck,*

560 F.3d at 401.

Claim preclusion runs to all issues that "were or could have been raised" in

*Salazar I*—including facts that were pled but not pursued through trial. *See Oreck*

*Direct, LLC v. Dyson, Inc.,* 560 F.3d 398, 401 (5th Cir. 2009) (emphasis added*);*

*Adaptix, Inc. v. AT&T Mobility LLC,* No. 6:12-cv-17, 2015 WL 12696204, at * 28

(E.D. Tex. 2015).

In his summary judgment briefing, Salazar properly conceded both the district

court's competent jurisdiction and the finality of the final judgment entered in

*Salazar I. See* Appx89, Appx96. The judgment in *Salazar I* plainly was rendered

by a court of competent jurisdiction, and that case ended with a unanimous jury

verdict in favor of HTC Corp., which the district court entered as a final judgment.

*Salazar I,* Appx2706-2707. Fifth Circuit claim preclusion factors (2) and (3) from

*Oreck* are thus undisputed here. *See Oreck,* 560 F.3d at 401.

29

a.     **This case involves the same claim or cause of action as** *Salazar I.*

Both of the cases that Salazar tried and lost (1) asserted the same patent and (2) alleged infringement based on the sale (or offers) of the exact same Accused Smartphones. *Compare* Appx1815-1823 *with Salazar I*, Appx1969-1974. In fact, every one of the 3.8 million phones sold by Defendants (for which Salazar sought damages at the trial in the instant case) was accused and at issue in *Salazar I.* *See* Appx1844-1845; *see also* Appx902 194:19-24; *Salazar I*, Appx2248 at 44:7-10; *Salazar I*, Appx2435 at 41:12-23, Appx2443 at 49:17-23, Appx2484 at 90:6-11. There is thus no legitimate question that *Salazar I* and the instant case involved the same claim and cause of action. It is, however, worth noting that Salazar increased the measure of his claimed damages from $30.8 million ($7 per phone) in *Salazar I* to $49.6 million ($8 per phone) in the instant case. *Compare* Appx885 at 177:1-14 and Appx975 at 267:16-23 *with Salazar I* Appx2485 at 91:13-16 and Appx2435 at 41:14-23.

While Salazar argued below that the jury's verdict in *Salazar I* may have been influenced by evidence that HTC Corp. did not sell (or offer) the Accused Smartphones in the United States, the two cases do not present different causes of action merely because they vary in "the type of relief requested, substantive theories advanced, or types of rights asserted." *See United States v. Davenport,* 484 F.3d 321, 326 (5th Cir. 2007); *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001) (a

final judgment forecloses "successive litigation of the very same claim, <u>whether or not relitigation of the claim raises the same issues as the earlier suit</u>.") (emphasis added).  In the district court, Salazar nonetheless disputed whether the instant case involves the same claim or cause of action as *Salazar I.*

This Court's holding in *Senju* confirms that there is no viable dispute on this factor.  *See Senju Pharm. Co. v. Apotex Inc.,* 746 F.3d 1344, 1348 (Fed. Cir. 2014) (applying Federal Circuit law to determine whether two causes of action were the same for the purpose of claim preclusion, because "whether a particular cause of action in a patent case is the same as or different from another cause of action has special application to patent cases.").

In *Senju*, the only dispute regarding claim preclusion was whether the two cases presented the same cause of action.  *Id.* at 1347.  The Court applied its own law to this question, looking first to whether the accused products were "essentially the same" in the two cases and, second, to whether the asserted patents were the same in the two cases.  *Id.* at 1349.  Finding that the accused products clearly were the same, the Court turned to "the more difficult question [of] whether the same patent, or more precisely the same patent rights, were involved in both suits."  *Id.* at 1350. That second question was "more difficult" in *Senju* only because the plaintiff argued that an intervening reexamination (which resulted in claims that were (at least arguably) substantially different from the original patent claims) had altered the

31

asserted patent rights such that the cause of action in the second case was different than in the first. *Id.* There is no such argument (and therefore no such "difficult" question) in this case.

### b. Defendants are in sufficient privity with HTC Corp. to justify claim preclusion.

The existence of privity between Defendants and HTC Corp. was the only claim preclusion element that was in genuine dispute below. Defendants are accused of infringement based solely on their resale of the Accused Smartphones manufactured by HTC Corp., which prevailed at trial in *Salazar I*. As the Fifth Circuit recognizes, a "non-party defendant can assert res judicata so long as it is in 'privity' with the named defendant." *Russell v. SunAmerica Secur,* 962 F.2d 1169, 1173 (5th Cir. 1992).

The Fifth Circuit assesses privity as follows: "'Privity' is recognized as a broad concept, which <u>requires [the court] to look to the surrounding circumstances to determine whether claim preclusion is justified</u>." *Id.* (emphasis added). In fact, the Fifth Circuit recognizes that the "privity label simply expresses a conclusion that preclusion is proper. <u>Modern decisions search directly for circumstances that justify preclusion</u>." *Id.* (emphasis added). In other words, "parties which are sufficiently related to merit the application of claim preclusion are in privity." *Id.* at 1174.

The district court cited *Taylor v. Sturgell* to analyze whether a party's representation of a nonparty is adequate for privity and claim-preclusion purposes:

32

"a party's representation of a nonparty is 'adequate' for preclusion purposes only if, at a minimum: (1) The interests of the nonparty and her representative are aligned . . . and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty." Appx1942 (quoting *Taylor v. Sturgell,* 553 U.S. 880, 900 (2008)). The district court also cited to *Texas v. United States Dep't of Labor*, 929 F.3d 205, 211 (5th Cir. 2019), which provides that "adequate representation" is <u>not</u> required to establish privity in any event: "Federal courts have deemed three types of relationships sufficiently close to justify preclusion: (1) a non-party who has succeeded to a party's interest in property, (2) a non-party who controlled the original suit, and (3) a non-party whose interests were adequately represented by a party in the original suit." In the instant case, the other Defendants are successors to HTC Corp.'s interest in property given that they took title to the Accused Handsets from HTC Corp. or HTC America, and then sold Accused Handsets to their customers in the United States. *See* Appx902-903 at 194:25-195:17. Any other reading of "adequate representation" is irrelevant to claim preclusion in this case.

The district court nonetheless found a lack of privity on the ground that HTC Corp. supposedly failed to adequately represent other Defendants' interests in *Salazar I* because part of HTC Corp.'s defense at trial was "that none of its activities which could qualify as infringement under 35 U.S.C. § 271 took place in the United

States." *Id.* at 2-3.  That defense did not apply to the other Defendants in the instant case because their operations are based in the United States.  *See id.*  The Supreme Court has held that, under the doctrine of claim preclusion, a final judgment forecloses "successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit."  *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001).

*Taylor* is inapposite.  It involved a pair of FOIA requests, filed on behalf of two different individuals, that sought identical information from the FAA.  *Taylor* 553 U.S. at 885.  The first FOIA request was denied, and the FAA prevailed in subsequent litigation on the ground that the requested documents fell under a statutory trade secret exemption.  *Id.*  The second FOIA request was filed by a friend of the first FOIA requester, and it was identical to the first request.  *Id.*  The FAA did not respond to the second FOIA request, prompting the second filer to file a complaint based on constructive denial of the FOIA request.  *Id.* at 887.  The district court held that that lawsuit was barred by "virtual representation," and the D.C. Circuit affirmed.  *Id.* at 889.  The Supreme Court reversed, holding that the concept of "virtual representation" was far afield of the six exemptions to the general rule against non-party preclusion.  *Id.* at 896-890.

*Taylor*'s discussion about binding a non-party to a prior judgment, *see* 553 U.S. at 895, is inapplicable to the instant case because Defendants assert that it is

Salazar (not some non-party) who is now bound by the adverse judgment from *Salazar I.  Taylor* is entirely focused on the propriety of binding a non-party to an adverse judgment from a prior case.  *See Taylor,* 553 U.S. at 888 ("The Eighth Circuit's seven-factor test for virtual representation … requires an 'identity of interests' between ***the person to be bound*** and a party to the judgment.") (emphasis added).  That is the opposite of the situation presented here:  Defendants are not seeking to avoid a prior adverse judgment but are seeking <u>defensively</u> to bind Salazar to his loss in *Salazar I.*

It is obvious that Salazar had a "'full and fair opportunity' to litigate" his entire claim in *Salazar I*, and he did so and lost it.  *See Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 390-91 (1985) (Burger, C.J., concurring).  Afterwards, the district court in the instant case did not appear to give full consideration to the cases cited in Defendants' summary judgment briefing on the privity issue, *see* Appx1857-1858, which apply the principles of claim preclusion to the particularly relevant context of distributors and customers of alleged infringers who have previously been found not to infringe.  *See XP Innovations, Inc. v. Black Rapid, Inc.,* No. H-13-1856, 2013 WL 6230368, at *2-3 (S.D. Tex. Dec. 2, 2013) (manufacturer adequately represented its customer in prior patent litigation even though default judgment of infringement and validity was entered against manufacturer in the prior case; customer was bound by prior judgment); *In re*

*PersonalWeb Techs., LLC*, 18-md-2834, 2019 WL 1455332, at *8 (N.D. Cal. Apr. 2, 2019) ("defendants in the customer cases are in privity with Amazon because they share the same interest in the unfettered use of Amazon's web services, and Amazon adequately represented this interest in the Texas action."); *Adaptix, Inc. v. Amazon*, No. 5:14-cv-1379, 2015 WL 4999944, at * 6 (N.D. Cal. Aug. 21, 2015) (defendants' customers held to be in privity with named defendants because plaintiff was "fully aware" that the customers existed, possessed allegedly infringing phones, and were operating the accused phones defendants' wireless, yet plaintiff failed to bring claims against the customers).

Even if *Taylor* were on-point, Defendants plainly satisfy its test for adequate representation because (1) HTC Corp.'s interests in the free and unfettered sale and use of the Accused Handsets was aligned with Defendants' interest in the same, and (2) HTC Corp. understood at all times that it was acting in a representative capacity for its customers in litigating and vindicating the right to sell and offer the Accused Handsets in the United States. *See Taylor*, 553 U.S. at 900 ("A party's representation of a nonparty is 'adequate' for preclusion purposes only if, at a minimum:  (1) the interests of the nonparty and her representative are aligned, and (2) … the party understood herself to be acting in a representative capacity.") (internal citations omitted).  In fact, HTC Corp. and HTC America both intervened in the instant case to indemnify and defend the other Defendants, which confirms the alignment of their

36

interests and HTC's understanding of its obligations to represent and defend the interests of its customers, including Defendants, regarding the unfettered sale and use of the Accused Handsets. *See* Appx1824-1836.

The Federal Circuit, applying a Third Circuit standard similar to the Fifth Circuit's, has held that "a lesser degree of privity is required for a new defendant to <u>benefit</u> from claim preclusion than for a plaintiff to <u>bind</u> a new defendant in a later action." *Mars, Inc. v. Nippon Conlux Kabushiki-Kaisha,* 58 F.3d 616, 619 (Fed. Cir. 1995) (emphasis added), *citing Lubrizol Corp. v. Exxon Corp.,* 929 F.2d 960, 966 (3d. Cir. 1991). While *Mars* was decided before *Taylor v. Sturgell*, this Court has neither overruled nor abrogated the holding of *Mars*. To the contrary, the Court has subsequently applied *Taylor* to bar "relitigating infringement of [asserted] patents against [the same accused] products." *See Aspex Eyewear, Inc. v. Zenni Optical LLC*, 713 F.3d 1377, 1382 (Fed. Cir. 2013) (affirming district court dismissal of patent case based on issue preclusion).

The instant appeal presents an even clearer case than did *Aspex*, because here the same 3.8 million accused phones were also all accused in *Salazar I*, whereas in *Aspex* the district court held merely that there was no "material difference" between the accused products in the two cases. "The district court held that the [prior case] decisions settled the question of whether such eyewear can infringe the [asserted] patents." *Aspex Eyewear, Inc. v. Zenni Optical LLC*, 713 F.3d 1377,

1380 (Fed. Cir. 2013).  And district courts analyzing this issue since *Taylor* have determined that claim preclusion bars the later-filed lawsuit.   *See, e.g.*, *XP Innovations, Inc. v. Black Rapid, Inc.,* No. H-13-1856, 2013 WL 6230368, at *2-3 (S.D. Tex. Dec. 2, 2013) ("XP Photo brings this lawsuit against Black Rapid in its capacity as a distributor of the Millionway products . . . . XP Photo has no other apparent interest or claim in this case. Therefore, XP Photo's interests were represented by Millionway in the previous suit. XP Photo's relationship is considered sufficiently close to be in privity with Millionway, thus satisfying the first element of res judicata"); *In re PersonalWeb Techs., LLC,* 18-md-2834, 2019 WL 1455332, at *8 (N.D. Cal. Apr. 2, 2019) ("defendants in the customer cases are in privity with Amazon because they share the same interest in the unfettered use of Amazon's web services, and Amazon adequately represented this interest in the Texas Action."); *Adaptix, Inc. v. Amazon.com,* No. 5:14-cv-1379, 2015 WL 4999944, at *6 (N.D. Cal. Aug. 21, 2015) ("Adaptix was fully aware that customers like John Does existed, were in possession of the allegedly infringing devices, and were operating those devices on carrier Defendants' LTE networks, yet failed to bring claims against them").

HTC Corp. is the manufacturer of the Accused Smartphones, and Salazar knew before the trial in *Salazar I* that HTC America was the importer of the phones <u>and</u> that each Defendant was a reseller of the products with a shared interest in their

sale and unfettered use.  *See* Appx1858-1859.  In fact, Salazar's own counsel introduced that evidence at trial in *Salazar I*.  *See* Appx1873 at n.9; *Salazar I*, Appx2588 at 11:18-19, Appx2598 at 21:6-7, 21:23, Appx2638 at 61:1-2; *see also Salazar I*, Appx2061-2182, Appx2756-2970, Appx3000-3077, Appx2971-2999.  As in *Adaptix v. Amazon*, 2015 WL 4999944, at *6, these Defendants—as resellers of HTC Corp.'s products—are in privity with HTC Corp. (and HTC America) for purposes of claim preclusion.  They each shared the same interest in the unfettered sale and use of the Accused Smartphones, and HTC adequately represented that interest in *Salazar I* by winning the trial and obtaining a final judgment of no infringement.

Plaintiff was well-aware during the pendency of *Salazar I* that each Defendant in the instant case had a separate Master Purchase Agreement ("MPA") or similar contractual arrangement in place with HTC Corp., which detailed the relationship of the Defendant with HTC Corp. and the respective roles of each in providing and selling the Accused Smartphones in the United States.  *See* Appx1858-1859*; see also* Appx3081-3236, Appx3237-3314, Appx3315-3334; *Salazar I,* Appx2061-2182.  The sale of the Accused Smartphones in the United States was a collaborative effort involving HTC Corp., HTC America, and the other Defendants.  *See id.* Indeed HTC Corp. relied on HTC America and the Defendants to sell and distribute the Accused Smartphones in the United States, and Defendants relied on HTC Corp.

and/or HTC America to provide and market the products to Defendants and their customers, and to ensure interoperability with their networks.  In fact, that evidence was elicited by Salazar's own counsel during the trial in *Salazar I*.  *See, e.g.,* Appx1859*; Salazar I,* Appx2552-2558 at 158:19-164:4 (discussing work and collaboration of HTC Corp's corporate representative with Defendants); *see also Salazar II*, Appx1047-1048 at 7:9-8:8; Appx1049-1050 at 9:15-10:4; Appx1052-1054 at 12:24-14:5 (discussing HTC's relationship with Defendants).

Thus, claim preclusion applies to all issues that Salazar raised—or could have raised—in *Salazar I*, when he sought damages from HTC Corp. and Defendant AT&T Mobility—and when he could have (and should have) sued all of the other Defendants (and HTC America, Inc.) to avoid splitting his claim into multiple cases. Instead, Salazar split his claim between *Salazar I* and the instant case—and he lost the judgment in *Salazar I* before he filed the instant case, which bars his re-assertion of the same claim here.  *See In re PersonalWeb Techs. LLC*, 961 F.3d 1365, 1375 (Fed. Cir. 2020) ("Regardless of the number of substantive theories available to a party and regardless of the differences in the evidence needed to support each of those theories, a party may not split a single claim into separate grounds of recovery and raise those separate grounds in successive lawsuits.") (emphasis added); *Adaptix, Inc. v. AT&T Mobility LLC,* No. 6:12-cv-17, 2015 WL 12696204, at * 15 (E.D. Tex. 2015) ("It is well established that a party may not split a cause of action

into separate grounds of recovery and raise the separate grounds in successive lawsuits; instead, a party must raise in a single lawsuit all the grounds of recovery arising from a single transaction or series of transactions that can be brought together…. Claim splitting is just a sub-species of the doctrine of claim preclusion and is designed to 'protect the defendant from being harassed by repetitive actions based on the same claim.'""), *citing* Restatement (Second) of Judgments §24(2) (1982) and *quoting Adobe Sys. v. Wowza Media Sys., LLC*, 72 F. Supp. 989 (N.D. Cal. 2014).

Plaintiff's complaints in *Salazar I* made clear that they included the allegedly infringing sale of the Accused Smartphones by HTC Corp.'s "direct and indirect customers," of which Defendants are quite prominent and well-known to Plaintiff. *See, e.g.*, Appx1858-1859; *Salazar I*, (Appx1972 at ¶17)*; Salazar I,* Appx2061-2182; *Salazar I,* Appx2756-2970, Appx3000-3077, Appx2971-2999. Thus, as confirmed by Salazar's own pleadings in *Salazar I*, the allegedly infringing downstream sale of the Accused Smartphones by all Defendants in the instant case fell squarely within the claim presented (and finally adjudicated) in *Salazar I*.

As discussed *supra*, Defendants as resellers of HTC Corp.'s products are in privity with HTC Corp. and HTC America for purposes of claim preclusion. Each Defendant had an MPA or similar contractual arrangement in place with HTC Corp., which detailed the relationship of each Defendant with HTC Corp. and the respective

41

roles of each in providing and selling the Accused Smartphones in the United States. For example, HTC's MPA with Sprint included terms for HTC Corp. and Sprint to jointly determine final product specifications (§ 4.1) and packaging design (§ 15.2), cooperate in supply chain management (§ 4.3.9), obligations of HTC to work with Sprint's vendors (§ 5.2), HTC Corp. to provide training of Sprint's sales staff (§ 16), and an express indemnity granted by HTC Corp. to Sprint for any third-party claim of patent infringement (§ 22.3.6). *See Salazar I,* Appx2061-2182. The MPA with AT&T Mobility contained similar terms on specifications (§ 29), packaging (§ 10.1), sales staff training (§ 21), and an express warranty that the Accused Smartphones will not infringe any third-party patent rights (§ 12.4(e)). Appx3081-3236. The Purchase and Sale agreement with Verizon Wireless likewise contains similar provisions on specifications (§ 3.5), packaging (§ 3.3), sales training (§ 12.1), and an express indemnity against third party claims of patent infringement (§ 21). Appx3237-3314. HTC Corp. had a similar agreement with T-Mobile, as shown by the numerous equipment addenda to the T-Mobile Handset and Accessory Supply Agreement for the Accused Smartphones admitted into evidence at the trial in *Salazar I. Salazar I,* Appx2971-2999.

By trying and winning *Salazar I*, HTC Corp. adequately represented Defendants' interests, and privity exists between them, so claim preclusion applies. Because all four claim preclusion factors are satisfied, Salazar's claim is barred.

42

### 2.    Salazar's claim is barred by the *Kessler* doctrine.

The district court also erred when it failed to find that the *Kessler* doctrine

barred Salazar's claim in the instant case.  The district court ruled that

> Defendants have not cited any case holding that the *Kessler* doctrine
> should be applied to *pre*-judgment acts of infringement.  Instead, the
> case law has consistently limited the *Kessler* doctrine's applicability to
> *post*-judgment acts of infringement, where traditional preclusion
> doctrines may be inapplicable.  *See SimpleAir, Inc. v. Google LLC,* 884
> F.3d 1160, 1170 (Fed. Cir. 2018) ("[T]he *Kessler* doctrine just fills a
> particular temporal gap between preclusion doctrines … it does not
> displace them.").  Here, Salazar can only accuse acts of infringement
> occurring before the judgment in the previous litigation, as the asserted
> patent expired before that judgment was entered.  *See* Dkt. No. 40 at
> 19.    Accordingly, the Court holds that the *Kessler* doctrine is
> inapplicable in this context.

Appx1943 (emphasis in original).

The district court's order on this issue contravened binding precedent.  There

is no such "pre-judgment" temporal limitation found in the Supreme Court's

decision in *Kessler v. Eldred*, 206 U.S. 285, 288 (1907).  According to the Supreme

Court, the prior judgment against the patent holder in *Kessler* "settled ***finally*** and

***everywhere***, and so far as [patent holder], by virtue of his ownership of the … patent,

was concerned, that Kessler had the right to manufacture, use and sell the electric

cigar lighter before the court.  The court, having before it the respective rights and

duties on the matter in question of the parties to the litigation, conclusively decreed

the right of Kessler to manufacture and sell his manufactures free from ***all***

interference from [patent holder] … and the corresponding duty of [patent holder]

to recognize and yield that right ***everywhere and always***." *Id.* (emphasis added). In *SimpleAir*, this Court did <u>not</u> announce a new limitation on *Kessler* nor explicitly hold that the *Kessler* doctrine is limited only to post-judgment activity. *See SimpleAir, Inc. v. Google LLC,* 884 F.3d 1160, 1170 (Fed. Cir. 2018).

In fact, it is <u>the *Kessler* doctrine</u> that "serves to fill the 'temporal gap' left by claim preclusion," *In re PersonalWeb*, 961 F.3d at 1377—not *vice versa*. The reverse (that a temporal limitation applies to the *Kessler* doctrine) is neither accurate nor established by binding precedent. *SimpleAir* plainly stated that the *Kessler* doctrine "does preclude assertions of a patent against ***even*** post-judgment activity if the earlier judgment held that 'essentially the same' accused activity did not infringe that patent." *Id at 1170.* (emphasis added). There, defendant Google argued in favor of applying the *Kessler* doctrine based on a prior case (in which Google was a defendant) to preclude a claim on a different (but related) set of patents being asserted against the same set of products as were involved in the first case. *Id.* at 1163-64. Because the defendants were the same in both cases, there was no privity gap for *Kessler* to fill in *SimpleAir*, but there was a temporal gap for *Kessler* to fill. Because the trial court in *SimpleAir* had not analyzed whether the patents in the second case were substantially the same as the ones adjudicated in the first case, however, the Court ruled that no form of preclusion applied. *Id.*

In this case, Defendants respectfully submit that the Federal Circuit should not find or apply a temporal limitation on *Kessler* based on *SimpleAir* or otherwise. The Court in *SimpleAir* stated that, "In *Brain* Life … [w]e relied on the *Kessler* doctrine only to bar assertion of the claims at issue against essentially the same products made or sold <u>after</u> the judgment of noninfringement in the earlier case." *Id.* at 1170. But the *Brain Life* Court plainly <u>did not</u> pronounce a rule that could or should limit *Kessler* solely to post-judgment activity. Nor did it overrule the Court's decision in *MGA, Inc. v. General Motors Corp.,* 827 F.2d 729, 735 (Fed. Cir. 1987).

Here, the district court's ruling contravened the binding precedent of *MGA,* which applied *Kessler* to pre-judgment activity. *See MGA at 735.* In *MGA,* the patentee sued a manufacturer for violating a license agreement due to nonpayment of royalties on some models. *Id.* at 731. The manufacturer won by final judgment in 1984. *Id.* <u>The year before that final judgment</u>, the patentee had sued the manufacturer's customer for infringement of the same patent. *Id.* In the appeal of that case, this Court ruled that *Kessler* immunized the customer from the lawsuit in light of the final judgment in the earlier-filed case, without announcing or applying any temporal limitation on that immunity. *Id.* at 734-35 ("Since the accused machines are admittedly the same in both suits, it is [manufacturer's] right that the accused machines be freely traded without interference from [patent holder]"). This Court did not state or imply that the *Kessler* doctrine was limited to post-judgment

45

activity. *See id.* It fully affirmed the district court's dismissal of the customer case, which was based in part on pre-final judgment conduct, given the filing date of the customer case.

Moreover, *SpeedTrack v. Office Depot,* 791 F.3d 1317, 1328 (Fed. Cir. 2015), illustrates why the *Kessler* doctrine should and does apply to pre-judgment activity: "The *Kessler* doctrine is a <u>necessary supplement to issue and claim preclusion</u>: without it, [1] a patent owner could sue a manufacturer for literal infringement and, if unsuccessful, file suit against the manufacturer's customers under the doctrine of equivalents. <u>Or, [2] a patent owner could file suit against the manufacturer's</u> <u>customers under any claim or theory not actually litigated against the manufacturer</u> <u>as long as it challenged only those acts of infringement that post-dated the judgment</u> <u>in the first action</u>. **<u>That result would authorize the type of harassment that the</u>** **<u>Supreme Court sought to prevent in *Kessler*</u>.**" *Id.* (emphasis added). This is the untenable situation in which Defendants found themselves in the instant case. To hold that *Kessler* is limited to pre-judgment conduct would defeat the language, policy, and purpose of the *Kessler* doctrine, especially if the courts do not find privity between a manufacturer and its customers as in the close relationship between HTC Corp. and the other Defendants. *See Kessler*, 206 U.S. at 289 ("The effect which may reasonably be anticipated of harassing the purchasers of Kessler's manufactures by claims for damages on account of the use of them, would be to diminish Kessler's

opportunities for sale."); *Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1056 (Fed. Cir. 2014) (given that "traditional notions of claim preclusion" may not apply post-final judgment, "[t]he *Kessler* Doctrine fills the gap between these preclusion doctrines, however, allowing an adjudged *non-infringer* to avoid repeated harassment for continuing its business as usual post-final judgment in a patent action where circumstances justify that result.") (*italics* in original; underline added); *see also Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 479 - 480 (Fed. Cir. 2014) (indicating that products sold after an earlier judgment could trigger claim preclusion if they were "essentially the same" as those in the earlier case).

Indeed this Court has previously indicated that the *Kessler* doctrine grants a "limited trade right" without referencing or applying any temporal limitations on the doctrine: "*Kessler* granted 'a limited trade right which is the right to have that which [a court has determined] it lawfully produces freely bought and sold without restraint or interference. It is a right which attaches to its product—to a particular thing—as an article of lawful commerce.' . . . The *Kessler* Doctrine, therefore, gave LaSalle (an accused infringer) rights with respect to specific products that had been held to be non-infringing, even when the specific *acts* of infringement would not be barred by claim preclusion because they occurred post-final judgment." *Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1057 (Fed. Cir. 2014) (*italics* in original; underline added), *quoting MGA*, 827 F.2d at 734-35; *see also In re PersonalWeb Techs. LLC*,

961 F.3d 1365, 1378 (Fed. Cir. 2020) ("The Court in *Kessler* recognized that even if a manufacturer of goods were to prevail in a patent infringement suit, the manufacturer could be deprived of the benefits of its victory if the patentee were free to sue the manufacturer's customers.").

Given the jury verdict and final judgment in *Salazar I*, the *Kessler* doctrine precludes Salazar's claim in the instant case. At trial in *Salazar I*, the jury found that HTC Corp's alleged manufacture, importation, and sale of the Accused Smartphones did not infringe the asserted patent. *See Salazar I*, Appx2706-2707. The original complaint in *Salazar I* also named AT&T, Inc. as a defendant (and Plaintiff later sought to add AT&T Mobility LLC as a defendant too)—but Plaintiff made the strategic decision to drop its claims against those named defendants before trial. *See Salazar I*, Appx1969-1974, Appx1975-1979; *see also* 2:17-cv- 00593-JRG-RSP, Appx3078-3080. In doing so, Salazar's complaints in *Salazar I* made no distinction between HTC Corp. and its downstream customers: "Defendants directly infringe and induce others to infringe … the '467 Patent in the United States by offering for sale and selling smartphone products including but not limited to HTC One M7, HTC One M8, and HTC One M9." Appx1970 at ¶ 7, Appx1971-1973 at ¶15-24. And Plaintiff accused all of HTC Corp.'s "direct and indirect customers"— including every Defendant named in the instant case—of infringement in *Salazar I*. *Id.* at ¶ 17.

Salazar could have litigated all of his *Salazar II* claim at the same time he filed, tried, and lost *Salazar I*.  In fact, he did precisely that right through the final judgment in *Salazar I*, without going to the trouble of suing AT&T Mobility, Sprint, T-Mobile, and Verizon Wireless as defendants in his live pleadings.  *See Salazar I,* Appx2199-2204.  In proceeding to trial in Salazar *II*, Plaintiff was allowed to pursue exactly the same claim on exactly the same patent for exactly the same Accused Smartphones, against HTC Corp.'s downstream customers, which is the precisely the scenario that the *Kessler* doctrine and claim preclusion should preclude.

### D.    The District Court Erred In Holding That Claims 1-7, 27-30, And 34 Are Not Anticipated.

It was reversible error for the district court to hold that asserted claims 1-7, 27-30, and 34, are not anticipated and therefore valid.  A claim is "invalid as anticipated where each and every element is found within a single prior art reference, arranged as claimed."  *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1294 (Fed. Cir. 2015).  While a defendant bears "the initial burden of going forward with evidence to support its invalidity allegation," once the defendant has satisfied that initial burden, "the burden of going forward shifts to the patentee to present contrary evidence and argument."  *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1364 (Fed. Cir. Jan. 25, 2018).

Defendants presented substantial, clear and convincing evidence that claims 1-7, 27-30, and 34 are anticipated by U.S. Patent No. 5,410,326 ("Goldstein").

Goldstein was filed on December 4, 1992, and issued on April 25, 1995, so it is prior art under 35 U.S.C. § 102(a) and (e). The Goldstein reference was not considered by the Patent Office during prosecution. *See* Appx1257 at 92:14-24. Salazar did not contest that Goldstein is prior art to the '467 Patent. Goldstein is a "universal remote control device which is programmed to operate a variety of consumer products." Goldstein at Abstract. As Dr. Wolfe explained during trial, "Goldstein discloses a hand-held device that operates as a remote control, either through infrared or through radio, and also has some telephony characteristics and can communicate with either a telephone interface or set top box." Appx1258 at 93:14-18. Communication with those devices is bidirectional. *See* Appx1259 at 94:19-21.

Dr. Wolfe testified that all of the asserted claims are anticipated, and demonstrated where each limitation of the asserted claims is found in Goldstein. *See* Appx1256-1292 at 91:18-127:7. For each claim term, Dr. Wolfe identified the relevant portions of the Goldstein reference and explained how they relate to the claim language. *See id.* To the extent that Goldstein does not use verbatim claim language, Dr. Wolfe explained why a person of ordinary skill in the art would recognize Goldstein as anticipating each and every claim of the '467 Patent. *See, e.g.*, *In re Gleave*, 560 F.3d 1331, 1334 (Fed. Cir. 2009) (prior art reference need not use the same terminology to anticipate).

The preamble of independent claim 1 recites "[a] communications, command, control and sensing system for communicating with a plurality of external devices." Dr. Wolfe identified the different external devices in Goldstein (i.e., the set top box, stereo receiver, cable box, and television), and testified that the communications, command, control and sensing functionality described in Goldstein satisfies the language of claim 1.  *See* Appx1260-1264 at 95:15-99:25 (citing Goldstein, 2:61-63, 3:14-21, 7:4-10, 7:23-32, 12:48-53, cl. 15, Fig. 1).

The next limitation of claim 1 recites "a microprocessor for generating a plurality of control signals used to operate said system, said microprocessor creating a plurality of reprogrammable communication protocols, for transmission to said external devices wherein each communication protocol includes a command code set that defines the signals that are employed to communicate with each one of said external devices."  Dr. Wolfe testified that Goldstein discloses a single microprocessor ("MPU 89") that performs all of the functionality described in Goldstein, as well as all of the limitations required of the microprocessor in claim 1. *See* Appx1265-1267 at 100:4-102:21 (citing Goldstein, 3:29-44, 12:34-38, 13:29-35, Fig. 10).

The next limitation of claim 1 recites "a memory device coupled to said microprocessor configured to store a plurality of parameter sets retrieved by said microprocessor so as to recreate a desired command code set, such that the memory

51

space required to store said parameters is smaller than the memory space required to store said command code sets." Dr. Wolfe identified the memory device in Goldstein ("RAM 90"), then testified regarding the parameters sets that are used to recreate a desired command code set. *See* Appx1267-1272 at 102:22-107:10 (citing Goldstein, 3:61-4:5, 12:62-13:4, 13:23-35, Fig. 10). He also testified that the "memory space" requirement is disclosed by Goldstein because "pulse widths and duration" stored in memory are much smaller than the 1s and 0s that are transmitted as command codes. *See id.* at 104:11-22.

The next limitation of claim 1 recites "a user interface coupled to said microprocessor for sending a plurality of signals corresponding to user selections to said microprocessor and displaying a plurality of menu selections available for the user's choice, said microprocessor generating a communication protocol in response to said user selections." Dr. Wolfe testified that Goldstein provides a user interface via a touch screen, as well as how interactions with that user interface disclose the language of the claim. *See* Appx1272-1275 at 107:11-110:3 (citing Goldstein, 12:48-53, Fig. 1, Fig. 2a, Fig. 2b, Fig. 3b, Fig. 10).

The final limitation of claim 1 recites "an infra-red frequency transceiver coupled to said microprocessor for transmitting to said external devices and receiving from said external devices, infra-red frequency signals in accordance with said communications protocols." Dr. Wolfe testified that a "transceiver" is a device

that can both transmit and receive. *See* Appx1275 at 110:11-13 He identified the "infrared receiver 27" and "infrared transmitter 29" as the "infra-red frequency transceiver," and testified regarding how those components of Goldstein meet the language of the claim. Appx1275-1277 at 110:4-112:15 (citing Goldstein, 7:44-55, 13:47-57, Fig. 10).

The preamble, "microprocessor," "user interface," and "infra-red frequency transceiver" limitations of independent claim 34 are identical to that of independent claim 1. Those limitations are anticipated by Goldstein for the same reasons as claim 1. The "memory" limitation of independent claim 34 differs from claim 1 in two ways. First, claim 34 does not include the same "memory space" limitation as claim 1. Second, claim 34 requires that the memory device is "configured to store a plurality of parameter sets retrieved by said microprocessor so as to recreate based on said parameter sets a desired set of pulse signals corresponding to logical '1's' and '0's' as specified by a command code set." Dr. Wolfe testified that the microprocessor described in Goldstein generates pulses that are 1's and 0's, as required by the language of the claim. *See* Appx1290-1291 at 125:22-126:25 (citing Goldstein, 13:15-35).

Salazar did not shift the burden back to Defendants because Salazar did not present sufficient contrary evidence and argument demonstrating the '467 Patent's validity. Dr. Wolfe's opinions were not meaningfully contradicted by Salazar's

expert, Dr. Gottesman.  Instead, Dr. Gottesman could not articulate any clear reason why the asserted claims are valid, beyond the presumption of validity to which all patents are entitled.  *See* Appx1509 at 135:17-22, Appx1525 at 151:18-21.  In some instances, Dr. Gottesman's primary assertion on invalidity was an *ipse dixit* statement that the Goldstein reference does not describe a limitation.  *See generally* Appx1516-1528 at 142:7-154:12.

Dr. Gottesman contested three limitations of claim 1:  (i) the preamble; (ii) the "memory device" limitation; and (iii) the "infra-red transceiver" limitation.  *See generally* Appx1516-1520 at 142:4-146:4.  He conceded, with respect to the preamble, that Goldstein teaches "remote control" and "smart remote control."  *See id.* 142:10-14.  His only rebuttal was that Goldstein "does not teach a communication command control and sensing system for communicating with external devices." *See id.* 142:7-14.  In doing so, he disregarded Dr. Wolfe's testimony that the set top box, stereo receiver, cable box, and television disclosed in Goldstein meet the "external device" limitation of the preamble. *See id.* 142:7-144:2.  Thus, Dr. Wolfe's testimony, and the substantial supporting evidence, that Goldstein discloses the preambles of independent claims 1 and 34 stands unrebutted.  For the "memory device" limitation of claim 1, Dr. Gottesman did nothing more than testify that "Goldstein does not disclose by clear and convincing evidence that there is such a memory space" because "Goldstein teaches all kind of encoding and mapping, but

it does not disclose this part of the claim element." *See id.* 144:3-145:4. At no point did he address any of the evidence identified by Dr. Wolfe. *See id.* Dr. Gottesman's testimony regarding the "infra-red frequency transceiver" was similarly conclusory and deficient. *See id.* 145:6-25. There again, Dr. Gottesman did not address any of the evidence identified by Dr. Wolfe or the external devices identified by Dr. Wolfe, other than to say that he disagreed without providing any reasoning. *See id.*

For independent claim 34, Dr. Gottesman relied on the same insufficient opinions as he did for independent claim 1. *See* Appx1526-1528 at 152:18-154:4. Dr. Gottesman acknowledged that the "memory device" limitation in claim 34 is different than claim 1. *See id.* 153:5-16. But his "reasoning" for why the limitation is not disclosed by Goldstein consisted of only two words: "It's not." *Id.* 153:17-19.

Dr. Gottesman's rebuttal testimony on the dependent claims followed the same pattern. Dr. Gottesman made conclusory statements without addressing the substantial evidence from Defendants' invalidity case. *See* Appx1520-1526 at 146:11-152:14. In sum, Dr. Gottesman's testimony was conclusory and insufficient to rebut the substantial evidence presented by Defendants that demonstrated that Goldstein anticipates the asserted claims of the '467 Patent. *See, e.g., Iovate Health Sciences, Inc. v. Bio-Engineered Supplements & Nutrition, Inc.*, 586 F.3d 1376, 1381-82 (Fed. Cir. 2009) (applying Fifth Circuit law). "A jury may not disregard

arbitrarily the unequivocal, uncontradicted and unimpeached testimony of an expert witness on a technical question beyond the competence of lay determination." *NewCSI, Inc. v. Staffing 360 Sol'ns, Inc.*, 865 F.3d 251 (5th Cir. 2017).

### E.   CONCLUSION AND RELIEF SOUGHT

For the foregoing reasons, Defendants respectfully submit that the Court should not remand the case for a partial new trial on infringement, but should affirm the trial court's judgment.

Dated:  March 9, 2022                    Respectfully submitted,

*/s/ Fred I. Williams*
Fred I. Williams
*Principal Attorney*
fwilliams@wsltrial.com
WILLIAMS SIMONS & LANDIS PLLC
The Littlefield Building
601 Congress Ave, Suite 600
Austin, TX  78701
512.543.1354 telephone

Todd E. Landis
tlandis@wsltrial.com
WILLIAMS SIMONS & LANDIS PLLC
2633 McKinney Ave., Suite 130 #366
Dallas, TX  75204
512.543.1357 telephone

John Wittenzellner
johnw@wsltrial.com
WILLIAMS SIMONS & LANDIS PLLC
1735 Market Street, Suite A#453
Philadelphia, PA 19103
512.543.1373 telephone

COUNSEL FOR DEFENDANTS AT&T MOBILITY LLC, T-MOBILE, USA, INC., CELLCO PARTNERSHIP DBA VERIZON WIRELESS, SPRINT UNITED MANAGEMENT COMPANY, HTC CORPORATION AND HTC AMERICA, INC.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).  The brief contains 13,395 words, excluding the parts of the brief exempted by the Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).  The brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman type style.

Dated:  March 9, 2022            */s/ Fred I. Williams*
                                 Fred I. Williams

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court of the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system on March 9, 2022.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated:  March 9, 2022            */s/ Fred I. Williams*
                                 Fred I. Williams