**2021-2320, -2376**

# United States Court of Appeals for the Federal Circuit

JOE A. SALAZAR,

*Plaintiff-Appellant,*

— v. —

AT&T MOBILITY LLC, SPRINT UNITED MANAGEMENT COMPANY, T-MOBILE USA, INC., CELLCO PARTNERSHIP INC., dba Verizon Wireless, Inc.,

*Defendants-Cross-Appellants,*

HTC CORPORATION, HTC AMERICA, INC.,

*Defendants-Appellees.*

*On Appeal from the United States District Court for the Eastern District of Texas in No. 2:20-cv-00004-JRG J. Rodney Gilstrap, Chief Judge*

## RESPONSE AND REPLY BRIEF FOR PLAINTIFF-APPELLANT

DARIUSH KEYHANI
KEYHANI LLC
1050 30th Street NW
Washington, DC 20007
(202) 748-8950
dkeyhani@keyhanillc.com

*Counsel for Plaintiff-Appellant*

APRIL 5, 2022



# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………iv

COUNTER-STATEMENT OF THE ISSUES FOR CROSS-APPEAL…………...1

COUNTER-STATEMENT OF THE CASE FOR CROSS-APPEAL…………...2

COUNTER-STATEMENT OF FACTS FOR CROSS-APPEAL……………….....4

I.    SALAZAR'S PRIOR LAWSUIT AGAINST HTC CORP. ………………..4

    A.    Salazar sues HTC for infringement of the '467 Patent. ……………..4

    B.    Salazar attempts to join AT&T as a defendant, and HTC and AT&T successfully sever AT&T from the case. ……………….....…………..5

    C.    Salazar moves to compel production of the carrier purchase agreements. …………………..……………….....………………....…….7

    D.    Chief Judge Gilstrap presides over the trial against HTC. …………...8

        1.    HTC argues the defense of no U.S. sales. ……………....…...8

        2.    The jury finds that HTC is not liable for infringement. ……….8

        3.    Following the verdict of noninfringement, HTC withdraws its invalidity counterclaim. ……………….....……………....…...8

II.    SALAZAR'S SUBSEQUENT CASE AGAINST THE U.S. CARRIER DEFENDANTS. …………………....…………….....……………....………9

    A.    Salazar sues the U.S. cell phone carriers for patent infringement in Texarkana. …………………....…………….....……………....……..9

    B.    Defendants successfully transfer the case to Marshall, Texas. ………9

    C.    Defendants attempt to dismiss the case based on preclusion. ………10

    D.    Chief Judge Gilstrap presides over the jury trial. ……………....…12

i

SUMMARY OF ARGUMENT FOR CROSS-APPEAL……………….................13

ARGUMENT FOR CROSS-APPEAL………………...……………….....…….....16

I.    STANDARD OF REVIEW………………...……………….....…………16

    A.    Motion for summary judgment ………………...……………....…16

    B.    Rule 50 and jury's finding of validity………………...……....……...16

II.    DISCUSSION…………….....……………...……………...………..17

    A.    The district court correctly determined that claim preclusion is inapplicable to this case. ……………...……………...………..18

        1.    The district court properly concluded that HTC and Defendants are not in privity. ……………...……………...….……..19

            a.    HTC and Defendants distanced themselves at every opportunity, including severing AT&T from the first case. ……………...……………....……………….22

            b.    No privity exists because HTC made strategic decisions to further its own interests at Defendants' expense. …..27

            c.    No privity exists because HTC attempted to conceal its relationship with Defendants at the relevant times in the first case. ……………...……………...………..28

        2.    Claim preclusion is improper because the two actions do not involve the same claim or cause of action. ……………......30

            a.    The cases do not share the same nucleus of operative facts or arise from the same transaction. ……………...31

            b.    Treatment of the cases as a unit does not conform to the parties' expectations, business understanding, or usage……………………………………...…………33

3.    Salazar was barred from bringing his claim in the HTC case……………………………………………………...33

4.    Salazar's claims of HTC's indirect infringement are inapposite. ……………………………………………………...…34

B.    The district court correctly determined that the *Kessler* doctrine does not bar Salazar's claims. ……………...……………….....………..35

1.    *Kessler* is a limited doctrine that does not subsume claim preclusion. ……………....……………...……………..35

2.    The *Kessler* doctrine is inapplicable because the accused phones never attained noninfringing status. ………………....39

3.    Salazar's present claims are not new infringement theories that should have been brought in the HTC case. ………………....41

C.    This Court should sustain the jury's verdict that the asserted claims of the '467 Patent are valid. ……………...……………....……….42

1.    Defendants have waived their ability to challenge invalidity...42

2.    The sufficiency of the evidence supports the jury's determination that the asserted claims of the '467 Patent are valid. ……………...…………....……………...…..44

ARGUMENT FOR SALAZAR'S APPEAL ……………...……………....…49

I.    THE DISTRICT COURT'S INTERPRETATION OF "SAID MICROPROCESSOR" CONTRAVENES FUNDAMENTAL RULES OF CLAIM CONSTRUCTION. ……………...……………...………..49

II.    THE COURT'S ERRONEOUS CLAIM CONSTRUCTION WAS NOT HARMLESS. ……………...…………….....……………...………..54

CONCLUSION……………...……………....…………...……….....60

# TABLE OF AUTHORITIES

## Cases

*01 Communique Lab'y, Inc. v. LogMeIn, Inc.*, 687 F.3d 1292 (Fed. Cir. 2012) …51

*Abbott Labs. v. Syntron Bioresearch, Inc.*, 334 F.3d 1343 (Fed. Cir. 2003) ……..54

*Acumed LLC v. Stryker Corp.*, 525 F.3d 1319 (Fed. Cir. 2008) ……………...30, 31

*Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040 (Fed. Cir. 2016) ……………..54

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338
    (Fed. Cir. 2008) ……...………………………...…………………..50, 51, 52

*Bellard v. Gautreaux*, 675 F.3d 454 (5th Cir. 2012) ……………...…………...16

*Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045 (Fed. Cir. 2014) ……………...35, 40

*CommScope Techs. LLC v. Dali Wireless Inc.*, 10 F.4th 1289 (Fed. Cir. 2021) …17

*Cone v. W. Va. Pulp & Paper Co.*, 330 U.S. 212 (1947) ……………............42

*Convolve, Inc. v. Compaq Computer Corp.*, 812 F.3d 1313
    (Fed. Cir. 2016) …………………..............…………...............…53, 54

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356
    (Fed. Cir. 2018) …………….…...……………...……………....44, 45

*Ecolab, Inc. v. Paraclipse, Inc.,* 285 F.3d 1362 (Fed. Cir. 2002) ………………...55

*Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*, 909 F.3d 398
    (Fed. Cir. 2018) …………….…...……………...……………....45, 49

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317
    (Fed. Cir. 2020). …………….…...……………...……………....…..16

*Eubanks v. F.D.I.C.*, 977 F.2d 166 (5th Cir. 1992) ……………...……………..33

*Hous. Prof'l Towing Ass'n v. City of Hous.*, 812 F.3d 443 (5th Cir. 2016) …18, 30

*In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*,
676 F.3d 1063 (Fed. Cir. 2012) ……………...………………...……44, 45

*In re PersonalWeb Techs. LLC*, 961 F.3d 1365 (Fed. Cir. 2020) ………………...36

*In re Varma*, 816 F.3d 1352 (Fed. Cir. 2016) ……………...……………52, 53

*Int'l Ins. Co. v. RSR Corp.,* 426 F.3d 281 (5th Cir. 2005) ……………...……...17

*Kessler v. Eldred,* 206 U.S. 285 (1907) ……………...……………...…*passim*

*Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*
140 S. Ct. 1589 (2020) …………….…..……………...……………..…37

*Meza v. Gen. Battery Corp.*, 908 F.2d 1262 (5th Cir. 1990) ……………...…..20

*MGA, Inc. v. LaSalle Mach. Tool, Inc.,* 148 Mich. App. 350 (1986) …….…..…40

*Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91 (2011) ……………...….……..44

*Mirror Worlds Techs., LLC v. Apple Inc.*, No. 6:13-CV-419, 2015 WL 6750306
(E.D. Tex. July 7, 2015) ……………...……………...……………….37

*Network-1 Techs., Inc. v. Hewlett-Packard Co.*, 981 F.3d 1015
(Fed. Cir. 2020) ……………...……………………...……………54, 55

*Orion IP, LLC v. Hyundai Motor Am.*, 605 F.3d 967 (Fed. Cir. 2010) ………….45

*Oyster Optics, LLC v. Cisco Sys., Inc.*, No. 2:20-CV-00211-JRG,
2021 WL 1530935 (E.D. Tex. Apr. 16, 2021) ……………...………….36

*Petro–Hunt, L.L.C. v. United States,* 365 F.3d 385 (5th Cir. 2004) ………….30, 31

*Polara Eng'g Inc v. Campbell Co.*, 894 F.3d 1339 (Fed. Cir. 2018) ……….....44, 49

*Power-One, Inc. v. Artesyn Techs., Inc.*, 599 F.3d 1343 (Fed. Cir. 2010) ……….17

*Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, 853 F.3d 1370
(Fed. Cir. 2017) …………….……………….……………….……… 17

v

*Royal Ins. Co. of Am. v. Quinn-L Capital Corp.*, 960 F.2d 1286
(5th Cir. 1992) …..……………….……………….……….………19, 27, 29

*Rubber Tire Wheel Co. v. Goodyear Tire & Rubber Co.*, 232 U.S. 413 (1914) …36

*Russell v. SunAmerican Secs., Inc.,* 962 F.2d 1169 (5th Cir. 1992) ……………...19

*Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.,* 264 F.3d 1344
(Fed. Cir. 2001) …………….….…………….……….…………….....44

*Senju Pharm. Co., Ltd. v. Apotex, Inc.*, 746 F.3d 1344 (Fed Cir. 2014) …………31

*SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160 (Fed. Cir. 2018) ……………*passim*

*Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512 (5th Cir. 2016) ……..…16

*S. Snow Mfg. Co. v. SnoWizard Holdings, Inc.*, 567 F. App'x 945
(Fed. Cir. 2014) …………….….…………….………………….…..…..20

*Sw. Airlines, Inc. v. Tex. Int'l Airlines, Inc.,* 546 F.2d 84 (5th Cir. 1977) ……..…19
.

*SpeedTrack Inc. v. Office Depot, Inc.*, 791 F.3d 1317
(Fed. Cir. 2015) …………….….………….……….………...........37, 38, 39

*SpeedTrack, Inc. v. Office Depot, Inc.,* No. C 07–3602 PJH, 2014 WL 1813292
(N.D. Cal. May 6, 2014) ……………….……………………………….…40

*Texas v. Dep't of Labor*, 929 F.3d 205 (5th Cir. 2019) ………………………20, 29

*Taylor v. Sturgell*, 553 U.S. 880 (2008) …………….……………….……20, 29

*Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559 (5th Cir. 2005) ………....30

*Transclean Corp. v. Jiffy Lube Int'l, Inc.*, 474 F.3d 1298 (Fed. Cir. 2007) …….…20

*Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394 (2006) ………16, 42

*Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665 (5th Cir. 2003) ……….…19

*WIAV Networks, LLC v. 3COM Corp.*, 2010 U.S. Dist. LEXIS 110957
(N.D. Cal. Oct. 1, 2010) ……………….……………….……………….25

**Statutes**

35 U.S.C. § 282………………….……………….……………….……………....44

35 U.S.C. § 299………………….……………….……………….……………..7, 26, 41

**Rule**

Fed. R. Civ. P. 50………………….……………….…………….…………….*passim*

**Other Authorities**

Restatement (Second) of Judgments § 24(2) ……………….……………….…...30

Pet. for Writ of Cert., *PersonalWeb Techs., LLC v. Patreon, Inc., et al.*,
No. 20-1394 (Apr. 6, 2021) ……………….……………….…………....…36

## <u>COUNTER-STATEMENT OF THE ISSUES FOR CROSS-APPEAL</u>

1.  Whether the district court correctly determined that Salazar was not precluded from suing Defendants AT&T Mobility LLC, Sprint/United Management Company, T-Mobile USA, Inc., and Cellco Partnership d/b/a Verizon Wireless (collectively, "Defendants")—the U.S. cell phone carriers who used, sold, and offered for sale the accused phones—based on his prior lawsuit against HTC Corp., the Taiwanese manufacturer of the Accused Phones?

2.  Whether the district court correctly determined that the *Kessler* doctrine is inapplicable in this case, where Salazar's patent expired before judgment was reached in the prior case and the Accused Phones never attained noninfringing status?

3.  Whether, under Federal Rule of Civil Procedure 50, Defendants waived their ability to challenge validity on appeal?

4.  Whether the sufficiency of the evidence supports the jury's determination that the asserted claims of the '467 Patent are valid?

## **COUNTER-STATEMENT OF THE CASE FOR CROSS-APPEAL**

In their Response Brief,[1] Defendants AT&T Mobility LLC; Sprint United Management Company; T-Mobile USA, Inc. and Cellco Partnership d/b/a Verizon Wireless, Inc. (collectively, "Defendants") raise challenges relating to (1) the district court's finding that claim preclusion and the *Kessler* doctrine are inapplicable to this case and (2) the jury's determination that the asserted claims of U.S. Patent No. 5,802,467 ("the '467 Patent") are valid.

In 2019, Salazar sued Defendants, the U.S. retailers of the accused HTC One M7, HTC One M8, and HTC One M9 smartphones (collectively, the "Accused Phones"), for infringement of the '467 Patent in the Eastern District of Texas. Appx1815-1823, ¶ 18. Salazar had previously sued HTC Corp. ("HTC"), the Taiwanese manufacturer of the Accused Phones, in the same court, alleging infringement of the '467 Patent. Appx1963-1968. HTC argued throughout that case—including as a centerpiece of its defense at trial—that it could not be held liable under U.S. law because it was strictly a Taiwanese company doing business in Taiwan, and it performed no infringing acts in the United States. *See, e.g.*, Appx3341; Appx3345; Appx3362; Appx3379-3380; Appx3387-3388(48:2-49:7); Appx2267-2268(63:20-64:17); Appx3435-3436(67:17-68:2); Appx1897-1898(21:21-22:23). HTC also argued that its activities and Defendants' activities

---

[1] As detailed in Salazar's motion to dismiss, Defendants filed a "Response Brief" and later indicated that certain sections should be treated as a cross-appeal. For the purposes of this brief, Salazar addresses those sections as a cross-appeal.

were completely independent transactions. *See, e.g.*, Appx3420. The jury ultimately returned a verdict of noninfringement, although the verdict form did not clarify whether this was because (1) HTC did not commit any infringing acts in the United States or (2) the Accused Phones were noninfringing. Appx2200. Thus, the jury never made a specific finding that HTC's products were noninfringing (i.e., not constituting the "patented invention"). Appx2200.

During the subsequent case against the U.S. carrier Defendants, from which this appeal is taken, Defendants attempted on three separate occasions to dismiss the case based on preclusion. All of Defendants' attempts were unsuccessful. Appx1942-1944; Appx1584(210:10-23). Chief Judge Gilstrap—who presided over both cases and who, in Defendants' words, had "extraordinary experience with this plaintiff, the '467 Patent, the HTC Smartphones, and the related issues that Salazar asks the Court to resolve"—held that Defendants had failed to demonstrate that all of the claim preclusion elements were satisfied. Appx67; Appx1942-1943; Appx1899-1900(23:18-24:5); Appx1900-1901(24:17-25:16). Chief Judge Gilstrap further determined that the *Kessler* doctrine was inapplicable because *Kessler* is a limited doctrine that applies to post-judgment acts of infringement, and since the '467 Patent expired *before* judgment was entered in the HTC case, Salazar could not accuse post-judgment acts of infringement. Appx1943.

A jury trial took place in August 2021. Defendants raised the defense that the asserted claims of the '467 Patent were invalid as anticipated by a single prior art

reference, "Goldstein," a "remote control device." Appx1256-1257(91:18-92:1). Both parties presented evidence through technical expert witnesses on the issue of validity, and each side cross-examined the other side's expert witnesses. The jury ultimately returned a verdict of noninfringement, while finding that all the asserted claims of the '467 Patent were valid. Appx394-400. Defendants never challenged the sufficiency of the evidence with respect to validity, nor did they ever move on the issue of validity—to the contrary, Defendants explicitly told the court they would not be moving for judgment as a matter of law under Rule 50(a). Appx1572(198:20-22).

## COUNTER-STATEMENT OF FACTS FOR CROSS-APPEAL

## I. SALAZAR'S PRIOR LAWSUIT AGAINST HTC CORP.

### A. Salazar sues HTC for infringement of the '467 Patent.

On October 5, 2016, Salazar sued HTC in the Eastern District of Texas, Marshall Division, alleging that HTC had directly infringed the '467 Patent through the use, sale, and offer for sale in the United States, and importation into the United States, of the Accused Phones. Appx1965, ¶13. Salazar further alleged that HTC infringed the patent "indirectly by inducing the infringement of the '467 Patent claims by third parties, including its direct and indirect customers." Appx1965, ¶15. Salazar did not sue any other party in his complaint.

HTC raised alternate defenses as to why it was not liable for infringement. HTC argued that it could not be held liable under U.S. law because it was strictly a Taiwanese company doing business in Taiwan, and it performed no infringing acts in the United States. Appx3341; Appx3345; Appx3362; Appx3379-3380; Appx1897(21:21-23). HTC stated that it manufactured the accused devices in Taiwan, never in the United States (Appx3362; Appx3387-3388(48:2-49:7)), and that its subsidiary, HTC America, Inc. ("HTC America"), was the importer, marketer, and distributor for HTC-brand smartphones sold in the United States[2] (Appx3362; Appx3387-3388(48:2-49:7); Appx3411-3412; Appx2714-2716). HTC asserted that offers for sale and sales in the United States of the accused devices retailed by the U.S. carriers were made by HTC America, *not* HTC, and that HTC thus could not be liable for infringement by any carrier-retailed products. Appx3362; Appx3379-3380. Alternatively, HTC argued that if its acts *did* occur in the United States, there was no infringement because the Accused Phones did not literally meet each and every element of the asserted claims. Appx1897-1898(21:23-22:2).

### B. Salazar attempts to join AT&T as a defendant, and HTC and AT&T successfully sever AT&T from the case.

On June 15, 2017, Salazar amended his complaint to add AT&T, Inc.

---

[2] HTC America was not a party to the case and never attempted to join. Appx1902(26:11-16).

("AT&T") as a defendant.  Appx1969-1974.  In response, HTC filed a Motion to Sever and Stay Claims Against Newly-Added Defendant AT&T, Inc. ("Motion to Sever and Stay").  Appx3415-3425.  HTC argued, *inter alia*, that Salazar was prohibited as a matter of law from adding AT&T, because "even if, hypothetically, HTC directly sold the accused products to AT&T, Inc., which, in turn, resold those products to AT&T, Inc. customers ... , these independent transactions would not be sufficient to satisfy Section 299's 'same series of transactions or occurrences' test."  Appx3420.

AT&T filed a partial joinder to HTC's Motion to Sever and Stay ("Partial Joinder"), submitted by AT&T's separate counsel.  Appx3426-3431.  AT&T asserted that it was "merely … a peripheral defendant" to the HTC case," that HTC "is the true defendant," and requested that the claims against it be severed and stayed.[3]  Appx3427-3429.  AT&T took positions distinct from HTC's positions in the Motion to Sever and Stay.  *See* Appx3426-3431.  AT&T also filed an emergency motion to stay claims against it pending resolution of the Motion to Sever and Stay, arguing for a continuance of all claim construction proceedings and stating, *inter*

---

[3] AT&T also made clear that its arguments should apply to other AT&T entities as well: "Although AT&T Inc. is currently the named defendant, the arguments supporting severance and stay apply to any AT&T entity that is a mere retailer of the accused products."  Appx3429.

*alia*, "while the interests of AT&T and HTC are aligned to some extent, they are undoubtedly separate, unrelated entities." Appx3483; Appx3486-3489.

On August 20, 2017, the district court severed AT&T from the case. Appx1980-1986. The court "conclude[d] AT&T is misjoined because, at the very least, there are no transactions connecting HTC and AT&T as required by 35 U.S.C. § 299." Appx1985. The court held that severing AT&T would promote "fundamental fairness," and that "[c]learly, AT&T (much less AT&T Mobility) has not had a chance to meaningfully participate." Appx1984-1985. The court acknowledged that severing AT&T could create the need for an additional and separate proceeding. Appx1984.

### C. Salazar moves to compel production of the carrier purchase agreements.

When Salazar attempted to join AT&T as a defendant in July 2017, HTC had not produced any carrier purchase agreements, despite Salazar's request for this information. *See* Appx3462-3465. Following repeated requests from Salazar, HTC partially produced some of the relevant carrier purchase agreements in December 2017. Appx3462-3465. However, HTC did not produce all of the requested agreements, including those with AT&T and Verizon. Appx3462-3465. On December 15, Salazar filed a motion to compel. Appx3461-3469. Only then, and after being directed by the district court, did HTC Corp. produce the requested agreements.

### D.    Chief Judge Gilstrap Presides Over the Trial Against HTC.

#### 1.    HTC argues the defense of no U.S. sales.

On May 9, 2018, a jury trial was held in Marshall.  During the trial, HTC argued that it could not be held liable under U.S. law because it was strictly a Taiwanese company doing business in Taiwan, and it performed no infringing acts in the United States.  *See, e.g.*, Appx3341; Appx3345; Appx3362; Appx3379-3380; Appx3387-3388(48:2-49:7).  HTC made this argument in its opening statement (Appx2267-2268(63:20-64:17)), in its closing argument (Appx3387-3388(48:2-49:7)), and throughout the trial (*see, e.g.*, Appx3435-3436(67:17-68:2)).

#### 2.    The jury finds that HTC is not liable for infringement.

The jury ultimately found that Salazar had not proven that HTC was liable for infringement.  Appx2200.  However, the verdict form did not clarify whether HTC did not infringe the asserted claims because: (1) HTC did not commit any infringing acts in the United States or (2) the accused devices did not satisfy the claim elements of the asserted claims of Salazar's patent.  Appx2200; Appx1898(22:2-8).

#### 3.    Following the verdict of noninfringement, HTC withdraws its invalidity counterclaim.

In its verdict form, the jury erroneously neglected to answer the second question, which asked whether HTC Corp. proved by clear and convincing evidence that any of the asserted claims were invalid.  Appx2201.  Chief Judge Gilstrap conferred with counsel and gave HTC the choice between accepting the verdict

without the validity question answered or sending the verdict form back to the jury. Appx3445-3446. HTC made a tactical decision to accept the verdict without having the jury decide the issue of validity. Appx3444-3446; *see also* Appx1910-1911(34:17-35:1).

## II. SALAZAR'S SUBSEQUENT CASE AGAINST THE U.S. CARRIER DEFENDANTS

### A. Salazar sues the U.S. cell phone carriers for patent infringement in Texarkana.

On June 18, 2019, Salazar sued Defendants AT&T, Sprint, T-Mobile, and Verizon in the Eastern District of Texas, Texarkana Division. Salazar alleged that Defendants "directly infringed (literally and/or under the doctrine of equivalents) at least claim 1 of the '467 Patent by offering for sale or use, and/or selling, distributing, promoting, or providing for use by others" the Accused Phones. Appx1818, ¶ 18.[4] In contrast to the HTC case, it is undisputed that Defendants made sales of the accused devices in the United States. *See, e.g.*, Appx3362; Appx3379-3380; Appx3387-3388(48:2-49:7); Appx3396-3397. Thus, Defendants could not, and did not, assert the defense of no U.S. sales.

### B. Defendants successfully transfer the case to Marshall, Texas.

On October 1, 2019, Defendants—who were represented by the same counsel that represented HTC in the pretrial motions and the trial in the prior case—filed

---

[4] Salazar also alleged inducement and contributory infringement. Appx1819-1820.

motions for (1) intra-district transfer from the Texarkana Division to the Marshall Division and (2) dismissal under Rule 12(b)(6) based on claim preclusion and the *Kessler* doctrine. In their motion to transfer briefing, Defendants argued that "Chief Judge Gilstrap is uniquely qualified to decide [the preclusion] issue given that he presided over the first case" (Appx111), cited the court's "extraordinary experience with this plaintiff, the '467 Patent, the HTC Smartphones, and the related issues that Salazar asks the Court to resolve" (Appx67), and stated, given its "extensive history in *Salazar I*, … the Marshall Division is in a superior position to rule on the preclusive effects of the verdict and final judgment in *Salazar I*" (Appx68). Transfer was granted, and the case was reassigned to Chief Judge Gilstrap. Appx125-126.

### C.    Defendants attempt to dismiss the case based on preclusion.

On November 3, 2020, while their motion to dismiss under Rule 12(b)(6) was still pending, Defendants filed a virtually identical "Motion for Summary Judgment Under the *Kessler* Doctrine and Res Judicata" ("Motion for Summary Judgment"). At the May 11, 2021 pre-trial conference, Chief Judge Gilstrap addressed both motions and provided Defendants an extensive opportunity to present their arguments and respond to his concerns. Appx1892-1913(16:1-37:13).

With respect to claim preclusion, the court stated it "[wa]s not persuaded that there is the level of alignment necessary to impart that significant defense to the Carriers in this case" and denied Defendants' motions. Appx1913(37:8-13). The

court explained why it believed Defendants had not met their burden of establishing preclusion, including that "a large part of the substantive defense asserted by HTC Corp. … was that HTC Corp. was not an infringer because its acts took place outside the United States." Appx1895(19:4-15); Appx1898(22:9-23). The court noted that, in the prior case, there was no way of knowing from the verdict form whether "the jury based its decision on a direct literal infringement analysis or if the jury found no infringement because it believed HTC's defense that the acts as asserted did not occur within the United States." Appx1896-1898(20:18-22:8).

The court also explained why HTC and Defendants are not in privity for the purpose of claim preclusion, including that the parties were not sufficiently aligned, where (1) "structurally, corporately, legally there's no legal relationship between them, perhaps other than whatever contractual obligations in the stream of commerce they have to buy and sell components between each other" and (2) "there are several ways in which HTC tried th[e first] case that are not with an eye toward being closely and intimately aligned with the Carrier Defendants." Appx1899-1900(23:18-24:5); Appx1900-1901(24:17-25:16).

The court expressed similar skepticism with respect to Defendants' *Kessler* doctrine argument, stating that *Kessler*'s applicability is limited to post-judgment acts of infringement, and thus, "I'm not sure that the policy behind the Kessler

11

doctrine fits in this case where we've got an expired patent."   Appx1902-1903(26:18-27:5).

On May 21, the court issued an order denying Defendants' Motion to Dismiss and Motion for Summary Judgment.  Appx1942-1943.

### D.     Chief Judge Gilstrap presides over the jury trial.

During the six-day trial, the parties presented evidence on the issues of infringement and validity.  Both parties presented evidence through technical expert witnesses on the issues of patent infringement and validity.  Both parties also cross-examined the other side's expert witnesses.  Defendants presented a single prior art reference, Goldstein, and contended that claims 1-7, 29-30, and 34 of the '467 Patent were anticipated in view of Goldstein.

Following the presentation of the evidence, the court asked the parties to identify the issues for which they were moving for Rule 50(a) judgment as a matter of law.  Appx1571(197:19-24).  Defendants sought relief "on issues of infringement, damages, and preclusion."  Appx1572(198:18-19).  The court specifically asked Defendants if they were seeking relief "on anticipation under Rule 102," and Defendants responded, "We are not moving under Rule 50(a) for anticipation."  Appx1572(198:20-22).  The court denied Defendants' Rule 50(a) motion with respect to preclusion.  Appx1584(210:12-14, 19-23).

On August 9, 2021, the jury returned a verdict of noninfringement, while finding that none of the asserted claims of the '467 Patent were invalid. Appx394-400. The court entered final judgment on August 17. Appx1-2.

## SUMMARY OF ARGUMENT FOR CROSS-APPEAL

In their Response Brief, Defendants fail to demonstrate that this Court should disturb the district court's determinations that claim preclusion and the *Kessler* doctrine are inapplicable to this case and that, as Defendants claim, "it was reversible error for the district court to hold that asserted claims 1-7, 27-30, and 34, are not anticipated and therefore valid." Chief Judge Gilstrap—who presided over both Salazar's case against Defendants and Salazar's previous case against HTC—had, by Defendants' own admission, "extraordinary experience with this plaintiff, the '467 Patent, the HTC Smartphones, and the related issues" and "[wa]s in a superior position to rule on the preclusive effects of the verdict and final judgment" of the prior case.

Defendants' claim preclusion argument fails because two of the four requisite elements are not satisfied. First, as the district court held, Defendants and HTC are not in privity. HTC did not adequately represent Defendants' interests in the previous litigation or act as their "virtual representative," as legally required. To the contrary, AT&T told the district court that "HTC c[ould] not adequately represent AT&T's interests," that HTC and AT&T "are undoubtedly separate, unrelated

13

entities," and that "AT&T has already identified areas where it may have different positions than HTC, and may well identify additional areas of difference as its investigation and analysis proceed."  Appx3488, Appx3483.  Moreover, the record makes plain that HTC and Defendants distanced themselves at every opportunity, including severing AT&T from the case when Salazar attempted to join AT&T as a defendant; that HTC made multiple strategic decisions to further its own interests at the expense of Defendants; and that HTC attempted to conceal its relationship with Defendants at the relevant times.

Second, there is no claim preclusion because the same claim or cause of action requirement is not met.  HTC argued steadfastly throughout the first case that any transactions it made (i.e., sales and offers for sale) took place strictly in Taiwan and were not covered by U.S. law.  By contrast, it is undisputed that Defendants made sales of the accused phones in the United States and that these transactions are covered by U.S. law.  HTC relied on, and likely prevailed at trial with, an extraterritoriality defense to infringement that cannot be invoked by Defendants in this case, because there is no dispute that their accused activities occurred in the United States.  Thus, Salazar's claim against Defendants in this case does not share the same nucleus of operative facts or arise from the same transactional facts as the prior action.

Likewise, the *Kessler* doctrine is inapplicable and does not bar Salazar's claim against Defendants.  The doctrine serves a limited purpose, which is to bar a party from asserting claims of infringement for conduct occurring after a judgment of noninfringement, where traditional preclusion doctrines may be inapplicable.  *See Kessler v. Eldred,* 206 U.S. 285 (1907); *SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160, 1170 (Fed. Cir. 2018).  Here, the doctrine has no application because Salazar's patent expired over a year *before* the lawsuit against HTC was filed—and he cannot, therefore, allege any infringing conduct *after* the final judgment in that case—and because the Accused Phones never attained noninfringing status in the HTC case.

As for Defendants' appeal of the jury's finding of validity, Defendants waived their opportunity to challenge the sufficiency of the evidence as to this issue by declining to challenge the sufficiency of the evidence before the district court.  Moreover, drawing all reasonable inferences and resolving all credibility determinations in the light most favorable to Salazar, a reasonable jury did, and would have, a legally sufficient evidentiary basis to find for Salazar on the issue of validity.

The law and factual record make clear that Defendants' cross-appeal should be denied in full.

## ARGUMENT FOR CROSS-APPEAL[5]

### I.    STANDARD OF REVIEW

#### A.    Motion for summary judgment

This Court reviews a district court's summary judgment ruling under the law of the regional circuit. *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1324 (Fed. Cir. 2020). Under Fifth Circuit law, this Court "review[s] a district court's ruling on a motion for summary judgment *de novo* and appl[ies] the same legal standards as the district court." *Id.* at 1324-25 (quoting *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012)). "The res judicata effect of a prior judgment is a question of law that a reviewing court analyzes *de novo*." *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 521 (5th Cir. 2016) (citation omitted).

#### B.    Rule 50 and jury's finding of validity

Federal Rule of Civil Procedure 50 sets forth the requirements, establishing two stages, for challenging the sufficiency of the evidence in a civil jury trial. Fed. R. Civ. P. 50; *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394 (2006). "Rule 50(a) allows a challenge prior to the case's submission to the jury, authorizing the district court to grant the motion at the court's discretion." *Unitherm*, 546 U.S. at 394. Rule 50(b) "sets forth the requirements for renewing the challenge after the

---

[5] For ease of reference, "OB" refers to Salazar's opening brief and "RB" refers to Defendants' response brief.

jury verdict and entry of judgment." *Id.* at 394-95. "A party's failure to file a Rule 50(b) postverdict motion deprives an appellate court of the power to direct the District Court to enter judgment contrary to the one it had permitted to stand. *Id.* at 395 (citation omitted).

This court reviews the denial of a motion for JMOL under regional circuit law. *CommScope Techs. LLC v. Dali Wireless Inc.*, 10 F.4th 1289, 1294 (Fed. Cir. 2021). "The Fifth Circuit reviews a denial of a motion for JMOL de novo, asking whether a 'reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Id.* (quoting *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, 853 F.3d 1370, 1378 (Fed. Cir. 2017)). "[T]he reviewing court must 'draw all reasonable inferences and resolve all credibility determinations in the light most favorable to the nonmoving party.'" *Power-One, Inc. v. Artesyn Techs., Inc.*, 599 F.3d 1343, 1350-51 (Fed. Cir. 2010) (quoting *Int'l Ins. Co. v. RSR Corp.,* 426 F.3d 281, 296 (5th Cir. 2005)).

## II.    DISCUSSION

Defendants have established no grounds for disturbing the district court's rulings—which were based on its extensive firsthand knowledge of the HTC litigation and the instant case—that claim preclusion and the *Kessler* doctrine are inapplicable to this case. Further, the Court should sustain the jury's verdict that the asserted claims of the '467 Patent are valid, because Defendants have waived their

ability to challenge validity and, even if there were no waiver, the sufficiency of the evidence supports the jury's decision.

### A. The district court correctly determined that claim preclusion is inapplicable to this case.

Defendants have not demonstrated that this case is precluded by the HTC litigation, as the required claim preclusion elements are not satisfied. Indeed, this was the conclusion reached by Chief Judge Gilstrap, who presided over both cases, and who, in Defendants' own words, was "uniquely qualified to decide [the preclusion] issue given that he presided over the first case" (Appx111) and "ha[d] extraordinary experience with this plaintiff, the '467 Patent, the HTC Smartphones, and the related issues that Salazar asks the Court to resolve" (Appx67-68).

Claim preclusion requires that: "(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *Hous. Prof'l Towing Ass'n v. City of Hous.*, 812 F.3d 443, 447 (5th Cir. 2016). "[T]he claim preclusion analysis requires comparing the patents' claims along with other relevant transactional facts." *SimpleAir*, 884 at 1168. Applying the law to the factual record, and taking into account the "relevant transactional facts," it is clear that: (1) the parties are not in privity, and (2) the two cases do not involve the same claim or cause of action.

## 1. The district court properly concluded that HTC and Defendants are not in privity.

HTC and Defendants are not in privity for the purposes of claim preclusion. Defendants' argument to the contrary is not only inconsistent with the governing law, it misrepresents the relationship between the parties and contradicts HTC's and AT&T's own admissions and arguments made in the prior case.

Privity is a "legal conclusion that the relationship between the one who is a party on the record and the non-party is sufficiently close to afford application of the principle of preclusion." *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 677 (5th Cir. 2003). Privity "designates a person so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved." *Sw. Airlines, Inc. v. Tex. Int'l Airlines, Inc.,* 546 F.2d 84, 95 n.38 (5th Cir. 1977). The privity analysis requires a court "to look to the surrounding circumstances to determine whether claim preclusion is justified." *Russell v. SunAmerican Secs., Inc.,* 962 F.2d 1169, 1173 (5th Cir. 1992). Preclusion violates due process "when the relationship between the party and non-party becomes too attenuated." *Sw. Airlines*, 546 F.2d at 95.

A non-party is considered to be in privity "where the party to the first suit is so closely aligned with the nonparty's interests as to be his 'virtual representative.'" *Royal Ins. Co. of Am. v. Quinn-L Capital Corp.*, 960 F.2d 1286, 1297 (5th Cir. 1992).

In the Fifth Circuit, privity exists "where the non-party's interests were adequately represented by a party to the original suit." *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1267 (5th Cir. 1990). "[A] party's representation of a nonparty is 'adequate' … only if, at a minimum: (1) The interests of the nonparty and her representative are aligned ... and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the nonparty's interests." *Taylor v. Sturgell*, 553 U.S. 880, 900 (2008) (citations omitted). "[A]dequate representation does not exist where a nonparty is merely interested in the same issue or same set of facts, or because the issue being litigated is one that might affect their interests by providing a judicial precedent that would be applied in a subsequent action." *Texas v. Dep't of Labor*, 929 F.3d 205, 211 (5th Cir. 2019).

Based on these principles, this Court has held that "a manufacturer or seller of a product who is sued for patent infringement typically is not in privity with a party, otherwise unrelated, who does no more than purchase and use the product." *Transclean Corp. v. Jiffy Lube Int'l, Inc.*, 474 F.3d 1298, 1306 (Fed. Cir. 2007); *see also S. Snow Mfg. Co. v. SnoWizard Holdings, Inc.*, 567 F. App'x 945, 959-61 (Fed. Cir. 2014) (reversing the district court's conclusion that manufacturers and distributors of the same goods were in privity with each other "by virtue of the distributorship" and explaining that "with regard to questions of intellectual property infringement and invalidity, the person who buys an allegedly infringing product is

20

not considered to be in privity with the person who sells him the product").

Defendants' assertion that they are in privity with HTC based on their contractual arrangements is unavailing. RB at 39-40. As Chief Judge Gilstrap explained:

> [A]s in most contractual arrangements or commercial relationships, there are contractual obligations or for indemnity, but I don't know how that creates a legal privity between HTC as a foreign company and the Carrier defendants who in the stream of commerce buy components from them. Otherwise, everybody that buys anything from anybody would be in privity from a legal sense with the seller of those components.

Appx1899-1900(23:18-24:5). Moreover, as discussed, *infra*, Defendants' argument is disingenuous, as it omits the fact that HTC ultimately produced these agreements only *after* Salazar filed a motion to compel and the district ordered HTC Corp. to produce them, Appx3462-3469, and *after* Salazar had attempted to join AT&T as a defendant.

In reality, HTC did not adequately represent Defendants' interests in the previous litigation or act as their "virtual representative," because (a) HTC and Defendants distanced themselves at every opportunity, including severing AT&T from the case; (b) HTC made multiple strategic decisions to further its own interests at the expense of Defendants; and (c) HTC attempted to conceal its relationship with Defendants at the relevant times.

a.    **HTC and Defendants distanced themselves at every opportunity, including severing AT&T from the first case.**

In finding that HTC and Defendants are not in privity and that HTC did not adequately represent Defendants' interests in the first case, the district court cited HTC's insistence throughout that case that it was separate from Defendants. Appx1942-1943. Indeed, HTC consistently took the position that it had no business relationship with Defendants: HTC emphasized that it was a foreign corporation whose manufacture of the accused devices in Taiwan was an entirely separate transaction from the offers for sale and sales in the United States of the Accused Phones by Defendants, and that the only sales HTC made were to HTC America in Taiwan. *See, e.g.*, Appx3341; Appx3345; Appx3362; Appx3379-3380; Appx3387-3388(48:2-49:7). HTC further maintained that title to all HTC Corp.-branded smartphones passed to HTC America outside of the United States, that it was HTC America that imported the Accused Phones into the United States and sold them to Defendants, and that HTC and HTC America were separate entities such that HTC was absolved of any liability for HTC America's infringing acts.[6] *See, e.g.*, Appx3362; Appx3387-3388(48:2-49:7); Appx3411-3412; Appx2714-2716.

Importantly, HTC relied on a defense to infringement—that its accused

---

[6] Notably, HTC America did not choose to intervene in the case against HTC, nor did HTC attempt to join HTC America as a party. Appx1902(26:13-17).

activities took place strictly in Taiwan—that could not be invoked by Defendants in this case because there is no dispute that their accused activities occurred in the United States. Appx1942-1943. This defense was raised not only throughout HTC's pre-trial motions and during discovery, it was a centerpiece of HTC's noninfringement theory at trial. For example, in its opening statement, HTC argued:

> You may not have heard very much about HTC Corp before this case because **HTC Corp does not actually make, use, offer, or sell their phones in the United States, nor do they import their phones into the United States**. As many companies do, whether they're headquartered in the U.S. or elsewhere, **there is a separate HTC company called HTC America, Inc.,** … **that separate company does the United States – States's operations**.
> . . . .
> What you'll learn in this case is that **HTC America is the company that imports the phones into the United States. You'll learn that HTC America is the company that offers and sells the phones in the United States** … HTC America, as you've already heard, actually is not a Defendant in the case. **The only Defendant here is HTC Corp, the separate parent company**.
>
> Those facts are important because under United States patent law, only actions that take place in the United States can infringe a United States patent.

Appx2267-2268(63:20-64:17) (emphasis added). In its closing statement, HTC argued:

> [S]alazar has failed to produce any evidence showing that HTC Corp violated Section 271(a) requiring proof of the acts to occur within the United States.
>
> **HTC Corporation is a Taiwanese corporation doing business in Taiwan. In contrast, the non-party, HTC America, is the company**

**responsible for sales and marketing in the United States.**

[Salazar] **was never able to establish that it was HTC Corporation who – who made, used, offered for sale, and sold the accused devices in the United States or imported the infringing product into the United States**.

[Salazar] stipulated that HTC Corporation does not make any accused product in the United States. And Mr. Salazar failed to show any evidence that HTC Corp uses any device in the United States.

Finally, Mr. Salazar **has not presented evidence that HTC Corp imported accused devices in the United States**. And even if the accused devices otherwise infringe, Mr. Newby-House and Ms. Lai provided testimony that **the only entity that could have performed any allegedly infringing act in the United States is HTC America**.

Appx3387-3388(48:2-49:7) (emphasis added). HTC also argued:

There's one other reason, though, why you can find that HTC Corporation doesn't infringe, and that's because – it has nothing to do with microprocessors or memory devices, it just has to do with the United States, because only infringing acts in the United States count for infringement. Only if you import, make, use, sell, offer for sale in the United States can you be an infringer.

Appx3435-3436(67:17-68:2).

Additionally, when Salazar tried to add AT&T as a defendant in the prior lawsuit against HTC, both HTC and AT&T—who were represented by separate counsel at that time—insisted that the parties were independent and distinct and that AT&T should be severed. Appx3426-3431; Appx3472-3490. In seeking a continuance of claim construction proceedings, AT&T stated, "while the interests of AT&T and HTC are aligned to some extent, **they are undoubtedly separate,**

**unrelated entities.**"[7] Appx3483 (emphasis added). AT&T further argued, "AT&T has already identified areas where it may have different positions than HTC, and may well identify additional areas of difference," "[p]recluding AT&T from meaningfully participating in claim construction would unduly prejudice its ability to defend itself," "imposing the current deadlines on AT&T would violate its due process rights to a full and fair opportunity to litigate the claims against it," and "HTC cannot adequately represent AT&T's interests with respect to claim construction." Appx3483; Appx3486-3488. Additionally, AT&T's Partial Joinder to HTC Corp.'s Motion to Sever was submitted by AT&T's own separate counsel and took positions distinct from HTC's positions in its motion to sever. Appx3426-3431.

Likewise, HTC was adamant that it had no connection to the U.S. carriers and explicitly acknowledged that any sale between HTC America and Defendants was part of an entirely separate transaction. In HTC's successful Motion to Sever and Stay Salazar's case against AT&T, HTC argued that Salazar was prohibited as a

---

[7] In support of this proposition, AT&T cited the following language from *WIAV Networks, LLC v. 3COM Corp.*, 2010 U.S. Dist. LEXIS 110957, at *16-17 (N.D. Cal. Oct. 1, 2010): "[T]he accused defendants—**who will surely have competing interests and strategies**—are also entitled to present individualized assaults on questions of non-infringement, invalidity, and claim construction." Appx3483 (emphasis added).

matter of law from joining AT&T—or any of Defendants—under 35 U.S.C. § 299[8]

because the U.S. carriers' actions constituted an entirely separate transaction.  HTC

successfully argued that:

> even if, hypothetically, HTC directly sold the accused products to AT&T, Inc., which, in turn, resold those products to AT&T, Inc. customers ..., **these independent transactions would not be sufficient to satisfy Section 299's "same series of transactions or occurrences" test**. As one court has explained at length, even a direct manufacturer-retailer relationship (which, again, is not present in this case), without more, is insufficient to satisfy Section 299.

Appx3420 (emphasis added).  HTC argued that offers for sale and sales in the United

States of the accused phones retailed by the U.S. carriers were made by HTC

America—*not* HTC—and that HTC thus could not be liable for infringement of any

carrier-retailed products.  *See e.g.*, Appx3362; Appx3379-3380.

Not only did HTC and AT&T assert that their business transactions were

unrelated and that AT&T was merely "peripheral" to the case, the parties tacitly

admitted that the HTC litigation was *not* the case where AT&T and the U.S. carriers'

---

[8] Section 299 provides in relevant part that accused infringers may be joined in one action as defendants or have their actions consolidated for trial only if the allegations of infringement "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process." 35 U.S.C. § 299(a).

liability should or would be addressed.[9]   *See, e.g.*, Appx3420; Appx3428. These actions establish that HTC was not acting as Defendants' "virtual representative" in the first case and that the parties are not in privity. *See Royal Ins.*, 960 F.2d at 1297.

>   **b.    No privity exists because HTC made strategic decisions to further its own interests at Defendants' expense.**

HTC also could not be considered Defendants' "virtual representative," because it made strategic decisions to further its own interests at the expense of Defendants.   For example, HTC's decision to argue throughout the first case that Defendants—and not HTC—were in fact making sales of the accused devices in the United States was self-serving and damaging to Defendants. *See, e.g.*, Appx3362; Appx3379-3380; Appx3387-3388(48:2-49:7); Appx3396-3397.

Additionally, HTC elected to withdraw its invalidity counterclaim at trial. Although the jury returned a verdict of noninfringement, it failed to note a decision as to invalidity on the jury form.   Appx2201.   Chief Judge Gilstrap conferred with the parties' counsel and gave HTC the choice between withdrawing its invalidity counterclaim or sending the claim back to the jury. *See* Appx3445-3446.   HTC made a tactical decision to accept the verdict without having the jury decide the issue of validity.   Appx3444-3446; Appx1910-1911 (34:17-35:1).   This decision benefitted

---

[9] In granting the motion to sever and stay claims, the district court acknowledged that severing AT&T from the HTC case could create the need for an additional and separate proceeding.  Appx1984.

HTC, which had already prevailed on noninfringement and did not want to risk the jury changing its mind with respect to infringement during further deliberations. Appx3452. However, it was detrimental to Defendants, as it left Salazar's patent valid and Defendants open to liability for infringement in a subsequent lawsuit.

HTC made other decisions that furthered its own interests to the detriment of Defendants. HTC did not object to having a single liability question on the verdict form which left the jury unable to clarify whether HTC did not infringe the asserted claims because: (1) HTC did not commit any infringing acts in the United States or (2) the accused devices did not satisfy the claim elements of the asserted claims of Salazar's patent. Appx2200; Appx1896-1897(20:18-21:20). In asserting the defense that its actions did not occur in the United States—a defense unavailable to Defendants—and also leaving the jury without the ability to make a specific finding that the Accused Phones were noninfringing (i.e., not constituting the patented invention), HTC furthered its own interests at the expense of Defendants'. For this additional reason, HTC did not adequately represent Defendants' interests or act as their "virtual representative."

> **c.    No privity exists because HTC attempted to conceal its relationship with Defendants at the relevant times in the first case.**

Finally, HTC cannot be considered Defendants' "virtual representative," because, in the prior litigation, it made every attempt to obfuscate its relationship

28

with Defendants and withhold key information from Salazar. Although Defendants contend that Salazar "was well-aware during the pendency of *Salazar* I that each Defendant in the instant case had a separate Master Purchase Agreement … or similar contractual arrangement in place with HTC Corp." (RB at 39-40), the reality is that HTC attempted to conceal from Salazar the agreements—identifying which U.S. carriers had a relationship with HTC, along with the nature of these relationships—and only reluctantly produced the agreements after being pressed by Salazar and ordered to do so by the district court. Appx3462-3465. HTC did not produce these documents as required by the district court's Local Rules governing initial disclosures because HTC contended they had no relevance to the case and that Salazar was not entitled to this information. And, after producing the agreements only upon court order, HTC continued to refute them and to deny any relationship between HTC and Defendants, including throughout the trial. *See, e.g.*, Appx3341; Appx3345; Appx3362; Appx3379-3380; Appx3387-3388(48:2-49:7)

The record plainly establishes that HTC did not adequately represent Defendants' interests or act as their "virtual representative," *see Dep't of Labor*, 929 F.3d at 211; *Royal Ins.*, 960 F.2d at 1297, nor did HTC behave as if it understood itself "to be acting in a representative capacity," *see Taylor*, 553 U.S. at 900. For these reasons, the district court correctly determined that the parties are not in privity.

### 2.    Claim preclusion is improper because the two actions do not involve the same claim or cause of action.

Claim preclusion is also improper for the independent reason that the "same claim or cause of action" requirement is not satisfied here. *See Hous. Prof'l Towing*, 812 F.3d at 447. To determine whether both suits involve the same cause of action, the Fifth Circuit applies the transactional test, which focuses on whether the two cases "are based on the same nucleus of operative facts." *Id.*; *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005). Likewise, "**a claim for patent infringement can only be barred by claim preclusion if that claim arises from the same transactional facts as a prior action**." *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1326 (Fed. Cir. 2008) (emphasis added); *see also Simple Air*, 884 F.3d at 1168 ("[T]he claim preclusion analysis requires comparing the patents' claims along with other relevant transactional facts."). "It is the nucleus of operative facts, rather than the type of relief requested, substantive theories advanced, or types of rights asserted that defines the claim." *Hous. Prof'l Towing*, 812 F.3d at 447. Further,

> [w]hat factual grouping constitutes a "transaction" ... **[is] to be determined pragmatically**, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

*Petro–Hunt, L.L.C. v. United States,* 365 F.3d 385, 396 (5th Cir. 2004) (quoting

Restatement (Second) of Judgments § 24(2)) (emphasis added). A claim is not barred solely because it could have been raised in a prior action between the parties that was resolved by a final judgment on the merits. *See Acumed*, 525 F.3d at 1325-26.

The application of claim preclusion requires a "careful inquiry." *SimpleAir*, 884 F.3d at 1169. While in some instances having "essentially the same" accused products and the same patents in both cases may be sufficient to constitute the same claim or cause of action, in the present case, a "careful inquiry" establishes that this requirement simply is not satisfied. *See id*; *Petro–Hunt*, 365 F.3d at 396.[10]

### a. The cases do not share the same nucleus of operative facts or arise from the same transaction.

The present case and the HTC case "are not related in time, space, origin, or motivation." *See Petro–Hunt*, 365 F.3d at 396. As discussed, *supra*, the HTC case involved the facts of HTC's overseas activities, whether HTC committed any acts of infringement in the United States, and HTC's transactions with its subsidiary, HTC America. As HTC argued steadfastly throughout that case, any transactions it made (i.e., sales and offers for sale) took place strictly in Taiwan and **were not covered**

---

[10] Defendants' reliance on cases such as *Senju Pharm. Co., Ltd. v. Apotex Inc.*, 746 F.3d 1344 (Fed. Cir. 2014) is unavailing. In *Senju*, a key factor in the Court's finding that the two cases involved the "same claim" was that the plaintiff was suing the same defendant as it had in the first case. See *id.* at 1353. That crucial fact is not present here.

**by U.S. law**.  Appx3499-3511.  The jury's finding of noninfringement in that case may well have been based on HTC's lack of activities giving rise to infringement in the United States.  The two cases do not share the same nucleus of operative facts because HTC relied on a defense to infringement—that the accused activities took place in Taiwan—that cannot be invoked by Defendants in this case because there is no dispute their accused activities occurred in the United States.  *See, e.g.*, Appx2267-2268(63:20-64:17);    Appx3387-3388(48:2-49:7);    Appx3435-3436(67:17-68:2).

By contrast, the present case involves Salazar's infringement suit against the U.S. carrier Defendants, alleging that they offered for sale or used, and sold, distributed, promoted, or provided for use by others the accused phones in the United States.  The transaction at issue and the nucleus of operative facts involves U.S. sales of the accused devices from these carriers/retailers to the end users—customers in the United States who ultimately purchased the HTC phones.  It is undisputed that Defendants made sales of the accused phones in the United States and that these transactions **are covered by U.S. law**.  *See, e.g.*, Appx3362; Appx3379-3380; Appx3387-3388(48:2-49:7); Appx3396-3397; Appx3411-3412.  Furthermore, HTC was adamant that it had no connection to Defendants, the U.S. carriers, and explicitly acknowledged that any sales between HTC America and Defendants were part of an entirely separate transaction.  *See, e.g.*, Appx3362; Appx3379-3380; Appx3387-

32

3388(48:2-49:7); Appx3411-3412; Appx3420.   And AT&T argued that it was "merely a distributor or reseller of the accused products—a peripheral defendant." Appx3428.

> **b.    Treatment of the cases as a unit does not conform to the parties' expectations, business understanding, or usage.**

The cases do not share the same nucleus of operative facts, because treatment of the cases as a unit does not conform to the parties' expectations, business understanding, or usage.  As discussed in II.A.1, *supra*, in the prior case, HTC took the position that it had no business relationship with Defendants in this case and that its manufacture of the accused devices in Taiwan was an entirely separate transaction from the offers for sale and sales in the United States of the accused devices retailed by the U.S. carriers.  Appx3420.  Likewise, AT&T distanced itself from HTC, insisting that it was merely "peripheral" to the HTC litigation, Appx3428, a "separate, unrelated entit[y]," Appx3483, and that HTC could not "adequately represent AT&T's interests," Appx3486-3488.

> **3.    Salazar was barred from bringing his claim in the HTC case.**

Even if all four elements of claim preclusion are present, "the doctrine of res judicata does not bar the second action unless the plaintiff could or should have brought its claim in the former proceeding." *Eubanks v. F.D.I.C.*, 977 F.2d 166, 173 (5th Cir. 1992).  Salazar attempted to bring a claim against Defendant AT&T in the

former proceeding but was not permitted to do so. As discussed, *supra*, HTC successfully argued that Salazar was prohibited as a matter of law from joining AT&T—or any of Defendants, explaining: "even if, hypothetically, HTC directly sold the accused products to AT&T, Inc., which, in turn, resold those products to AT&T, Inc. customers ..., these independent transactions would not be sufficient to satisfy Section 299's 'same series of transactions or occurrences' test." Appx3420. Thus, Salazar could not have brought his claim in the prior case.

### 4. Salazar's claims of HTC's indirect infringement are inapposite.

Defendants incorrectly argue that Salazar's indirect infringement allegations made against HTC in the prior case prevent him from asserting infringement claims against Defendants here. Salazar never alleged in the prior case that Defendants themselves "induced, caused, urged, encouraged, aided, and abetted" any other party (e.g., the end-user customer). To the contrary, Salazar's allegations of inducement in the first case were wholly attributed to the **activities of HTC**. *See, e.g.*, Appx1965, ¶¶ 15-16.[11] The activities of Defendants in this case, by HTC's own admission, are not based on the same nucleus of operative fact as HTC's activities. Defendants have not, and cannot, point to any allegations in the HTC complaint

---

[11] Even if, arguendo, the complaint's "direct and indirect customers" language referenced by Defendants included the U.S. carriers, the pleading and the excerpt quoted by Defendants demonstrates that these customers were the *objects* of HTC's alleged acts of inducement— not the *subjects*.

directed to the conduct of Defendants that Salazar could have advanced in that case. Accordingly, Salazar's claims of HTC's indirect infringement have no bearing on whether Defendants in this case infringed.

Accordingly, the district court properly denied Defendants' claim preclusion defense.

### B.  The district court correctly determined that the *Kessler* doctrine does not bar Salazar's claims.

The *Kessler* doctrine serves a limited purpose, which is to bar a party from asserting claims of infringement for conduct occurring ***after*** a judgment of noninfringement, where traditional preclusion doctrines may be inapplicable. *See Kessler v. Eldred*, 206 U.S. 285 (1907); *SimpleAir*, 884 F.3d at 1170. Here, the doctrine has no application because: (1) Salazar's patent expired over a year before the lawsuit against HTC was filed and he cannot, therefore, allege any post-judgment infringing conduct, and (2) the accused phones never attained noninfringing status in the HTC case. The district court properly concluded that the *Kessler* doctrine is inapplicable, Appx1943, and Defendants' attempt to expand the *Kessler* doctrine beyond the bounds set by the Supreme Court and this Court should be rejected.

### 1.  *Kessler* is a limited doctrine that does not subsume claim preclusion.

The *Kessler* doctrine fills the gap between claim and issue preclusion and post-judgment conduct. *See Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1056

(Fed. Cir. 2014). This Court "ha[s] characterized the *Kessler* doctrine as granting a limited trade right that attaches to the product itself" and which "allow[s] an adjudged ***non-infringer*** to avoid repeated harassment for continuing its business as usual ***post-final judgment*** in a patent action where circumstances justify that result." *PersonalWeb Techs.*, 961 F.3d at 1376, 1378-69 (citations omitted) (emphasis added).[12]  The policy underlying *Kessler* is that a party that obtains a final adjudication in its favor obtains "the right to have that which it lawfully produces freely bought and sold without restraint or interference." *Rubber Tire Wheel Co. v. Goodyear Tire & Rubber Co.*, 232 U.S. 413, 418 (1914); *Kessler*, 206 U.S. at 289-90.

Courts have not applied *Kessler* to bar a broader set of rights than would be barred by claim preclusion. *See, e.g.*, *SimpleAir*, 884 F.3d at 1169-70 (rejecting defendant's argument that *Kessler* should apply to its alleged activity predating the earlier judgment and this attempt to "subsume claim preclusion within a more expansive, *sui generis Kessler* doctrine"); *Oyster Optics, LLC v. Cisco Sys., Inc.*, No. 2:20-CV-00211-JRG, 2021 WL 1530935, at *6 (E.D. Tex. Apr. 16, 2021) (stating that "application of the *Kessler* Doctrine rises and falls with the [c]ourt's determination on claim preclusion" and that because the defendant "failed to prove

---

[12] PersonalWeb's petition for writ of certiorari is currently pending before the U.S. Supreme Court. *See* Pet. for Writ of Cert., *PersonalWeb Techs., LLC v. Patreon, Inc., et al.*, No. 20-1394 (Apr. 6, 2021).

that *res judicata* applies to any of the claims in this case … [the defendant] likewise failed to prove that the *Kessler* doctrine applies"); *Mirror Worlds Techs., LLC v. Apple Inc.*, No. 6:13-CV-419, 2015 WL 6750306, at *5 (E.D. Tex. July 7, 2015). Defendants' expansive interpretation of *Kessler* contravenes this Court's precedent, as well as the Supreme Court's recent decision in *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, which reversed the Second Circuit's adoption of a preclusion doctrine "unmoored from the two guideposts of issue preclusion and claim preclusion." 140 S. Ct. 1589, 1595 (2020).

Here, Salazar does not—and cannot—allege any infringing conduct occurring after the final judgment in the HTC case, because, as the district court noted, his patent expired before that judgment was entered.[13] Appx1943. HTC and Defendants are no longer selling, offering for sale, producing, or using the Accused Phones, and the type of harassment or interference with a trade right contemplated by the *Kessler* doctrine is not present, or even possible.

Defendants' arguments to the contrary are unavailing. For example, the Court's decision in *SpeedTrack*, cited by Defendants, expressly acknowledges that *Kessler* is directed at preventing a party from suing a manufacturer's customers for "*acts of infringement that post-dated the judgment in the first action*." *SpeedTrack*

---

[13] The '467 Patent expired over a year before the HTC case was filed, and two and a half years before final judgment in that case, on May 18, 2018. *See* Appx2706-2707.

*Inc. v. Office Depot, Inc.*, 791 F.3d 1317, 1325-27 (Fed. Cir. 2015). Defendants'

reliance on the *SpeedTrack* dicta fails to refute that *Kessler* remains a "gap filler"

and does not support Defendants' attempt to apply *Kessler* to the instant case. Even

if *Kessler* could also fill a "privity gap" in claim preclusion, it cannot subsume claim

preclusion's requirement that "the same claim or cause of action was involved in

both actions" (*supra*, at II.A.2.), or *Kessler*'s requirement of an adjudged non-

infringing device (*infra*, at II.B.2.).

Additionally, Defendants' characterization of this Court's decision in

*SimpleAir **acknowledges*** the role of claim preclusion and the limitations of the

*Kessler* doctrine. RB at 44-45. In *SimpleAir*, this Court explicitly stated that *Kessler*

"does not displace" preclusion doctrines, that the Court "has not applied

the *Kessler* doctrine to activity predating the earlier judgment," and, if the district

court on remand were to find related patents to be substantially similar to those in

the prior lawsuit, claim preclusion would bar pre-judgment activity and the *Kessler*

doctrine would bar post-judgment activity. 884 F.3d at 1169-70.

Defendants' boundless interpretation of the *Kessler* doctrine would render

claim preclusion superfluous and allow for perverse results. For example, a foreign

manufacturer could strategically seek a declaratory judgment of non-infringement

on the basis that it does not make, use, sell, offer to sell, or import an infringing

product in the United States and, as HTC did, oppose joinder of customers. Later,

when the patent owner sued the manufacturer's customers—who indisputably sold and/or offered to sell the infringing products—the manufacturers could simply invoke *Kessler*, leaving the patent owner without a remedy. This outcome is not only undesirable as policy, it contravenes this Court's and the Supreme Court's clear stance that the *Kessler* doctrine is limited and equitable in nature.

### 2.    The *Kessler* doctrine is inapplicable because the accused phones never attained noninfringing status.

Even, assuming arguendo, that the *Kessler* doctrine applied to prefinal judgment conduct, there is no legal support for its application where there was no decision that an accused product practices the claim elements of the patent at issue. *Kessler* grants a limited trade right to continue producing, using, and selling **adjudged non-infringing devices**. This Court has explained that this "is a right that attaches to the noninfringing *product*" and that "*Kessler* only protects an adjudged noninfringer's right to make and sell its noninfringing article":

> Allowing customers to assert a *Kessler* defense is consistent with the Court's goal of protecting the manufacturer's right to sell an exonerated product free from interference or restraint …. [T]he *Kessler* doctrine grants a limited trade right that attaches to the "product—to a particular thing—as an article of lawful commerce."

*SpeedTrack*, 791 F.3d at 1326-27 (citation omitted); *see also Kessler*, 206 U.S. at 289 ("[I]t is Kessler's right that those customers should, **in respect of the articles before the court in the previous judgment**, be let alone by Eldred ….") (emphasis

added); *Brain Life*, 746 F.3d at 1056-57 (explaining that *Kessler* gives an accused infringer "rights with respect to **specific products that had been held to be noninfringing**" and that "the status of an infringer is **derived from the status imposed on the** *thing* that is embraced by the asserted patent claims") (emphasis added).

Defendants do not dispute that *Kessler* only applies to accused products that have attained the status of noninfringing devices.  Rather, Defendants rely on the false premise that because HTC *prevailed* in the prior case, that outcome resolved whether the Accused Phones are noninfringing devices (i.e., do not practice the claim elements of the asserted claims of the '467 Patent).  As discussed in II.A., *supra*, the prior case resolved only that HTC, the foreign manufacturer, did not commit acts giving rise to infringement in the U.S—*not* that the Accused Phones themselves are noninfringing.  *See, e.g.*, Appx2200.  The authorities cited by Defendants applied *Kessler* only after a finding of noninfringement based on the accused devices not meeting a claim limitation; none of the cases involved territorial distinctions between the defendants in the first and second cases.  *See, e.g., Brain Life,* 746 F.3d at 1052; *MGA, Inc. v. LaSalle Mach. Tool, Inc.,* 148 Mich. App. 350, 363 (1986); *SpeedTrack, Inc. v. Office Depot, Inc.,* No. C 07–3602 PJH, 2014 WL 1813292, at *1 (N.D. Cal. May 6, 2014); *Mirror Worlds,* 2015 WL 6750306, at *4.

Because the Accused Phones never attained noninfringing status, *Kessler* is

inapplicable in this case.

### 3.    Salazar's present claims are not new infringement theories that should have been brought in the HTC case.

Defendants' assertion that Salazar's claims are "infringement theories" that should have been brought in the previous case are false and irrelevant to *Kessler*. HTC—*not* Salazar—strategically limited the scope of the judgment in the prior case. Rather than protect the interest of its customers and end users by joining them in the case, HTC opposed Salazar's efforts to add AT&T by arguing it was not the same transaction under § 299 and that AT&T was merely a "peripheral defendant."[14]  *See* II.A., *supra.*  HTC asserted that it had no business relationship with Defendants and that its manufacture of the accused devices in Taiwan was an entirely separate transaction from the offers for sale and sales in the United States of the accused devices.  *See* II.A., *supra.*  Moreover, after successfully severing AT&T from the prior case, HTC vehemently asserted that it was not liable for infringement because it did not use, sell, or offer to sell the accused devices in the United States.  HTC opted to defend itself against Salazar's infringement claims on a ground available only to it—and not its customers—as a foreign entity, and HTC must now live with

---

[14] Defendants' argument that Salazar could have sued Sprint, T-Mobile, and Verizon in the prior case is without merit.  All of the carriers sit in the same position, and HTC and Defendants would have made the same strategic decision to oppose their joinder, as they did with AT&T.  Defendants' suggestion that Salazar chose not to sue the carriers in the prior case—when he was, in fact, denied that very option— is false.

the consequences of that decision.

### C.    This Court should sustain the jury's verdict that the asserted claims of the '467 Patent are valid.

#### 1.    Defendants have waived their ability to challenge invalidity.

An "appellate court [is] without power to direct the District Court to enter judgment contrary to the one it had permitted to stand" based on the insufficiency of the evidence, unless the party challenging the judgment made a Rule 50(b) post-trial motion. *Cone v. W. Va. Pulp & Paper Co.*, 330 U.S. 212, 217-18 (1947). Although Defendants appear to challenge the "district court's denial of a motion for JMOL" (RB at 15), Defendants never made such a challenge (or otherwise challenged the sufficiency of the evidence with respect to validity) before the district court and have thus waived their ability to challenge it on appeal.

Rule 50 sets forth the requirements, establishing two stages, for challenging the sufficiency of the evidence in a civil jury trial. Fed. R. Civ. P. 50; *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394 (2006). "Rule 50(a) allows a challenge prior to the case's submission to the jury, authorizing the district court to grant the motion at the court's discretion." *Unitherm*, 546 U.S. at 394. Rule 50(b) "sets forth the requirements for renewing the challenge after the jury verdict and entry of judgment." *Id.* at 394-95. "A party's failure to file a Rule 50(b) postverdict motion deprives an appellate court of the power to direct the District Court to enter judgment contrary to the one it had permitted to stand." *Id.* at 395 (citation

omitted).  "A postverdict motion is necessary because determining 'whether a new trial should be granted or a judgment entered under Rule 50(b) calls for the judgment in the first instance of the judge who saw and heard the witnesses and has the feel of the case which no appellate printed transcript can impart.'"  *Id.*  The requirement is "an essential part of the rule, firmly grounded in principles of fairness."  *Id.*

Defendants in this case never challenged the sufficiency of the evidence, either in a Rule 50(a) motion or a Rule 50(b) postverdict motion.  Following the presentation of the evidence, Chief Judge Gilstrap specifically asked Defendants if they intended to move under Rule 50(a) on the issue of validity, and they declined:

> THE COURT: Let me hear from Defendants. What matters do Defendants seek relief on under Rule 50(a)?
>
> MR. WILLIAMS: Your Honor, we intend to seek relief on issues of infringement, damages, and preclusion.
>
> THE COURT: Not on anticipation under Rule 102?
>
> MR. WILLIAMS: We are not moving under Rule 50(a) for anticipation.

Appx1572(198:16-22).

Because Defendants explicitly declined to move for a Rule 50(a) motion on validity, never filed Rule 50(b) or other postverdict motion on validity, and never otherwise challenged the sufficiency of the evidence with respect to validity, Defendants gave the district court, "who saw and heard the witnesses and ha[d] the feel of the case," no opportunity to provide its judgment on validity during the

proceedings below. *See Unitherm*, 546 U.S. at 395. Defendants have waived their opportunity to challenge validity on appeal as a matter of law.

> **2. The sufficiency of the evidence supports the jury's determination that the asserted claims of the '467 Patent are valid.**

The '467 Patent is presumed valid, and the jury properly determined that Defendants failed to meet their burden of overcoming this presumption by clear and convincing evidence. *See* 35 U.S.C. § 282(a); *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 110-14 (2011).

It is well-established that "[p]atents are presumed valid," and that, at trial, the burden falls on the party challenging validity to "prove that the claims are invalid by clear and convincing evidence." *Polara Eng'g Inc v. Campbell Co.*, 894 F.3d 1339, 1348 (Fed. Cir. 2018). The challenger must "introduce clear and convincing evidence on all issues relating to the status of a particular reference as prior art." *Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*, 264 F.3d 1344, 1350 (Fed. Cir. 2001). The burden of establishing invalidity remains on the challenger at all times and does not shift to the patentee to prove validity.[15] *In re Cyclobenzaprine*

---

[15] "Because the burden rests with the alleged infringer to present clear and convincing evidence supporting a finding of invalidity, granting judgment as a matter of law for the party carrying the burden of proof is generally reserved for extreme cases, such as when the opposing party's witness makes a key admission." *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1364 (Fed. Cir. 2018).

*Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1078 (Fed. Cir. 2012).

Given this high burden, the presumption of validity can be maintained even where the patentee does not present any "affirmative evidence in rebuttal," including their own expert on validity. *See Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1363-64 (Fed. Cir. 2018). A trier of fact is entitled to evaluate a defendant's expert and determine that they failed to clearly and convincingly establish that the asserted claims were anticipated by the prior art (or obvious in light of prior art) raised by a defendant on that basis alone. *Id.* at 1364.

A patent is invalid as anticipated if "the invention was patented or described in a printed publication in this or a foreign country more than one year prior to the date of the application for patent in the United States." *Orion IP, LLC v. Hyundai Motor Am.*, 605 F.3d 967, 974 (Fed. Cir. 2010). A single reference must disclose each and every element of the claimed invention, arranged as claimed. *Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*, 909 F.3d 398, 405 (Fed. Cir. 2018).

At trial, Defendants presented a single prior art reference, Goldstein, a "[p]rogrammable remote control device," as the basis for its anticipation defense. Appx1256-1257(91:18-92:1). Salazar cross-examined Defendants' expert, Dr. Andrew Wolfe, with respect to several of the limitations he claimed were found in

45

the Goldstein reference. Appx1298-1306(133:9-141:5). Salazar also challenged the notion that an invention identified as a "remote control device" would inspire a POSITA to come up with a communication control command and sensing system that Salazar's expert had described as a state-of-the-art smartphone, and pressed Dr. Wolfe as to why an inventor would use the title "remote control" if he intended to invent a telephone or smartphone:

> [Counsel:] If Mr. Goldstein, the inventor of the Goldstein patent, intended to invent something different than a remote control, don't you think he would call it that?
>
> [Dr. Wolfe:] I don't know.....
>
> [Counsel:] My question is, don't you think he would call it a telephone or a smartphone or something else other than a remote control if he thought it was something else?
>
> [Dr. Wolfe:] I don't know Mr. Goldstein. I don't know.

Appx1305-1306(140:11-141:5).

Additionally, Salazar called Dr. Oded Gottesman as a rebuttal expert on validity. Appx1509-1528(135:11-154:16). Dr. Gottesman had testified earlier regarding his extensive credentials as an expert and inventor in the areas of electrical and computer engineering—including his work with cell phones, signal processing and transmission, and software and hardware development. Appx620-627(220:9-227:25). On rebuttal, Dr. Gottesman testified that, in his opinion, Defendants failed to prove by clear and convincing evidence that any of the asserted claims are invalid.

46

Appx1528(154:11-15).   He testified that in Salazar's original patent application, Salazar elected to categorize his invention as a "wireless communication control system" rather than a remote control of external devices, whereas Goldstein selected the remote control category and that a "remote control device" is not a "communication command control and sensing system."   Appx1511-1512(137:11-138:6), Appx1513-1514(139:25-140:8).   Dr. Gottesman further testified that the Goldstein invention is a three-component system comprised of a remote control and two integrated base stations, each of which "has its own microprocessor doing different functions."   Appx1514-1515(140:11-141:22).

Dr. Gottesman walked through the Asserted Claims and explained why each one is not taught by Goldstein and is, therefore, valid.   Appx1515-1528(141:25-154:6).   For example, Goldstein does not disclose three of the five elements making up independent claim 1 (from which claims 2-7 and 29-30 depend): Goldstein "does not teach a communication command control and sensing system for communicating with external devices," because "two base stations cannot be considered external devices"; "Goldstein does not disclose by clear and convincing evidence that there is such a memory space, for example, that [is] required to store parameter set that is smaller than the memory space required to store the command code set"; and "none of the elements in Goldstein can receive infrared from external devices."   Appx1515-1519(141:25-145:25).   Because claim 1 is not disclosed by Goldstein, dependent

47

claims 2-7 and 29-30 are also not disclosed by Goldstein.  Appx1520(146:11-17).

Dr. Gottesman further testified that additional elements were missing from Goldstein.  For example, claim 2's requirement of "receiving communication from external devices," Appx1521(147:3-12); the "sound-activated device" limitation of claim 6, Appx1522(148:4-21); claim 29's requirement of "a sensor coupled to said microprocessor for detecting and measuring physical phenomena corresponding to said user," Appx1523-1525(149:6-151:21); and claim 30's requirement that the sensor "measure[s] said user's physical indication," Appx1525-1526(151:22-152:10).  Dr. Gottesman also testified that Goldstein does not disclose independent claim 34, which shares the preamble and three elements with claim 1, and also requires an additional element Appx1526-1528(152:15-154:6).[16]

During closing argument, Salazar reiterated that Goldstein "is a remote control" that does not communicate with external devices and does not detect or measure physical phenomena.  Appx1682-1683(49:18-50:18).  Salazar also emphasized that Goldstein "is missing many elements," most notably, "the element where the handset is communicating with external devices."  Appx1682-1683(49:18-50:18).

---

[16] Claim 34's additional element is "a memory device coupled to said microprocessor configured to store a plurality of parameter sets retrieved by said microprocessor so as to recreate based on said parameter sets a desired set of pulse signals corresponding to logical "1's" and "0's" as specified by a command code set."  Appx60.

The record makes clear that Defendants failed to meet their burden of proving that the claims are invalid by clear and convincing evidence. *See Polara*, 894 F.3d at 1348. Moreover, Salazar's expert provided ample testimony that Goldstein does not disclose "each and every element … arranged as claimed." *Enplas*, 909 F.3d at 405. Drawing all reasonable inferences and resolving all credibility determinations in the light most favorable to Salazar, a reasonable jury would have—and did have—a legally sufficient evidentiary basis to find for Salazar. Accordingly, the jury's finding of validity should be sustained.

## ARGUMENT FOR SALAZAR'S APPEAL

### I. THE DISTRICT COURT'S INTERPRETATION OF "SAID MICROPROCESSOR" CONTRAVENES FUNDAMENTAL RULES OF CLAIM CONSTRUCTION.

Very simply, Salazar's appeal centers on the district court's construction of the words "said microprocessor" in the claim term-at-issue:

> A communications, command, control and sensing system for communicating with a plurality of external devices <u>comprising</u>:
> <u>a microprocessor</u> for generating …, ***said microprocessor*** creating …, a plurality of parameter sets retrieved by ***said microprocessor*** …, ***said microprocessor*** generating ….

Appx58 (emphasis added). Defendants and the district court's position is that one microprocessor must perform all the recited functions attributed to "said microprocessor." In other words, the claim term should be interpreted as follows:

> a microprocessor for generating …, ***the same microprocessor*** creating … a plurality of parameter sets retrieved by ***the same microprocessor*** …, ***the same microprocessor*** generating …."

However, straightforward application of this Court's claim construction rules establishes that this interpretation is erroneous, and the district court's decision should therefore be reversed.

As this Court has instructed, construction of the claim term-in-dispute should proceed under the following framework: first, because this is an "open-ended claim[] containing the transitional phrase '<u>comprising</u>," the indefinite article "a"— i.e., "<u>a microprocessor</u> for generating" carries the meaning of "one or more." *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342 (Fed. Cir. 2008) (citation omitted).

Next, the meaning of "said microprocessor"—i.e., "***said microprocessor*** creating," "retrieved by ***said microprocessor***," "***said microprocessor*** generating"— is determined by applying the rule that "[t]he subsequent use of definite article[] … 'said' in a claim to refer back to the same claim term does not change the general plural rule, but simply reinvokes that non-singular meaning." *Id.* Thus, "said microprocessor creating" means "one or more microprocessors creating," "retrieved by said microprocessor" means "retrieved by one or more microprocessors," and so forth. Accordingly, the claim term is construed as follows:

> <u>One or more microprocessors</u> for generating …, ***one or more microprocessors*** creating …, a  plurality of parameter sets retrieved by ***one or more microprocessors*** …, ***one or more microprocessors*** generating ….

Under this construction, there is no requirement that the same microprocessor be capable of performing *all* of the recited functions.

There is an exception to this general rule that "'a' microprocessor" means "'more than one' microprocessor," however.  But this exception arises *only* "where the language of the claims themselves, the specification, or the prosecution history necessitate a departure from the rule." *Id.* at 1342-43.  Ambiguity in the claim language and/or specification "hardly is evidence of the **clear intent** necessary to overcome the effect of th[is] general rule." *01 Communique Lab'y, Inc. v. LogMeIn, Inc.*, 687 F.3d 1292, 1297 (Fed. Cir. 2012).  As discussed in Salazar's Opening Brief, any exception here could only be based on a clear intent in the claim language to limit the original "a microprocessor" to a single microprocessor capable of performing all the recited "said microprocessor" functions.  OB at 22.  Neither Defendants nor the district court has pointed to any claim language that shows a clear intent to limit this language, however.  Neither Defendants nor the district court has pointed to any claim language that shows a clear intent to limit this language to overcome the general rule. *01 Communique*, 687 F.3d at 1297.  Thus, the exception is inapplicable here.

51

Defendants' assertion that Salazar "misunderstands Defendants' position on the construction of the 'microprocessor' term" (RB at 22) is incorrect.  It is clear what Defendants' position is: they want the Court to disregard *Baldwin* and progeny (and now argue that *Baldwin* is, in fact, "inapposite"[17]), such that the Court ignores the rule that "'said' microprocessor" reinvokes the non-singular meaning of "'a' microprocessor."  This position contravenes precedent and is not supported by the cases relied upon by Defendants and the district court.

*In re Varma* does not support the district court's construction for the reasons previously discussed by Salazar. OB at 31-35.  Defendants ignore the plain language of the claim phrase at issue in *Varma* that requires "a statistical analysis request corresponding to two or more selected investments."  *In re Varma,* 816 F.3d 1352, 1363 (Fed. Cir. 2016).  Defendants also ignore the Court's analysis of the other claim language in claim 22 and 25 that compelled the Court's limiting construction.  *Id.* The claim language also requires "the plurality of processors be adapted not only to receive a statistical analysis request corresponding to two or more selected investments," but also to do these additional things: "based upon investment data pertaining to **the** two or more selected investments, perform *a* resampled statistical analysis to generate *a* resampled distribution; and provide a report of *the* resampled distribution."  *Id.* (emphasis added). As the Court noted, "the interlocking of

---

[17] The district court, in adopting Defendants' position, analyzed the claim term under the *Baldwin* framework, albeit incorrectly.  Appx372-376.

singulars in that language makes it unmistakable that at least two investments must be the subject of each statistical analysis that is the subject of the request in the claim phrase at issue."[18]  *Id*.

However, the claim language at issue in the '467 Patent is not unmistakably limiting and there is no clear intent to deviate from the general rule and create an exception to limit "a microprocessor" to a single microprocessor.  "Said microprocessor" "simply reinvokes that non-singular meaning."  Furthermore, at no time did Defendants, nor the district court, ever raise any argument relating to the prosecution history of the '467 Patent limiting the construction of "said microprocessor."

*Convolve* is also distinguishable, as detailed in Salazar's Opening Brief.  *See* OB at 28-33.  In *Convolve*, this Court found a "clear intent" to limit "a processor" to a single processor based on "the language and structure of [the] claim."  In particular, in the one subset of claims at issue, "a processor" was specifically tied to the functions of the "user interface" in the preamble and therefore the Court found an extremely limited exception to the general rule because there was a "clear intent" to

---

[18] Although the claim language proceeding the phrase at issue of claim 29 in *Varma* was not identical to claims 22 and 25, the Court found no reason to interpret the claim phrase at issue differently in claim 29 and the Court found the prosecution history also narrowed the claim phrase at issue to require each statistical analysis request to correspond to two or more selected investments.  *In re Varma*, 816 F.3d 1352 at 1363.

tie the two together. *Convolve, Inc. v. Compaq Computer Corp.*, 812 F.3d 1313, 1321 (Fed. Cir. 2016).

In contrast, the recited "a microprocessor" of claims 1 and 34 does not appear in the preamble of the claims, comes after the term "comprising:," and is not tied to any specific component of the communications, command, control and sensing system. Accordingly, the exception to *Baldwin* that was present in *Convolve* does not exist here.

For these reasons, the district court's claim construction was inconsistent with the governing law and constitutes reversible error.

## II.  THE COURT'S ERRONEOUS CLAIM CONSTRUCTION WAS NOT HARMLESS.

Defendants incorrectly assert that the district court's erroneous claim construction was harmless. RB at 16-21. Where "there was no separate jury determination of non-infringement on a distinct ground," as was the case here,[19] an error in a jury instruction is "harmless only if a reasonable jury **would have been required** by the evidence to find non-infringement even without the error." *Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1047 (Fed. Cir. 2016) (emphasis added); *see also Network-1 Techs., Inc. v. Hewlett-Packard Co.*, 981 F.3d 1015,

---

[19] By contrast, in *Abbott Labs. v. Syntron Bioresearch, Inc.*, 334 F.3d 1343, 1348-49 (Fed. Cir. 2003), relied upon by Defendants, the jury returned a special verdict form with findings of noninfringement as to specific claim terms.

1022 (Fed. Cir. 2020) ("An erroneous claim construction on one element is harmless only if a reasonable jury **would have been required** by the evidence to find non-infringement even without the error." (emphasis added)); *Ecolab, Inc. v. Paraclipse, Inc.,* 285 F.3d 1362, 1374 (Fed. Cir. 2002) (error is harmless if it "**could not have changed the result**" (emphasis added)).

Here, the jury would not have been required to find non-infringement absent the district court's erroneous claim construction. Notably, the district court denied Defendants' Rule 50(a) motion for JMOL on infringement. Appx1572(198:16-19); Appx1576-1579(202:16-205:13); Appx1585(211:15-19). Following the presentation of the evidence, and after hearing Defendants' arguments in support of its JMOL—which mirror arguments made in their Response—the district court determined that it was not the case "that a reasonable jury would not have a legally sufficient evidentiary basis to find for [Salazar] on that issue." Fed. R. Civ. P. 50(a). The court, in effect, determined that a reasonable jury would *not* have been required by the evidence to find non-infringement, with or without the erroneous claim construction. *See Network-1*, 981 F.3d at 1022.

Furthermore, as in cases such as *Ecolab* and *Network-I*,[20] where this Court vacated the verdict of noninfringement and remanded for a new trial, there was

---

[20] Defendants' attempt to distinguish *Network-I* is unavailing. RB at 18. The opinion makes clear that, like the instant case, (1) the jury was instructed to apply the erroneous construction, (2) the plaintiff elicited testimony showing that the accused

sufficient evidence at trial to support a finding under the correct interpretation of the claims-at-issue—i.e., that each of the recited functions attributed to "said microprocessor" was capable of being performed by any one (or more) of the microprocessors contained within the Accused Phones (even if no individual microprocessor was capable of performing *all* of the recited functions). For example, Defendants' expert testified that each of the recited functions is performed by a microprocessor—just not a *single* microprocessor:

- "[T]here is not one microprocessor that performs all four of these functions. The functions related to communication protocols, creating and generating of them, happens on other microprocessors—one for WiFi, one for Bluetooth, one for NFC, and one for infrared." Appx1237(72:5-18).

- "The phones use a variety of microprocessors separate from the main microprocessor to generate the communication protocols for everything related to the communication protocols, and also it does not retrieve parameter sets so as to recreate a desired command code set." Appx1224(59:6-15).

*See also* Appx1222-1239(57:19-74:7). Thus, Defendants' expert confirmed that a

---

products satisfied the correct construction, (3) the defendant "relied on evidence of non-infringement, at least in part, based on the fact that these products are not within the scope of the [disputed] patent" based on the erroneous construction, and (4) the general verdict form did not indicate the basis for the jury's decision. *Network-1*, 981 F.3d at 1025.

finding of infringement could be made under the correct interpretation of "said microprocessor," which allows for multiple microprocessors to perform the recited functions.

Defendants' assertion that a reasonable jury would have been required by the evidence to find non-infringement on other grounds, even without the error, is without merit.  RB at 16-21.  Salazar's technical expert, Dr. Gottesman, testified at length that, based on his review of Defendants' source code and diagrams and his own experimentation and inspection of the Accused Phones, the Accused Phones contain a "memory device ... configured to store a plurality of parameter sets." Appx740-755(32:14-47:13).  Dr. Gottesman also testified that the memory space required to store parameter sets is smaller than the memory space required to store said command code sets and cited the source code used by the Accused Phones in support of his conclusion.  Appx757-759(49:13-51:5).

Defendants' assertion that Dr. Gottesman "conceded that the space required to store the parameter sets … is greater than the space required to store the command code sets" (RB at 20) is false.  Further, Defendants' assertion that Dr. Gottesman "conceded" the point about empty bits and that the "uncontroverted evidence" supports Defendants' position (RB at 21-21) misrepresents Dr. Gottesman's testimony.

The transcript makes clear that, in the passage cited by Defendants (Appx1560-1562(186:4-188:8)), Dr. Gottesman is merely responding to a hypothetical posed by Defendants, and that he fundamentally disagrees with Defendants' position that the space occupied by zeros should be counted.   For example, he states:

- "[I]t depends if you are counting the zeros or not.  If you do count the zero, I disagree with that.  That's Doctor Wolfe's label.  I disagree with that." Appx1560(186:9-11).

- "I'm not sure about that, but for the sake of this example I can agree to that." Appx1561(187:6-7).

- "**The parameter set, I disagree that you can count the zeros.  The parameters don't include those zeros.**  The variable that was where they are stored in this figure is 32 bits.  **But the parameter, the actual information, I disagree that it includes the zeros**."   Appx1561(187:17-21)(emphasis added).

Furthermore, in rebuttal testimony, Dr. Gottesman explains in great detail how he calculates the required space to store parameter sets as compared to command code sets as required by the claim language and how the claim element is met and

contrasts his analysis with Dr. Wolfe's flawed analysis.  Appx1490-1507(116:10-133:23).[21]

Moreover, Defendants' own expert testified that even if the space required to store the parameter sets was greater than the space required to store the command code sets, the jury could still return a verdict of infringement based on claim 34, which does not have that claim limitation.  Appx1341-1342(176:10-177:2).

---

[21] Dr. Gottesman explains how the claim element is met by measuring the required space to store parameter sets as compared to command code sets using a consistent approach (apples to apples), in each case he does not count the zeros and contrasts his approach with Dr. Wolfe's approach (apples to oranges) where Dr. Wolfe inflates the space required to store the parameter sets by counting the zeros and deflates the space required to store the command code sets by not counting the zeros and therefore arrives at a different conclusion:

[Counsel] Under this approach, comparing apples to apples, what is your opinion with respect to whether this claim element is met?

[Dr. Gottesman] My opinion that the claim element is met because the memory space required for the said parameter set is smaller than the memory set required for the command code set.
…
[Counsel] How does this compare to Doctor Wolfe's approach he took yesterday?

[Dr. Gottesman] So Doctor Wolfe applied an unconservative approach to only one of these two entities, only to the parameter set.  And he added to it, to the 184 bits that were actually required to store the parameters, he added 200 bits, so more than double what we have. But he only applied that to the parameter sets, not to the command code sets.

Appx1503-1504(129:15-130:5).

Thus, the record establishes that a reasonable jury would *not* have been required by the evidence to find non-infringement even without the error. Accordingly, as in *Network-I*, the issue of infringement should be remanded to the jury for further proceedings.

## CONCLUSION

For the foregoing reasons, Salazar respectfully asks that the Court deny Defendants' Response in full, reverse the district court's construction of the claim term-at-issue, and remand for a partial trial on infringement.

DATED: April 5, 2022

/s/Dariush Keyhani
Dariush Keyhani
Keyhani LLC
1050 30th Street NW
Washington, DC 20007
Telephone: (202) 748-8950
Fax: (202) 318-8958
dkeyhani@keyhanillc.com
*Attorneys for Appellant*

**FORM 19. Certificate of Compliance with Type-Volume Limitations**

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:** 2021-2320, -2376

**Short Case Caption:** Salazar v. AT&T Mobility LLC

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes ___13,840___ words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: __04/05/2022__

Signature: /s/Dariush Keyhani

Name: Dariush Keyhani

Save for Filing