**2021-2320, -2376**

# United States Court of Appeals
# for the Federal Circuit

JOE A. SALAZAR,

*Plaintiff-Appellant,*

— v. —

AT&T MOBILITY LLC, SPRINT UNITED MANAGEMENT COMPANY,
T-MOBILE USA, INC., CELLCO PARTNERSHIP INC.,
dba Verizon Wireless, Inc.,

*Defendants-Cross-Appellants,*

HTC CORPORATION, HTC AMERICA, INC.,

*Defendants.*

*On Appeal from the United States District Court for the
Eastern District of Texas in No. 2:20-cv-00004-JRG
J. Rodney Gilstrap, Chief Judge*

## PETITION FOR REHEARING *EN BANC*

DARIUSH KEYHANI
KEYHANI LLC
1050 30th Street NW
Washington, DC 20007
(202) 748-8950
dkeyhani@keyhanillc.com

*Counsel for Plaintiff-Appellant*

MAY 5, 2023

# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

### <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 21-2320 |
| **Short Case Caption** | Salazar v. AT&T Mobility LLC, et al. |
| **Filing Party/Entity** | Joe Andrew Salazar |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 05/05/2023

Signature: /s/ Dariush Keyhani

Name: Dariush Keyhani

**FORM 9. Certificate of Interest**

Form 9 (p. 2)
March 2023

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☑ None/Not Applicable |
| Joe Andrew Salazar | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| Frances Stephenson | Geoffrey Culbertson | Alan Robertson |
| Patton, Tidwell & Culbertson | Kelly Tidwell | The Sloan Firm |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐   Yes (file separate notice; see below)   ☑   No   ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................... i

TABLE OF AUTHORITIES .................................................................. ii

STATEMENT OF COUNSEL .................................................................. 1

ARGUMENT FOR REHEARING *EN BANC* ........................................................... 2

I.     The Panel Decision is Contrary to this Court's Precedents............................. 2

       A.     The Panel Decision is Contrary to *Baldwin* and Progeny..................... 2

       B.     The Panel Decision Conflicts with Precedent that Requires Claim
              Terms to be Construed in a Way that Does Not Render Them
              Meaningless or Superfluous................................................. 9

       C.     The Panel Decision Conflicts with Precedent that Claims Should Not
              Be Construed to Exclude Embodiments........................................ 10

II.    The Panel Decision Will Create Confusion and Uncertainty as to the Scope of
       Patent     Claims     and     Result     in     Their     Unjustifiable
       Narrowing................................................................... 11

CONCLUSION ...................................................................... 15

ADDENDUM: PANEL OPINION

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*01 Communique Lab'y, Inc. v. LogMeIn, Inc.*,
    687 F.3d 1292 (Fed. Cir. 2012) ................................................... 1, 6

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*,
    512 F.3d 1338 (Fed. Cir. 2008) .................................................... 1, 3

*Canopy Growth Corp., v. GW Pharma Ltd.*,
    No. 2022-1603, 2023 WL 3048243 (Fed. Cir. Apr. 24, 2023) ...................... 9

*Connolly v. Pension Benefit Guar. Corp.*,
    475 U.S. 211 (1986) ...................................................................... 15

*Convolve, Inc. v. Compaq Computer Corp.*,
    812 F.3d 1313 (Fed. Cir. 2016) .................................................... 1, 3

*Creative Internet Advert. Corp. v. Yahoo!, Inc.*,
    476 F. App'x 724 (Fed. Cir. 2011) ......................................... 4, 5, 15

*Freeny v. Fossil Group, Inc.*,
    No. 2:18-CV-00049, 2019 WL 2078783 (E.D. Tex. May 10, 2019) ....... 13, 14

*GE Lighting Sols., LLC v. AgiLight, Inc.*,
    750 F.3d 1304 (Fed. Cir. 2014) ..................................................... 10

*Google LLC v. EcoFactor, Inc.*,
    IPR2021-00054, 2022 WL 1157606 (P.T.A.B. April 18, 2022) .................... 14

*Harari v. Lee*,
    656 F.3d 1331 (Fed. Cir. 2011) ....................................................... 8

*IBM Corp. v. Zillow Group, Inc.*,
    No. C20-0851, 2022 WL 16532550 (W.D. Wash. Oct. 28, 2022) .......... 12, 13

ii

*In re Varma*,
    816 F.3d 1352 (Fed. Cir. 2016) ..................................................... 13

*Intel Corp. v. Qualcomm Inc.*,
    21 F.4th 801 (Fed. Cir. 2021) ........................................................ 9

*Lite-Netics, LLC v. Nu Tsai Cap. LLC*,
    60 F.4th 1335 (Fed. Cir. 2023) ..................................................... 3

*Oatey Co. v. IPS Corp.*,
    514 F.3d 1271 (Fed. Cir. 2008) ..................................................... 10

*Rehco LLC v. Spin Master, Ltd.*,
    759 F. App'x 944 (Fed. Cir. 2019) ........................................... 6, 7

*Unwired Planet, L.L.C. v. Google, Inc.*,
    660 F. App'x 974 (Fed. Cir. 2016) ............................................. 15

*Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc.*,
    853 F.3d 1272 (Fed. Cir. 2017) ................................................ 9, 15

## Other Authorities

Plaintiff's Opening Claim Construction Brief, *IBM Corp. v. Zillow Group, Inc.*,
    No. C20-0851 (W.D. Wash. Aug. 11, 2022), ECF No. 203 ......................... 12

## <u>STATEMENT OF COUNSEL</u>

Based on my professional judgment, I believe the panel decision is contrary to the following precedents of this Court: *Convolve, Inc. v. Compaq Computer Corp.*, 812 F.3d 1313 (Fed. Cir. 2016); *01 Communique Lab'y, Inc. v. LogMeIn, Inc.*, 687 F.3d 1292 (Fed. Cir. 2012); and *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338 (Fed. Cir. 2008).

Based on my professional judgment, I believe this appeal requires an answer to two precedent setting questions of exceptional importance:

(1)    Whether the Court should expand what has been an extremely limited exception to the well-established general rule of claim construction, that indefinite articles "a" or "an" mean "one or more" in open-ended claims containing the transitional phrase "comprising" and that subsequent use of definite articles "the" or "said" to refer back to the same claim term reinvokes the non-singular meaning; and

(2)    Whether the panel's expansion of the exception to the general rule will result in patent claims being unjustifiably narrowed where nothing in the prosecution history, specification, or claim language evinces a clear intent or need to narrow such claims.

DATED: May 5, 2023                    /s/Dariush Keyhani
                                      Dariush Keyhani

                                      *Attorney of Record for Plaintiff-Appellant*
                                      *Joe A. Salazar*

# ARGUMENT FOR REHEARING *EN BANC*

In its April 5, 2023 decision, the panel held that "the claim language 'a microprocessor,' read in the context of the full claim . . . should be construed to require at least one microprocessor capable of performing the recited functions." Panel Op.[1] 12.  Under this construction the district court and the panel required a **single** microprocessor be capable of performing **all** the recited functions.  Doing so, the panel rejected Salazar's position (and analogous precedent) that any one of the group of "one or more microprocessors" could carry out each of the recited functions so long as that group of "one or more microprocessors" collectively was capable of carrying out all of the recited functions, i.e., a single microprocessor did not need to be capable of performing all the recited functions.

The panel's decision contravenes this Court's precedent, creates confusion and uncertainty as to the scope of patent claims, and results in the unjustifiable narrowing of patent owners' rights.  For the reasons below, the Court should grant Salazar's petition for a rehearing *en banc* and overturn the panel's decision.

## I.     The Panel Decision is Contrary to this Court's Precedents.

### A.     The Panel Decision is Contrary to *Baldwin* and Progeny.

---

[1] "Panel Op." refers to *Salazar v. AT&T Mobility LLC*, 64 F.4th 1311, 1316 (Fed. Cir. 2023).

The panel's decision that the claim language of independent claim 1 of US Patent No. 5,802,467 (the "'467 Patent") requires a **single** microprocessor capable of performing **all** the recited functions contravenes this Court's precedents. This Court has repeatedly held that "the use of an indefinite article such as 'a' or 'an' carries the meaning of 'one or more.'" *See Baldwin Graphic Sys.*, 512 F.3d at 1342. The "one or more" construction is a bedrock rule of patent law, with very limited exceptions. *Id.* The only exception to this rule is "where the language of the claims themselves, the specification, or the prosecution history necessitate a departure from the rule." *Id*. at 1342–43; *Convolve, Inc.*, 812 F.3d at 1321 ("Absent a clear intent in the claims themselves, the specification, or the prosecution history, we interpret 'a processor' as 'one or more processors.'").

This Court has also repeatedly made clear that the use of "the" or "said" later in a claim cannot be the basis to deviate from the bedrock "a means one or more" rule. "The subsequent use of definite articles 'the' or 'said' in a claim to refer back to the same claim term does not change the general plural rule, but simply reinvokes that non-singular meaning." *Baldwin*, 512 F.3d at 1343; *Lite-Netics, LLC v. Nu Tsai Cap. LLC*, 60 F.4th 1335, 1346 (Fed. Cir. 2023) ("[I]f the 'a' phrase means 'one or more,' so would the subsequent reference-back phrases."). "Said" is an anaphoric phrase that merely refers back to the initial antecedent phrase. *Baldwin*, 512 F.3d at 1343 ("Because the initial phrase carries no definitive numerosity, the anaphoric

3

phrases do not alter that meaning in the slightest."). Thus, the claim language exception to the *Baldwin* "a means one or more" rule must be derived from language other than a claim's subsequent use of "said" or "the."

Despite the clear directive of *Baldwin*, panels of this Court have failed to consistently and predictably construe claim language analogous to claim 1 of the '467 Patent. The majority and dissenting opinions in *Creative Internet Advertising Corp. v. Yahoo!, Inc*. illuminate the conflicting applications of the *Baldwin* rule. 476 F. App'x 724 (Fed. Cir. 2011). In addressing a claim identical in structure to Salazar's claim 1, the majority—similar to the *Salazar* panel—acknowledged that the antecedent phrase "an end user communication message" is broad enough to cover multiple end user communication messages but held that each use of the phrase "said end user communication message" is a reference to a single communication message.[2] *Id*. at 728–29. Based solely on the subsequent use of the term "said," the majority opined that the claim would not cover a system that only receives an end

---

[2] Claim 45 of the US Patent No. 6,205,432 addressed in *Creative Arts*:

45. A computer program embodied on a computer-readable medium for inserting a background reference to a stored advertisement into an end user communication message, said computer program comprising:

logic configured to ***receive* an end user communication message** from a first site;
logic configured to ***insert*** a background reference to a stored advertisement **into said end user communication message**, wherein said logic configured to insert the background reference is further configured to insert said background reference responsive to an overwrite authorization; and
logic configured to ***transmit* said end user communication message** with the background reference to a second site.

user communication message, inserts a background reference into a second end user communication message, and then transmits a third end user communication message. *Id.* at 728. The majority explained that a claim that would cover a system where the "receiving," "inserting," and "transmitting" functions involved different end user communication messages would render "said" a nullity. *Id*. at 728–29.

Relying on *Baldwin*, dissenting Judge Clevenger asserted that "Yahoo!'s argument is barred by our case law" and that "Yahoo!'s claim construction argument" (and the majority's position) "on the meaning of the term 'said' fails under our precedent." *Id*. at 735. The dissent explained:

> We have also clarified that the subsequent use of definite articles "the" or "said" in a claim to refer back to the same claim term does not change the general plural rule, but simply reinvokes that non-singular meaning. ***Thus, the use of the term "said" does not require, or even imply,*** *that each limitation must execute upon a **single** message when the claimed apparatus is used*. Instead, "said end user communication message" merely references "one or more" end user communication messages.

*Id*. (cleaned up and emphasis added). Agreeing with the district court, the dissent opined that under *Baldwin*, the second (inserting) and third (transmitting) limitations can be performed **on any end user communication message**, not necessarily the end user communication message that is received in the first limitation. *Id*. The dissenting opinion accused the majority of "discounting *Baldwin*" and "erroneously revising the district court's claim construction." *Id*.

In addition to contravening *Baldwin*, the panel's decision is also inconsistent with other decisions of this Court, which the panel did not address in its opinion. In *01 Communique*, this Court vacated the district court's grant of summary judgment of noninfringement based on the district court's erroneous claim construction. 687 F.3d at 1294. There, the district court had concluded that the claimed "location facility" must be contained on a single physical computer ("locator server computer"). *Id.* at 1295. Applying *Baldwin*, this Court, however, held that "nothing in the claim language or the specification compel[led] a departure from the general rule." *Id.* at 1297. Importantly, this Court reaffirmed that "[t]he patent's use of words such as '**a**,' '**its**,' and '**the**' in the claims [wa]s insufficient to limit the meaning of 'locator server computer' to a single physical computer." *Id.* at 1297 (emphasis added).

Similarly, in *Rehco LLC v. Spin Master, Ltd.*, this Court rejected the district court's decision that a later reference to "[**said**] signal" in claim 1[2]—namely, "a receiver positioned on the bottom of said vehicle for receiving said signal as it is bounced off of a surface"—showed a clear intent to limit "a" to "one." 759 F. App'x 944, 949 (Fed. Cir. 2019). Consistent with the reasoning in *Baldwin* and in conflict with the reasoning of this panel, the Court opined that "if the definite article 'a' can—indeed, usually does—refer to 'one or more,' so would the pronoun 'it' when referring back to the term that was used with the definite article." *Id.* The Court

confirmed that the same would be true for the definite article "said." *Id.* The Court rejected the district court's reasoning (which mirrors the reasoning of the this panel) for construing "a signal" to mean a single signal and explained that the district court erred by relying on later references to "[said] signal" in claim 1 to limit the scope of the claim, noting that "[t]he claim language specifies that the bounced signal . . . is the same signal that is transmitted downwardly away from the vehicle" and the claim refers to "receiving or not receiving 'the bounced signal.'" *Id.* at 950. This observation, however, "[wa]s irrelevant to whether 'a signal' should be limited to a single signal, given that using definite articles 'the' or 'said' to refer back to the same claim term simply reinvokes the term's non-singular meaning." *Id.*

Though this panel's decision appears to accept that the "a microprocessor" of claim 1 of the '467 Patent means "one or more microprocessors," the panel failed to effectively follow *Baldwin*'s directive that a claim's subsequent use of "said" does not change the general plural rule. As a result, the panel's decision that allows for "one or more" microprocessors on one hand, while at the same time **requires one of those microprocessors be configured to perform all the recited functions**, has the same effect of limiting the claim to a **single** microprocessor.

In its decision, the panel did not point to any language in the specification or prosecution history to limit the term "a microprocessor" to a single microprocessor configured to carry out all the claimed functions. And Defendants conceded that "a

microprocessor" means one or more microprocessors and "[t]hat has never been in dispute." Appx226. Rather, the panel's decision makes clear that its basis for narrowing the scope of Salazar's claim to require a single microprocessor perform all the recited functionality (thus effectively limiting the meaning of "a microprocessor" to a single microprocessor) was grounded in claim 1 of the '467 Patent's subsequent usage of "said."

Indeed, in addressing this Court's precedent, the panel attributes this Court's previous decisions to apply (or decline to apply) the "a means one or more" rule to whether the claim at issue subsequently uses "said" to refer back to an antecedent reference. The panel explained that in *Harari v. Lee*, 656 F.3d 1331 (Fed. Cir. 2011), the claim's antecedent reference to "a bit line" and subsequent reference to "said bit line" later in the claim must be the same **singular** bit line as "a bit line." Panel Op. 8-9. Similarly, in discussing a subset of claims in *Convolve, Inc.* where the Court did not deviate from the "a means one or more" rule, the panel explained that this was because these claims "had no subsequent reference to 'the' or 'said' processor, and thus did not require a **single** processor." Panel Op. at 9–10.

Counter to *Baldwin*'s directive that "said" simply reinvokes the plural and does not change the scope or meaning of indefinite article "a," this panel (and others) have instead used "said" to rewrite the scope and meaning of "a." These opinions contravene precedent and cannot be reconciled.

8

**B.    The Panel Decision Conflicts with Precedent that Requires Claim Terms to be Construed in a Way that Does Not Render Them Meaningless or Superfluous.**

The panel's decision renders portions of Salazar's claims superfluous and conflicts with precedent that it is highly disfavored to construe claim terms in a way that renders them meaningless or superfluous. *Intel Corp. v. Qualcomm Inc.*, 21 F.4th 801, 810 (Fed. Cir. 2021) ("It is highly disfavored to construe terms in a way that renders them void, meaningless, or superfluous."); *Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc.*, 853 F.3d 1272, 1288 n.10 (Fed. Cir. 2017) (same); *Canopy Growth Corp., v. GW Pharma Ltd.*, No. 2022-1603, 2023 WL 3048243, at *4 (Fed. Cir. Apr. 24, 2023).

By requiring a **single** microprocessor to perform each and every function of the claim limitations, the panel, in effect, re-wrote the claim language "one or more microprocessors" to mean "one microprocessor." Thus, rather than construing the claim language consistent with *Baldwin* and progeny's teaching that "said" merely reinvokes the plural, the Panel decision effectively deleted the "or more microprocessors," rendering the language superfluous and meaningless:

> A communications, command, control and sensing system for communicating with a plurality of external devices comprising: [one or more] microprocessor[s] for generating …, ***said [one ~~or more~~] microprocessor*** creating …, a plurality of parameter sets retrieved by ***said [one ~~or more~~] microprocessor***…, ***said [one ~~or more~~] microprocessor*** generating ….

The "or more" language indicates an alternative that allows more than one microprocessor to carry out the recited functions as opposed to only a single microprocessor. The panel's holding that the same **single** microprocessor must perform all of the claimed functions rewrites the claims and renders the "or more microprocessors" language superfluous and without meaning. Superfluousness arises because any microprocessor other than the **single** microprocessor needed to perform all the recited functions would be irrelevant. Accordingly, the panel's holding causes a conflict with this Court's precedent that it is highly disfavored to construe claim terms in a way that renders them meaningless or superfluous.

### C.    The Panel Decision Conflicts with Precedent that Claims Should Not Be Construed to Exclude Embodiments.

In contravening *Baldwin* and progeny, the panel's decision conflicts with this Court's law that absent probative evidence to the contrary, it is incorrect to construe a claim to exclude a specific embodiment. *Oatey Co. v. IPS Corp.*, 514 F.3d 1271, 1277 (Fed. Cir. 2008) ("[W]here claims can reasonably [be] interpreted to include a specific embodiment, it is incorrect to construe the claims to exclude that embodiment, absent probative evidence on the contrary."); *GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1311 (Fed. Cir. 2014) (reversing the district court's grant of summary judgment of noninfringement based on a claim construction that excluded an embodiment because "there [were] no statements during prosecution or in the specification that indicate[d] the patentee's intent to limit his claim").

10

The embodiments of the '467 Patent consistently and repeatedly describe the invention as including multiple microprocessors. The specification explains that "both the handset and the base station have **microprocessors** to control all their internal operations . . . **The microprocessors** further provide . . . **The microprocessors** and associated software logically inter-relate data to generate information and general purpose command and control signals . . . **The microprocessors** further generate signals . . . ." Appx47(3:9-31). In another embodiment, the specification describes data signals being coupled to microprocessors for processing and output: "Sensors embodied in the communications, command, control and sensing system detect physical phenomena differentials and convert these differentials into data signals. These data signals are coupled to **microprocessors** for further processing." Appx47(4:18-22). The concept of multiple microprocessors working collectively to carry out the functions of Salazar's invention is the essence of his entire invention disclosed in the "summary of the invention." Appx47(3:9-31). By failing to follow *Baldwin's* mandate that "said" reinvokes the plural, the panel's decision so narrowly construes the claims of Salazar's patent to exclude his very own invention disclosed in his patent.

## II. The Panel Decision Will Create Confusion and Uncertainty as to the Scope of Patent Claims and Result in Their Unjustifiable Narrowing.

The panel's expansion of the exception to the "a means one or more" rule will create confusion and uncertainty as to the scope of patent claims for patent-drafting practitioners, lower courts, and tribunals. Furthermore, the panel's decision will result in the unjustifiable narrowing of patent claims, broadly impacting the rights of patent owners.

The "a means one or more" rule—and the applicability of the extremely limited exception—is often litigated at the lower-court level. Relying on the precedents of this Court, district courts have reached conclusions contrary to the panel's decision. As the following cases suggest, the panel's precedential decision, which neither clarifies nor explicitly rejects this Court's earlier precedents, will only increase confusion and uncertainty at the lower-court level.

For example, the court in *IBM Corp. v. Zillow Group, Inc.* considered whether "a/said/the computer processor" means "one or more processors." No. C20-0851, 2022 WL 16532550, at *8–9 (W.D. Wash. Oct. 28, 2022). IBM, the patent owner and a leader in patents, argued that this construction was "a straightforward application of black-letter patent law." Pl.'s Opening Claim Constr. Br. at 16, No. 2:20-cv-00851 (W.D. Wash. Aug. 11, 2022), ECF No. 203. Citing this Court's decisions in *Baldwin*, *01 Communique*, and *Rehco*, IBM urged the court that "any single-processor embodiments . . . could be implemented as multi-processor embodiments." *Id.* at 14–15.

The district court, relying on this Court's decision in *Convolve*, determined that IBM's patent claim lacked the "clear intent" to limit "a" to "one." 2022 WL 16532550, at *9. Even though the claim's "'said computer processor' performs various functions, namely retrieving and comparing[,] . . . calculating[,] . . . and generating," the court found no reason "why one processor could not retrieve and compare while another processor calculates . . . and/or generates." *Id.* Contrary to the panel's application of this Court's case law, the district court held that "the type of 'rare circumstances' that would justify making an exception to the 'general plural rule'" were not present. *Id.*

Likewise, in *Freeny v. Fossil Group, Inc.*, Magistrate Judge Roy Payne, who is well versed in patent law, considered whether "a/the request authorization code" means "one or more request authorization codes." No. 2:18-CV-00049, 2019 WL 2078783, at *12 (E.D. Tex. May 10, 2019). There, the plaintiffs argued that "the patentee did not evince any clear intent to limit the term 'a['] . . . to only one" and that limiting the term "would improperly exclude embodiments." *Id.* Citing *Baldwin* and distinguishing *In re Varma*, 816 F.3d 1352 (Fed. Cir. 2016), the court held that the patent claim lacked any "limiting language" that would necessitate a departure from the "one or more" construction rule. *Id.* at *16. The court explained "when the claim refers to outputting 'the request authorization code' on a first signal, and outputting 'the request authorization code' on a second signal, that language

13

means that any of the "one or more request authorization codes" can be outputted on the first and second signals to satisfy the claim. In other words...the same code does not need to be outputted on both signals." *Id.* at *14.

The Patent Trial and Appeal Board has also weighed in on this issue recently, again reaching a conclusion contrary to the panel's decision. In *Google LLC v. EcoFactor, Inc.*, the PTAB considered a patent claim that recites "one or more processors" and further recites various limitations that describe what instructions the one or more processors perform. IPR2021-00054, 2022 WL 1157606, at *7 (P.T.A.B. April 18, 2022). The PTAB rejected the argument that there must be "at least a single processor that meets all of the limitations" and found that such construction "would impermissibly render the 'or more' language in the claims superfluous." *See id.* at *7, *10 (citing *Wasica Fin. GmbH*, 853 F.3d at 1288 n.10). Noting the parties' discussion of *Convolve* and *Unwired Planet, L.L.C. v. Google, Inc.*, 660 F. App'x 974 (Fed. Cir. 2016), the PTAB concluded that, "although the claim encompasses a single processor that performs all of the instructions, it is broad enough to also cover a group of processors (the 'or more' processors') which collectively perform the recited instructions." *Id.* at *9.

Furthermore, the panel's decision will erode the rights of patent owners, unjustifiably narrowing their patent claims where nothing in the prosecution history, specification, or claim language evinces a clear intent or need to narrow such

14

claims. The panel's expansion of the exception to the "a means one or more" rule will unexpectedly remove embodiments of claimed inventions—often years after the patent has issued—such that many of these patents will be effectively worthless. This sudden narrowing of property rights constitutes a "taking" forbidden by the Fifth Amendment, for which owners of existing patents will have no remedy. *See Connolly v. Pension Benefit Guar. Corp.*, 475 U.S. 211, 224–25 (1986) (indicating that the economic effect of a government action and the extent to which the action interferes with the expectations of the property owner are among the most significant considerations to identify a forbidden taking).

For these reasons, the Court should not expand the extremely limited exception to the "one or more" construction rule—"a bedrock rule of patent law." *Creative Internet Advert. Corp.*, 476 F. App'x at 735 (Clevenger, J., dissenting-in-part). Given the exceptional importance of this issue and its profound impact on all patentees, the Court should grant Salazar's petition and overturn the panel's decision.

## CONCLUSION

For the foregoing reasons, the petition for rehearing *en banc* should be granted.

DATED: May 5, 2023                /s/Dariush Keyhani
                                  Dariush Keyhani

Keyhani LLC
1050 30th Street NW
Washington, DC 20007
Telephone: (202) 748-8950
Fax: (202) 318-8958
dkeyhani@keyhanillc.com
*Attorneys for Plaintiff-Appellant*
*Joe A. Salazar*

ADDENDUM

# United States Court of Appeals for the Federal Circuit

---

**JOE A. SALAZAR,**
*Plaintiff-Appellant*

**v.**

**AT&T MOBILITY LLC, SPRINT UNITED MANAGE-MENT COMPANY, T-MOBILE USA, INC., CELLCO PARTNERSHIP INC., DBA VERIZON WIRELESS, INC.,**
*Defendants-Cross-Appellants*

**HTC CORPORATION, HTC AMERICA, INC.,**
*Defendants*

---

2021-2320, 2021-2376

---

Appeals from the United States District Court for the Eastern District of Texas in No. 2:20-cv-00004-JRG, Chief Judge J. Rodney Gilstrap.

---

Decided: April 5, 2023

---

DARIUSH KEYHANI, Keyhani LLC, Washington, DC, argued for plaintiff-appellant.

TODD ERIC LANDIS, Williams Simons & Landis PLLC, Dallas, TX, argued for defendants-cross-appellants.  Also

represented by FRED WILLIAMS, Austin, TX; JOHN WITTEN-
ZELLNER, Philadelphia, PA.

_____

Before STOLL, SCHALL, and STARK, *Circuit Judges*.

STOLL, *Circuit Judge*.

Joe Salazar appeals the United States District Court
for the Eastern District of Texas's judgment of noninfringe-
ment, challenging the court's claim construction. Mr. Sal-
azar contends that the court erroneously construed "a
microprocessor" to mean one microprocessor, contrary to
this court's precedent. AT&T Mobility LLC, Sprint United
Management Company, T-Mobile USA, Inc., and Cellco
Partnership Inc., dba Verizon Wireless, Inc. (collectively,
"AT&T") cross-appeal the district court's ruling that
Mr. Salazar's claims were not precluded based on prior lit-
igation and challenge the judgment that the asserted
claims are not invalid as anticipated. Because we agree
with the district court's claim construction, we affirm the
judgment of noninfringement. Having affirmed the judg-
ment of noninfringement, we do not reach AT&T's preclu-
sion arguments. Finally, we hold that AT&T waived its
challenge to the jury's verdict on anticipation by failing to
move for judgment as a matter of law under Rule 50 of the
Federal Rules of Civil Procedure.

## BACKGROUND

Mr. Salazar owns U.S. Patent No. 5,802,467. The
'467 patent describes technology for wireless and wired
communications, including command, control, and sensing
for two-way communication of sound, voice, and data "with
any appliance and/or apparatus capable of transmitting
and/or receiving compatible sound, voice and data signals."
'467 patent col. 1 ll. 8–13. The '467 patent expired on Sep-
tember 28, 2015.

Independent claim 1, one of several claims that contain the terms at issue, recites:

1. A communications, command, control and sensing system for communicating with a plurality of external devices comprising:

*a microprocessor for generating* a plurality of control signals used to operate said system, *said microprocessor creating* a plurality of reprogrammable communication protocols, for transmission to said external devices wherein each communication protocol includes a command code set that defines the signals that are employed to communicate with each one of said external devices;

a memory device coupled to said microprocessor configured to store a plurality of parameter sets *retrieved by said microprocessor* so as to recreate a desired command code set, such that the memory space required to store said parameters is smaller than the memory space required to store said command code sets;

a user interface coupled to said microprocessor for sending a plurality of signals corresponding to user selections to said microprocessor and displaying a plurality of menu selections available for the user's choice, *said microprocessor generating* a communication protocol in response to said user selections; and

an infra-red frequency transceiver coupled to said microprocessor for transmitting to said external devices and receiving from said external devices, infra-red frequency signals in accordance with said communications protocols.

*Id.* at col. 25 l. 57–col. 26 l. 17 (emphasis added).

In 2016, Mr. Salazar sued HTC Corp., alleging HTC Corp. infringed the '467 patent by selling certain HTC One phones that allegedly embodied the asserted claims. *See* Compl., *Salazar v. HTC Corp.*, No. 2:16-cv-01096, 2016 WL 11577368 (E.D. Tex. Oct. 5, 2016) ("*Salazar I*"). HTC Corp. raised two defenses: (1) that it did not commit any infringing acts in the United States; and (2) in any event, the accused phones did not infringe. *See Salazar I* Trial Tr. 21:21–22:2. A jury ultimately returned a verdict finding HTC Corp. did not infringe the '467 patent. The jury did not decide whether the '467 patent was valid, however, instead leaving that portion of the verdict form blank. J.A. 2201.

In 2019, Mr. Salazar sued AT&T, again asserting the '467 patent against the same products he challenged in *Salazar I*. HTC Corp. and HTC America, Inc. (collectively "HTC") intervened, requesting a declaratory judgment that the accused products did not infringe. The district court severed HTC's claims and stayed that portion of the case.

At claim construction, the parties disputed limitations present in multiple asserted claims, which required: "a microprocessor for generating . . . , said microprocessor creating . . . , a plurality of parameter sets retrieved by said microprocessor . . . , [and] said microprocessor generating . . . ." The district court characterized the dispute between the parties as coming down to "whether the claims require one microprocessor that is capable of performing the recited 'generating,' 'creating,' 'retrieving,' and 'generating' functions." *Salazar v. AT&T Mobility LLC*, No. 2:20-cv-00004, 2020 WL 5608640, at *17 (E.D. Tex. Sept. 18, 2020) (*Claim Construction Op.*). The district court answered this question in the affirmative and construed the term to mean "one or more microprocessors, at least one of which is configured to perform the generating, creating, retrieving, and generating functions." *Id.* at *19. Relying in part on our decisions in *Convolve, Inc. v. Compaq Computer Corp.*, 812 F.3d 1313 (Fed. Cir. 2016), and *In re Varma*, 816

F.3d 1352 (Fed. Cir. 2016), the district court explained that the claim term provided certain functions that the "said microprocessor" must be "necessarily configured to perform as well as the structural relationship between 'said microprocessor' and other structural elements." *Claim Construction Op.*, 2020 WL 5608640, at *19. Thus, the district court reasoned, "at least one microprocessor must satisfy all the functional (and relational) limitations recited for 'said microprocessor.'" *Id.* at *18.

Prior to trial, AT&T moved for summary judgment, arguing that Mr. Salazar's claims were barred under claim preclusion and the Supreme Court's decision in *Kessler v. Eldred*, 206 U.S. 285 (1907), which prevents harassment of customers of an adjudged noninfringer in specific circumstances. The district court denied that motion.

At trial, AT&T's technical expert opined that the asserted claims were anticipated by Goldstein, a prior art reference that was not considered by the U.S. Patent Office during prosecution. J.A. 1256–92 (Trial Tr. 91:18–127:7). At the conclusion of trial, AT&T moved for judgment as a matter of law under Federal Rule of Civil Procedure 50 regarding "infringement, damages, and preclusion," but not regarding invalidity. J.A. 1572 (Trial Tr. 198:16–19). The district court confirmed with AT&T's counsel that it was not moving for judgment as a matter of law regarding anticipation. *Id.* (Trial Tr. 198:20–22). The jury thereafter returned its verdict, finding that the accused products did not infringe the '467 patent and that the patent was not invalid. J.A. 397–98. The district court entered final judgment reflecting the jury's verdict.

Mr. Salazar and AT&T both appeal. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## Discussion

We start by addressing Mr. Salazar's challenge to the district court's claim construction. We then turn to AT&T's

cross-appeal, in which it argues that the district court
erred both by (1) denying AT&T's motion for summary
judgment that Mr. Salazar's claims were barred by collat-
eral estoppel and the *Kessler* doctrine and (2) finding that
claims 1–7, 27–30, and 34 were not anticipated.

## I

On appeal, Mr. Salazar argues that he is entitled to a
new jury trial because the court erred in construing "a" mi-
croprocessor and "said" microprocessor. Appellant's Br. 39.
According to Mr. Salazar, the court should have inter-
preted the claim terms to require one or more microproces-
sors, any one of which may be capable of performing each
of the "generating," "creating," and "retrieving" functions
recited in the claims. *Id.* at 11–12, 32–33. Put another
way, in Mr. Salazar's view, a correct claim construction
would encompass one microprocessor capable of perform-
ing one claimed function and another microprocessor capa-
ble of performing a different claimed function, even if no
one microprocessor could perform all of the recited func-
tions. Mr. Salazar maintains that the district court erred
by interpreting "a" microprocessor as a single microproces-
sor that is capable of performing all of the later recited
"generating," "creating," and "retrieving" functions. *Id.*
at 31.

We review a district court's claim construction de novo
where, as here, it is decided only on the intrinsic evidence.
*Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 331
(2015). We begin, as we must, with the claim language it-
self. *Immunex Corp. v. Sanofi-Aventis U.S. LLC*, 977 F.3d
1212, 1218 (Fed. Cir. 2020). The words of a claim are gen-
erally given their ordinary meaning, which is "the meaning
that the term would have to a person of ordinary skill in
the art in question at the time of the invention." *Phillips
v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en
banc).

At issue in this appeal is the proper construction of the articles "a" and "said." We have explained that the indefinite article "a" means "'one or more' in open-ended claims containing the transitional phrase 'comprising.'" *Convolve*, 812 F.3d at 1321 (quoting *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1356 (Fed. Cir. 2000)). "An exception to the general rule that 'a' . . . means more than one only arises where the language of the claims themselves, the specification, or the prosecution history necessitate a departure from the rule." *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342–43 (Fed. Cir. 2008). We have also explained that "[t]he use of the term 'said' indicates that this portion of the claim limitation is a reference back to the previously claimed" term. *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015); *see Baldwin*, 512 F.3d at 1343 (the claim term "said" is an "anaphoric phrase[], referring to the initial antecedent phrase"). "The subsequent use of [the] definite article[] . . . 'said' in a claim to refer back to the same claim term does not change the general plural rule, but simply reinvokes that non-singular meaning." *Baldwin*, 512 F.3d at 1342.

In *Baldwin*, for example, we considered a patent describing systems for cleaning the cylinder of a printing press using cleaning fabric.[1] *Id.* at 1340. There, the claim

---

[1]    The claim at issue in *Baldwin* recited in relevant part:

A pre-packaged, pre-soaked cleaning system for use to clean the cylinder of printing machines comprising in combination:

(1) *a pre-soaked fabric roll* saturated to equilibrium with cleaning solvent disposed around a core, *said fabric roll* having a sealed sleeve which can be

recited "a pre-soaked fabric roll" and subsequently recited "said fabric roll." *Id.* We held that "a pre-soaked fabric roll" meant "one or more" pre-soaked fabric rolls, and that the subsequent "said fabric roll" maintained that non-singular meaning. *Id.* at 1342–43. But we did not hold in *Baldwin* that using an indefinite article somehow displaces the antecedent basis rule, as to require "said fabric roll" to refer to something other than the same earlier referenced "pre-soaked fabric roll." *See id.* at 1343 (stating that the Manual of Patent Examining Procedure "describes the need, in most cases, for claim terms to have proper antecedent bases"). In other words, in *Baldwin*, the "said fabric roll" was the same "one or more" pre-soaked fabric rolls that were referred to earlier in the claim.

We considered a similar claim construction dispute in *Harari v. Lee*, 656 F.3d 1331 (Fed. Cir. 2011), a case involving rewritable memory chips. There, the parties disputed the terms "a bit line" and "said bit line."[2] The relevant

---

opened or removed from *said fabric roll* for use of *said fabric roll*, . . . and said system including

(2) means for locating *said fabric roll* adjacent to and operatively associated with a cylinder to be cleaned.

512 F.3d at 1340 (emphasis added).

[2]    The claim at issue in *Harari* recited in relevant part:

A method of treating at least one erased EEprom cell, comprising:

[(1)] accessing a number of control gates and accessing *a bit line*, thereby activating a number of memory cells, . . . ; [and]

claim recited a method comprising accessing a number of control gates and "a bit line" to activate a number of cells. *Id.* at 1341. Noting that "*Baldwin* . . . does not set a hard and fast rule that 'a' always means one or more than one," we determined that "[t]he plain language of the claim clearly indicates that only a single bit line is used when accessing a number of cells." *Id.* We thus concluded that "the correct and only reasonable construction of the claim terms 'a bit line' and 'said bit line' . . . requires that a single bit line activates multiple memory cells." *Id.* at 1342. Stated otherwise, "said bit line" later in the claim must be the same, singular bit line as "a bit line" earlier in the claim.

We followed similar reasoning in *Convolve*, which involved a claim element introduced with the indefinite article "a" and further defined by certain recited characteristics. 812 F.3d at 1321. Specifically, we interpreted "[u]ser interface for . . . working with *a processor* . . . comprising" in claims 1, 3, and 5 to require "a single processor" having all of the subsequently recited characteristics. *Id.* (emphasis added). In reaching this conclusion, we considered the subsequent references to the initial processor:

> Specifically, claim 1 recites "a processor" in the preamble before recitation of "comprising," and the claim body uses the definite article "the" to refer to the "processor." This reference to "the processor," referring back to the "a processor" recited in [the] preamble, supports a conclusion that the recited user interface is "operatively working with" the

---

[(2)] subsequent to accessing *said bit line*, sensing the presence of at least one activated cell from said number of memory cells . . .

*Harari*, 626 F.3d at 1340 (emphasis added).

same processor to perform all of the recited steps. In other words, the claim language requires a processor associated with the user interface to issue the shaped commands of the claims. Given this claim language, which contrasts with the claims described above that allow for multiple processors, we conclude that claims 1, 3, and 5 require the user interface to work with a single processor in performing all of the claim steps.

*Id.* at 1321.

Claim 9, however, had no subsequent reference to "the" or "said" processor. Because that claim did not reference a single processor, we interpreted "a processor" to mean "one or more processors" in the context of that claim. *See id.*

Finally, in *Varma*, we considered claims directed to performing statistical analyses of investment data. 816 F.3d at 1355. There, the disputed claim limitation was "a statistical analysis request corresponding to two or more selected investments." *Id.* at 1362. The Patent Trial and Appeal Board held that the limitation could be satisfied even if two statistical analysis requests were required to analyze the "two or more selected investments." *Id.* We reversed the Board's decision, explaining that:

> [T]he question is not whether there can be more than one request in a claim-covered system: there can. Rather, the question is whether "a" can serve to negate what is required by the language following "a": a "request" (a singular term) that "correspond[s]" to "two or more selected investments." It cannot. For a dog owner to have "a dog that rolls over and fetches sticks," it does not suffice that he have two dogs, each able to perform just one of the tasks. In the present case, no matter how many requests there may be, no matter the variety of the requests the system may receive, the system must

be adapted to receive a request that itself corresponds to at least two investments.

*Id.* at 1362–63.

*Varma* thus dealt with claim language that introduces a claim element using an indefinite article and further defines the element with subsequently recited functionality. While this structure may allow for more than a single instance of the claim element, it may nonetheless require that a single instance of the element be capable of performing all the recited functionality.

With this precedent in mind, we agree that the district court correctly construed the claim term Mr. Salazar challenges on appeal. Specifically, the district court properly interpreted "a microprocessor for generating . . . , said microprocessor creating . . . , a plurality of parameter sets retrieved by said microprocessor . . . , said microprocessor generating . . ." to mean "one or more microprocessors, at least one of which is configured to perform the generating, creating, retrieving, and generating functions." *Claim Construction Op.*, 2020 WL 5608640, at *19. We agree with the district court that while the claim term "a microprocessor" does not require there be only one microprocessor, the subsequent limitations referring back to "said microprocessor" require that at least one microprocessor be capable of performing each of the claimed functions. This approach is entirely consistent with our precedent.

Like the claim language in *Convolve* and *Varma*, the claim language here requires a singular element—"*a* microprocessor"—to be capable of performing all of the recited functionality. *See Convolve*, 812 F.3d at 1321 (requiring "*a* processor" and "the processor" in claims 1, 3, and 5 to "perform all of the recited steps"); *Varma*, 816 F.3d at 1362–63 (finding "*a* statistical analysis request corresponding to two or more selected investments" requires a single request to correspond to at least two investments where the subsequent language "makes it unmistakable that at least two

investments must be the subject of each statistical analysis"). This conclusion is bolstered when we consider *Convolve*'s claim 9, which had no subsequent reference to "the" or "said" processor, and thus did not require a single processor. 812 F.3d at 1321. Here, the claim language "a microprocessor," read in the context of the full claim, aligns more closely with *Convolve*'s claims 1, 3, and 5—which required "a processor" and "the processor" to perform the recited functionality—and, like those claims, should be construed to require at least one microprocessor capable of performing the recited functions.

Mr. Salazar would have us read the phrase "one or more" in the district court's claim construction to mean "*any one of the* one or more" when referring to the later-recited functions. Appellant's Br. 35. We decline to do so. Although Mr. Salazar insists that the phrase "said microprocessor" "simply reinvokes th[e] non-singular meaning," *Id.* at 22 (quoting *Baldwin*, 512 F.3d at 1342), the claim's use of "said" does not negate what is required by the language that follows "said": a "microprocessor" that "generat[es]," "creat[es]," and "retriev[es]." As we stated in *Varma*, "[f]or a dog owner to have 'a dog that rolls over and fetches sticks,' it does not suffice that he have two dogs, each able to perform just one of the tasks." 816 F.3d at 1363. Here, it does not suffice to have multiple microprocessors, each able to perform just one of the recited functions; the claim language requires at least one microprocessor capable of performing each of the recited functions.

Because we agree with the district court's claim construction, we affirm its judgment of noninfringement.

## II

We now turn to AT&T's cross-appeal challenging (1) the district court's ruling that Mr. Salazar's claims were not barred by claim preclusion or the *Kessler* doctrine; and

(2) the district court's finding that the asserted claims were not invalid as anticipated.

At oral argument, AT&T agreed that we need not reach its preclusion arguments if we affirm the district court's judgment of noninfringement. *See* Oral Arg. at 9:46–10:10, https://oralarguments.cafc.uscourts.gov/default.aspx?fl=21-2320_11072022.mp3. As explained above, we affirm the district court's judgment and, accordingly, do not address this issue.

Finally, we turn to AT&T's anticipation argument. The jury found that the asserted claims were not anticipated, and the district court subsequently entered judgment consistent with that finding. On appeal, AT&T argues that "[i]t was reversible error for the district court to hold that asserted claims 1–7, 27–30, and 34[] are not anticipated" because AT&T "presented substantial, clear and convincing evidence" that the asserted claims are anticipated. Cross-Appellants' Br. 49–50. But AT&T failed to move for judgment as a matter of law under Federal Rule of Civil Procedure 50. Its failure to do so dooms this argument.

A party must make proper motions under Rule 50 in order to appeal an adverse verdict on grounds relating to the sufficiency of the evidence. *See Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1308 (Fed. Cir. 2011) ("Rule 50(a)(2) requires the moving party" to make its motion for judgment as a matter of law "to preserve the issue."); *Feld Motor Sports, Inc. v. Traxxas, L.P.*, 861 F.3d 591, 596 (5th Cir. 2017) ("[T]his court has jurisdiction to hear an appeal of the district court's legal conclusions . . . , but only if it is sufficiently preserved in a Rule 50 motion."). Here, AT&T did not move under Rule 50 regarding any validity ground, including anticipation. As a result, it never challenged the sufficiency of the evidence with respect to anticipation before the district court, and it has therefore waived its anticipation challenge on appeal.

Hoping to correct its error, AT&T requests we "liberally constru[e]" Rule 50(a) to require parties to move under that Rule only if "'the court [or opposing] attorneys needed any more enlightenment about [the appellant's] position on those issues.'" Cross-Appellants' Reply Br. 19–20 (quoting *Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371, 1380 (Fed. Cir. 2009)). But AT&T's reliance on *Blackboard* is misplaced. In *Blackboard*, the defendant made "cursory" Rule 50(a) motions regarding anticipation and obviousness, and the district court acknowledged those motions. 574 F.3d at 1379. We held that "in light of the Fifth Circuit's practice of liberally construing the rule," the cursory motions and "the district judge's prompt statement that he would take both motions under advisement, made clear that no more was necessary to serve the purposes of Rule 50(a)." *Id.* at 1379–80.

That was not the case here. In contrast to the defendant in *Blackboard*, AT&T explicitly expressed to the district court that it would not move under Rule 50(a) regarding anticipation:

> THE COURT: Let me hear from Defendants. What matters do Defendants seek relief on under Rule 50(a)?
>
> [COUNSEL FOR AT&T]: Your Honor, we intend to seek relief on issues of infringement, damages, and preclusion.
>
> THE COURT: Not on anticipation under Rule 102?
>
> [COUNSEL FOR AT&T]: We are not moving under Rule 50(a) for anticipation.

J.A. 1572 (Trial Tr. 198:16–22). In other words, AT&T clearly disavowed any intention to move for judgment as a matter of law regarding anticipation. Accordingly, even under the most liberal construction of the requirements of

Rule 50(a), AT&T has nevertheless waived its anticipation argument.

## CONCLUSION

We have considered the parties' remaining arguments and find them unpersuasive.  For the foregoing reasons, we affirm the judgment of noninfringement.

**AFFIRMED**

## COSTS

No costs.

**FORM 19. Certificate of Compliance with Type-Volume Limitations**

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 21-2320

**Short Case Caption:** Salazar v. AT&T Mobility LLC, et al.

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

[✔] the filing has been prepared using a proportionally-spaced typeface and includes  3,425  words.

[ ] the filing has been prepared using a monospaced typeface and includes _____ lines of text.

[ ] the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 05/05/2023

Signature: /s/ Dariush Keyhani

Name: Dariush Keyhani